# TURNOVER PETITION

EXHIBIT B.doc

SUPREME COURT OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SUNNYSIDE DEVELOPMENT COMPANY, LLC,<br><br>       Petitioner,<br><br>    -v-<br><br>BANK OF NEW YORK (as escrow agent),<br>CAMBRIDGE DISPLAY TECHNOLOGY, INC. and<br>OPSYS MANAGEMENT LIMITED,<br><br>       Respondents. | **TURNOVER PETITION**<br><br>Index No. 113409/07 |

NOW COMES Petitioner/Judgment Creditor Sunnyside Development Company LLC ("Sunnyside"), by and through its counsel, Traiger & Hinckley LLP, for its Turnover Petition filed pursuant to CPLR 5225(b) and 5227, pleas as follows:

## SUMMARY OF ACTION

1. This is a special proceeding pursuant to CPLR 5221, 5225(b) and 5227 brought by Sunnyside, a judgment creditor, to require the Bank of New York, serving as escrow agent, to turnover the assets it holds in which judgment debtor Opsys Limited has an interest. Petitioner Sunnyside holds a judgment against Opsys Limited in the amount of $4,853,017.00, entered by the United Stated District Court for the Northern District of California on May 29, 2007, in an action entitled *Sunnyside Development Company LLC v. Opsys Limited* (the "Sunnyside Action"), and entered by the Clerk of the Court for the Supreme Court for the County of New York on October 4, 2007 (the "Judgment"). This action seeks the assets (shares of Cambridge Display Technology, Inc. ("CDT") stock, or cash held from the sale of the same) that are in New York escrow for the purpose of satisfying claims against judgment debtor Opsys Limited.

2. Judgment Debtor has an interest in these assets payable to it. As found by the United States District Court for the Northern District of California in the Sunnyside Action, based upon acknowledgments made by CDT in pleadings filed with that California Court, and in filings with the United States Securities and Exchange Commission ("SEC"), the express escrow agreement dated December 29, 2004 was established by Opsys Limited to allow creditors such as petitioner to look to the escrowed assets in order to satisfy claims against it. Based upon the representations of CDT and Opsys Limited to the court in the Sunnyside Action, the court held that the liabilities Opsys Limited are to be satisfied out of the escrowed amounts. Specifically, the District Court found that:

> a portion of the CDT, Inc. stock offered in exchange for the Opsys Limited stock would indemnify CDT, Inc. for [Opsys Limited's] undisclosed contingent liabilities.

Memorandum and Order, dated August 29, 2007 at 6.

3. The District Court further found that:

> 422,610 shares of CDT stock valued at $5,071,320 went into escrow as security for contingent and unidentified liabilities. Black Dec p.28, Exh D at 9 - 10 clause 1.1(h).

## PARTIES

4. Petitioner Sunnyside Development Company, LLC ("Sunnyside") is a Limited Liability Company duly formed and registered under the laws of California. It is the Judgment Creditor.

5. Bank of New York (now known as Bank of New York Mellon) is a New York bank, located at 10 Barclay Street, New York, New York. The action is brought against is pursuant to CPLR §5201(a)(2) as it is serving as the escrow agent for the assets in which the Judgment Debtor has an interest.

6. Respondent Cambridge Display Technology, Inc. ("CDT, Inc.") is a corporation established under the laws of Delaware. It is joined as party that might claim an interest in the escrowed assets.

7. Respondent Opsys Management Limited ("OML") is a company formed under the laws of the United Kingdom. It is joined as party that might claim an interest in the escrowed assets.

## JURISDICITION

8. This Court has jurisdiction over each of the parties pursuant to the Escrow Agreement, as they have all consented to this Court's jurisdiction and venue.

## BACKGROUND FACTS

### The Transaction Agreement and The Creation Of The Escrow

9. The escrow account was established by a Transaction Agreement dated December 14, 2004 (the "Transaction Agreement") among, *inter alia,* Opsys Limited, CDT, Inc., and OML. CDT, Inc. represented to the Court that "[t]he Transaction Agreement and Amended Settlement Agreement explicitly provided for the satisfaction of all of Opsys' identified liabilities, as well as providing for contingent liabilities and unidentified liabilities."

10. As required by to the terms of the Transaction Agreement, on December 29, 2004, CDT issued 797,695 shares (including 422,610 shares initially deposited into escrow at The Bank of New York) of its stock as security for Opsys Limited's contingent and unidentified liabilities.

11. The Court in the Sunnyside Action found that those shares were placed into an escrow account to fund identified and unidentified contingent claims asserted against Opsys Limited, such as the Judgment.

3

12. The Court found that the escrowed stock was to serve as security for Opsys Limited's unidentified liabilities, of which Plaintiff is a member of the class:

> 422,610 shares of CDT stock valued at $5,071,320 went into escrow as security for contingent and unidentified liabilities. Black Dec p.28, Exh. D at 9 - 10 clause 1.1(h). The remaining CDT shares constituting the payment for the put option were distributed to Opsys management to be distributed between management and shareholders. Black Dec. p.29, Exh. B. CDT claims that no shares have yet been distributed to shareholders, and will not be until other creditors are paid off.

Id, at 6.

13. This finding by the United States District Court for the Northern District of California was based upon judicial admissions made by CDT and Opsys Limited. In particular, in a declaration dated May 8, 2007, and filed by CDT on May 7, 2007 with the United States District Court for the Northern District of California in the *Sunnyside v. Opsys Limited* litigation, CDT's Chief Financial Officer and member of its Board of Directors Michael Black acknowledged that as part of the transactions between Opsys Limited and CDT, "[t]he 2004 transactions as structured protected Opsys' creditors in at least three ways." Mr. Black declared further that "steps were taken so that most of the consideration paid to Opsys and its shareholders would be escrowed or placed in trust for the protection of Opsys' creditors, rather than transferred outright to Opsys' shareholders." He further confirmed that the escrow was intended to benefit Opsys's creditors, such as Plaintiff's claim: "422,610 shares of CDT, Inc. stock went into an escrow account to cover [an unrelated arbitration] and unidentified liabilities, <u>including unidentified contingent liabilities</u>." (emphasis added).

4

14. As described by CDT's attorneys in its May 23, 2007 Memorandum of Law filed with the District Court in the *Sunnyside* action, these shares are held for the benefit of Plaintiff:

> As part of the settlement, CDT agreed to purchase 100% of the stock of Opsys Limited in exchange for 797,695 shares of stock of CDT. Under the original Transaction Agreement, CDT could not be obligated to acquire 100% of Opsys Limited unless Opsys Limited's liabilities were less than $1.25 million. In December 2004, Opsys Limited's liabilities were $1.6 million, excluding the Fremont lease, which both parties believed had been assigned more than two years earlier.
>
> In the settlement, the parties recognized that, as with all acquisitions, Opsys Limited had potentially unknown liabilities. Because satisfaction of Opsys Limited's liabilities was a precondition to exercise of the put option, the Amendment Agreement included a provision whereby CDT would withhold in escrow 422,610 of the stock consideration otherwise payable to Opsys Limited shareholders. <u>CDT set aside the portion of the consideration to ensure that (a) contingent liabilities would be satisfied by Opsys or its shareholders if the contingencies materialized</u>, and (b) CDT did not assume Opsys Limited's liabilities. (emphasis added)

**The Vesting Of Petitioner's Rights In The Escrowed Funds**

15. As CDT disclosed in its public filings, a portion of the consideration paid by CDT was placed in escrow according to the terms of an Escrow Agreement among the parties. The Escrow Agreement contains express provisions by which claims against Opsys Limited are to be paid out of the Escrow funds. Section 4(e) of the Escrow Agreement provides, in pertinent part:

> In the event [CDT] determines that any liability, contingent liability, claim, obligation or damage (collectively, "Claim") exists or has been asserted against Opsys (other than the Identified Liabilities up to the dollar amount withheld from the Option Exercise Price pursuant to Section 9.12 of the Transaction Agreement in respect of such Identified Liabilities) prior to the final termination of the Escrow Account hereunder, [CDT] shall have the right (but not the obligation) to deliver to the Escrow

5

>Agent, with a copy to [OML], a written notice (a "Disbursement Notice"). …On the twentieth Business Day following the date of receipt of such Disbursement Notice by the Escrow Agent, the Escrow Agent shall liquidate any such Qualified Investments and transfer to [CDT] cash and/or CDT Shares as specified in such payment instructions, provided, however, that if the Escrow Agent receives a Contest Notice (as defined in Section 4(f) hereof) from [OML] to such Disbursement Notice prior to the 15th Business Day following the date it receives such Disbursement Notice, the Escrow Agent shall disburse all or a portion of the amounts sought under such Disbursement Notice, but only in accordance with (x) joint written instructions executed by [CDT] and [OML] authorizing such disbursement or (y) a letter of instruction from [CDT] specifying the portion of the Claimed Amount to which it is entitled to receive payment and attaching a certified copy of a judgment of a court of competent jurisdiction or final award of an arbitration panel or settlement establishing Opsys' obligation in respect of such Claim together with an estimate of any costs and expenses incurred or to be incurred in connection with the resolution of the Claim relating to such Disbursement Notice together with payment instructions as provided above.

16. On or about February 2, 2005, CDT issued the Disbursement Notice with respect to the liability to Plaintiff in the *Sunnyside v. Opsys Limited* action.

17. In response, OML issued a Contest Notice dated February 10, 2005 stating that "OML hereby files a Contest Notice and requests that no disbursement be made in respect of the Disbursement Notice <u>until such time as the true cost of the claim can be established</u>." Consequently, the defendants, including Opsys Limited, OML and CDT had actual notice of the action against Opsys Limited, and of CDT's demand, with OML's conditional acceptance upon the establishment of the true cost, for payment of the claim out of escrow. Plaintiff has relied on CDT's claim for satisfaction of the once disputed and now adjudged and established liability of Opsys Limited to Sunnyside.

18. In accordance with Section 5(a), the escrow account was to set aside as a "Reserve Amount" the escrowed funds claimed in the Disbursement Notice.

19. By section 4(e) of the Escrow Agreement, following receipt of a Contested Notice, the escrow agent is to make payment on the claim once a court has rendered a judgment on the claim. Specifically, it provides that:

> if the Escrow Agent receives a Contest Notice (as defined in Section 4(f) hereof) from [OML] to such Disbursement Notice prior to the 15th Business Day following the date it receives such Disbursement Notice, <u>the Escrow Agent shall disburse all or a portion of the amounts sought under such Disbursement Notice</u>, but only in accordance with (x) joint written instructions executed by the [CDT] and [OML] authorizing such disbursement or (y) <u>a letter of instruction from [CDT] specifying the portion of the Claimed Amount to which it is entitled to receive payment and attaching a certified copy of a judgment of a court of competent jurisdiction</u> or final award of an arbitration panel or settlement establishing Opsys' obligation in respect of such Claim together with an estimate of any costs and expenses incurred or to be incurred in connection with the resolution of the Claim relating to such Disbursement Notice <u>together with payment instructions as provided above</u>.

20. Petitioner's right to be paid pursuant to the Disbursement Notice ripened on May 29, 2007 when the Judgment was entered, and the cost of the claim established. A certified copy of the judgment has been submitted to all of the parties to the Escrow Agreement.

## COUNT I

### (TURNOVER OF CDT SHARES PURSUANT TO CPLR 5225(b) and 5227)

21. Plaintiff repeats and realleges the facts alleged in paragraphs 1 to 20, as if incorporated fully herein.

22. Paragraph 4 of the Escrow Agreement, titled Distributions from the Escrow Accounts, governs distributions from the escrow agreement to pay liabilities, contingent liabilities, or claims asserted against Opsys Limited.

23. In accordance with Section 4(e), on February 2, 2005, CDT invoked the payment rights with respect to the *Sunnyside v. Opsys Limited* action by issuing a Disbursement Notice to the escrow agent. CDT has the right under the Escrow Agreement to cause these assets to be transferred for the benefit of Opsys Limited and its creditors or contingent creditors.

24. Opsys Limited has an immediate right under the Escrow Agreement to obtain the assets necessary to satisfy the Judgment. Paragraph B of the Escrow Agreement provides:

> Pursuant to the Transaction Agreement, Opsys has excercised the Opsys Option, which requires that the Reddy Escrow Shares and the General Escrow Shares issuable upon exercise of the Opsys Option registered in the name of the Escrow Agent (the "Escrow Consideration") be placed in escrow hereunder and held as security for curtain contingent liabilities of Opsys.

25. On February 10, 2005, OML stated its Contest Notice to the escrow agent that OML "requests that no disbursement be made in respect of the Disbursement Notice until such time as the true cost of the claim can be established."

26. The true cost of the claim became established at least as early as May 29, 2007 when a judgment was entered thereon.

27. The escrow agent has received all of the necessary documentation to pay the Claim. By section 4(e) of the Escrow Agreement,

> if the Escrow Agent receives a Contest Notice (as defined in Section 4(f) hereof) from [OML] to such Disbursement Notice prior to the 15th Business Day following the date it receives such Disbursement Notice, the Escrow Agent shall disburse all or a portion of the amounts sought under such Disbursement Notice, but only in accordance with (x) joint written instructions executed by the [CDT] and [OML] authorizing such disbursement or (y) a letter of instruction from the [CDT] specifying the portion of the Claimed Amount to which it is entitled to receive payment and attaching a certified copy of a judgment of a court of competent

8

jurisdiction or final award of an arbitration panel or settlement establishing Opsys' obligation in respect of such Claim together with an estimate of any costs and expenses incurred or to be incurred in connection with the resolution of the Claim relating to such Disbursement Notice together with payment instructions as provided above.

28. Plaintiff seeks an Order directing Bank of New York, as Escrow Agent, to transfer from escrow CDT shares sufficient to satisfy Plaintiff's Judgment.

## RELIEF REQUESTED

WHEREFORE, Petitioner prays that the court enter an order:

1. Requiring the Bank of New York to turn over to Petitioner all of the assets held by it pursuant to the escrow agreement (up to the amount of the Judgment), whether those assets are in the form of the CDT, Inc. shares, or the proceeds thereof;

2. Enjoining the Bank of New York from transferring any assets pending resolution of this turnover order;

3. For the costs against any party contesting this Petition; and

4. For such and other relief as the Court deems appropriate.

Dated: New York, New York
       October 4, 2007

                              TRAIGER & HINCKLEY LLP

                              By: _____
                                  George R. Hinckley, Jr.

                              880 Third Avenue, 9th Floor
                              New York, New York 10022-4730
                              Tel. (212) 759-4933
                              Fax (212) 656-1531
                              Attorneys for Petitioner

## ATTORNEY VERIFICATION

CHRISTOPH C. HEISENBERG, an attorney duly admitted to practice law in the State of New York, under penalties of perjury, affirms the following:

That deponent is the attorney for the Petitioner in the action within; that deponent has read the foregoing **TURNOVER PETITION** and knows the contents thereof; that the same is true to the deponent's own knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters believes it to be true and the reason this verification is not made by Petitioner and is made by deponent is that Petitioner is not presently located in the county of New York, where the deponent-attorney maintains his office

*[signature]*

Christoph C. Heisenberg