SUPREME COURT OF NEW YORK
COUNTY OF NEW YORK

---

SUNNYSIDE DEVELOPMENT COMPANY, LLC,

                Petitioner,

                Index No.

-v-

BANK OF NEW YORK (as escrow agent),
CAMBRIDGE DISPLAY TECHNOLOGY, INC. and
OPSYS MANAGEMENT LIMITED,

                Respondents.

---

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF ITS ORDER TO SHOW CAUSE FOR TURNOVER ANY ESCROW ASSETS HELD BY BANK OF NEW YORK

TRAIGER & HINCKLEY LLP
880 Third Avenue
New York, New York 10022-4730
Tel. (212) 759-4933
Fax (212) 656-1531
Attorneys for Plaintiff

Case 1:07-cv-08825-LLS    Document 1-4    Filed 10/12/2007    Page 1 of 17

## TABLE OF CONTENTS

    Page

PRELIMINARY STATEMENT ..................................................................................................1

THE RESOLUTION OF OPSYS LIMITED'S
PROPERTY INTEREST IN THE EARLIER LITIGATION ........................................................3

    A.    Opsys's Admissions To The California District Court That It Has An Interest In The Escrow Account ........................................................................4

    B.    CDT's Admission Of Judgment Debtor's Interest In The Escrow Account To The California District Court ................................................................5

    C.    The Findings Of The California District Court ..........................................6

ARGUMENT ..................................................................................................................................7

I.    A TURNOVER IS REQUIRED PURSUANT TO
CPLR §5225(B) AND CPLR §5227 ......................................................................................7

    A.    CPLR 5225 And 5227 Provide For The Turnover Of Any Property Or Debt Owed To The Judgment Debtor ..........................................................7

    B.    Petitioner Stands In The Shoes of The Judgment Debtor, Opsys Limited. .........8

    C.    The Judgment Debtor Has An Interest In The Escrowed Property .....................9

        1.    The Escrow Account Was Created For The Benefit Of Opsys Limited And Its Creditors ..........................................................10

        2.    The Judgment Debtor and Its Parent Are Judicially Estopped From Denying Sunnyside's Rights To The Escrowed Funds. .........................11

    D.    Petitioner's Rights To The Property Are Superior To Respondent's Rights, Which Are Not Ripe ................................................................................12

CONCLUSION ................................................................................................................14

i

## TABLE OF AUTHORITIES

Page

*ABKCO Industries, Inc. v. Apple Films, Inc.*,
39 N.Y.2d 670, 385 N.Y.S.2d 511 (1976) .............................................................................. 9

*Anonymous v. Anonymous*,
137 A.D.2d 739, 524 N.Y.S.2d 823 (1988) ......................................................................... 12

*Bass v. Bass*,
140 A.D.2d 251, 253, 528 N.Y.S.2d 558, 561 (1st Dep't 1988) ............................................ 7

*Gen. Elec. Co. v. Inter-Am. Mktg. Sys.*,
220 A.D.2d 307, 307, 87 N.Y.2d 968 (1st Dep't 1995) ....................................................... 11

*Karaha Bodas v. Perusahaan*,
313 F.3d 70, 83 (2d Cir 2002) .............................................................................................. 8

*Leonia Bank v. Kouri*,
3 A.D.3d 213, 219, 772 N.Y.S.2d 251 (1st Dept. 2004) ...................................................... 11

*Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v. Eland Motor Car Co.*,
85 N.Y.2d 725, 729 (1995) ............................................................................................. 6, 8

*Perkins v. Perkins*,
226 A.D.2d 610, 641 N.Y.S.2d 396, 397 (1996) ................................................................ 12

*Port Chester Electrical Construction Corp. v. Atlas*,
40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d 983 (1976) ................................................. 9

*U.S. v. McDermott*,
507 U.S. 447, 449-450 (1993) ............................................................................................ 11

### Other Sources

CPLR § 5201(b) ....................................................................................................................... 9

CPLR § 5201(c)(2) .................................................................................................................. 9

CPLR §5225(b) ................................................................................................................ passim

CPLR §5227 ..................................................................................................................... passim

D.Siegel, Practice Commentaries, McKinney's Cons Laws of NY ..................................... 8, 9

Petitioner Sunnyside Development Company LLC ("Sunnyside" or "Petitioner") hereby respectfully submits the following Memorandum of Law in support of its Petition for a Turnover Order pursuant to CPLR §§5225(b) and 5227.

**PRELIMINARY STATEMENT**

Sunnyside is the holder of a judgment for $4.8 million, plus interest, for unpaid lease obligations. The Judgment Debtor, Opsys Limited, is a wholly-owned subsidiary of respondent CDT, Inc. ("CDT").

By this Special Proceeding, Judgment Creditor requests that the Court direct escrow agent Bank of New York to turn over to Sunnyside all of the shares of CDT stock (or their proceeds) currently held by it in escrow established on December 29, 2004. The Bank of New York should be required to turn these shares over to Sunnyside because the escrow account was created for the express purpose of paying claims against the Judgment Debtor, Opsys Limited. Sunnyside has a vested, immediate right to receive these funds from Opsys Limited to pay the judgment of more than $4.8 million awarded on May 29, 2007 ("Judgment").

There is little to dispute on this motion. CPLR §5225(b) provides the express authority for the motion, allowing a judgment creditor to stand in the shoes of the judgment debtor, and compel any non-party to turnover to it any property in which the judgment debtor has an interest. Here, Opsys Limiteds ability to satisfy the Judgment out of the escrowed shares already has been resolved by the United States District Court for the Northern District of California. In that litigation, the Judgment Debtor as well as its parent, CDT – the only other competing claimant on the escrow account – acknowledged the Petitioner's ability to access the escrow account. Indeed, CDT submitted the affidavit

1

of Michael Black, its Chief Financial Officer and member of its Board of Directors, in which he acknowledged that the account was established for precisely these types of claims:

- "[t]he 2004 transactions as structured **protected Opsys' creditors**"

- one of the protections that "Opsys' creditors" would enjoy was that "most of the consideration paid to Opsys and its shareholders **would be escrowed or placed in trust for the protection of Opsys' creditors**, rather than transferred outright to Opsys' shareholders."

Affidavit of Michael Black, CDT's Chief Financial Officer and member of its Board of Directors, ¶¶ 26, 28 (Heisenberg Aff. Exh. H)(emphasis added). As CDT, Inc.'s counsel told the California Court, "it's basically there for the sake of creditors" and "I think, that's really where the plaintiff ought to be looking." Tr. of May 16, 2007 Hearing, at 57 (Heisenberg Aff. Ex. K).

Based upon these representations, the California Court determined that "the contingent liabilities were ultimately the responsibility of Opsys Limited, not CDT, as indicated by the fact that CDT, Inc. withheld consideration owed to Opsys Limited in order to satisfy the contingencies." Memorandum and Order, dated August 29, 2007, at 11 (Heisenberg Aff. Ex. E)(emphasis added).

This Order to Show Cause now seeks the turnover of this property "owed to Opsys Limited in order to satisfy the contingencies."

This application is brought by way of an Order to Show Cause, as there is urgency that requires an immediate adjudication. Despite Respondents' representations to the California Court that Petitioners should be paid from the escrow funds, they have rebuffed Petitioner for months, refusing to permit the escrow agent to pay the Judgment. CDT, the parent of the Judgment Debtor, has delayed purely so that it can jump ahead of

2

Petitioner's rights: Only 126,082 shares (worth $1,512,984) remain in the account, and CDT recently submitted claims that will virtually empty the escrow account. The only thing standing in the way of CDT's attempt to secure for itself a priority in the escrow account is that its claim is not yet ripe: there is a 20-business day period before the escrow agent can release the funds, and therefore, CDT is not entitled to payment until October 18, 2007. Thereby, absent judicial relief on this motion, respondents are attempting to place beyond the reach of creditors <u>the very assets that they told the California Court back in May 2007 were the proper source for satisfying the Judgment</u>. CDT believes that if it can hold off paying Petitioner's legitimate claim until October 18th, it can deplete the account, and, to use its own words, "moot" Petitioner's rights.

The Court should not reward such inequitable conduct, and should require that Bank of New York immediately turn these assets over to Petitioner.

### THE RESOLUTION OF OPSYS LIMITED'S PROPERTY INTEREST IN THE EARLIER LITIGATION

This turnover order is required, because CDT and Opsys Limited have refused to honor their repeated representations to the California Court concerning Claimant's ability to access the escrow account to pay the judgment. As demonstrated below, CDT and Opsys Limited both acknowledged that ability while before the California Court.

Following the entry of the California Judgment, Sunnyside sought to have the judgment amended to include the parent, CDT, based upon successor liability theories. Petitioner sought to add CDT, Inc. based upon its acquisition of Opsys Limited's assets. In disputing successor liability, CDT and Opsys Limited each took the position that the 2002 and 2004 transactions did not harm Opsys Limited's creditors, because the transaction had created an escrow account from which Opsys Limited could satisfy its

3

creditors. In that litigation, respondents CDT, Inc. and Opsys Limited represented to the Court that the escrow account was established to satisfy these claims.[1]

Those statements are detailed below.

### A. The Judgment Debtor's Admissions To The California District Court That It Has An Interest In The Escrow Account

Opsys Limited, the Judgment Debtor in this case, has acknowledged its interest in the Escrow Account. To the California Court, Opsys Limited specifically confirmed that it could access the account to satisfy the liabilities:

> In the [2004] settlement, the parties recognized that, as with all acquisitions, Opsys Limited had potentially unknown liabilities. <u>Because satisfaction of Opsys Limited's liabilities was a precondition to exercise of the put option</u>, the Amendment Agreement included a provision whereby CDT would withhold in escrow 422,610 of the stock consideration otherwise payable to Opsys Limited shareholders. <u>CDT set aside the portion of the consideration to ensure that (a) contingent liabilities would be satisfied **by Opsys** or its shareholders if the contingencies materialized,</u> and (b) CDT did not assume Opsys Limited's liabilities.

Opsys Limited's Opposition To Motion To Add Cambridge Display Technology, Inc. As A Party And Judgment, filed April 23, 2007 at p. 5 (Heisenberg Aff. Ex. F)(emphasis added); see also *id.* at 12 ("The purpose of the escrow plainly is . . . to assure that if any unknown liabilities did emerge, they would be satisfied **by Opsys Limited** from the escrowed portion of the consideration, **and not by CDT**.")(emphasis added). Opsys Limited went further, confirming that "CDT set aside the portion of the consideration **to ensure that (a) contingent liabilities would be satisfied by Opsys** or its shareholders if the contingencies materialized." (*id.* at 5). As a Judgment Creditor, Sunnyside stands in the shoes of Opsys Limited with respect to the escrow account.

---

[1] Citations are to the exhibits annexed to the Affirmation of Christoph C. Heisenberg, submitted herewith.

4

### B. CDT's Admission Of Judgment Debtor's Interest In The Escrow Account To The California District Court

In addition to Opsys Limited acknowledging its rights, the only other party that might claim an interest in the escrowed funds, CDT -- the Judgment Debtor's parent -- also conceded Petitioner's rights in the California action.

The CDT personnel that drafted this provision have acknowledged that this escrow was created exactly for this purpose. Michael Black, CDT's Chief Financial Officer and a drafter of the transactional agreements (including the escrow agreement) has submitted an affidavit that acknowledges that the 2004 transaction was structured to protect Opsys Limited's creditors. He represented to the Court that "422,610 shares of CDT, Inc. stock went into an escrow account to cover [an existing arbitration] and unidentified liabilities, including unidentified contingent liabilities." (Heisenberg Aff. Ex. H at ¶28.)

CDT adopted this acknowledgement in its memorandum of law filed with the California Court:

> the proceeds of the transactions were held in escrow and trust **for the benefit of creditors**, known and unknown.

CDT Inc.'s Opposition To Pl.'s Motion To Add CDT Inc. As A Party To Action & Judgment, filed May 7, 2007 at 2 (Heisenberg Aff. Ex. G). Explaining the creditor's interests in the escrow agreement, CDT advised the California Court:

> 422,610 shares of CDT Inc. stock (at $12 a share, $5,071,320) went into escrow as security for contingent and unidentified liabilities of Opsys.

*Id.*, at 7.

5

CDT also represented to the California Court that the Judgment Debtor itself (not via CDT) had the ability to pay liabilities out of the escrow account:

> before the exercise of the Opsys Limited Option and its purchase of Opsys' stock, **CDT Inc. took steps** to ensure that it would not assume Opsys' liabilities and **that Opsys would pay those liabilities itself**. ... The 2004 Amended Settlement Agreement provided that all of Opsys' identified liabilities would be satisfied out of the consideration payable for the Opsys shares. CDT Inc. also deposited part of this consideration into an escrow account as security for any unidentified liabilities of Opsys, including contingent liabilities.

*Id.*, at 12.

Thus, both the Judgment Debtor and its parent have expressly acknowledged that the escrow fund is for the benefit of Opsys Limited's creditors.

### C.    The Findings of The California District Court

Based upon the parties' representations about the operation of the Transaction Agreement and the Escrow Agreement, the California Court found that:

> 422,610 shares of CDT stock valued at $5,071,320 went into escrow as security for contingent and unidentified liabilities. Black Dec p.28, Exh D at 9 - 10 clause 1.1(h). ... CDT claims that no shares have yet been distributed to shareholders, and will not be until other creditors are paid off.

Memorandum and Order of the United States District Court for the Northern District of California, dated August 29, 2007, at 6 (Heisenberg Aff. Ex. E). Further, the California Court determined that the escrow consideration was owed to Opsys Limited:

> In any case, the contingent liabilities were ultimately the responsibility of Opsys Limited, not CDT, as indicated by the fact that CDT had withheld consideration **owed to Opsys Limited in order to satisfy the contingencies**.

(*Id.* at 11)(emphasis added).

6

As demonstrated above, in the California action all of the potentially interested parties in this property represented that the Judgment Debtor, Opsys Limited, had a right to pay creditors from the escrow account, and that petitioner could be paid out of the account. The Respondents prevailed on that point as the District Court declined to hold CDT liable as a successor. Having prevailed on that point, their representations about the availability of the escrow fund are binding upon them here.

## ARGUMENT

### I. A TURNOVER IS REQUIRED PURSUANT TO CPLR §5225(B) AND CPLR §5227

The test for a turnover order under CPLR 5225(b) is simple: the turnover is appropriate where the judgment creditor shows that the judgment debtor is entitled to possession of the money received by respondents or that its rights to the money are superior to those of respondents. See *Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v. Eland Motor Car Co.*, 85 N.Y.2d 725, 729 (1995).

#### A. CPLR 5225 And 5227 Provide For The Turnover Of Any Property Or Debt Owed To The Judgment Debtor

The CPLR expressly contemplates turnover proceedings against a third party, such as the Bank of New York, which holds property of the Judgment Debtor, which is available to its judgment creditors. CPLR §5225(b) provides that:

> Upon a special proceeding commenced by the judgment creditor against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is

7

>insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

Similarly, CPLR §5227 permits such special proceedings against an entity which owes the judgment debtor a debt:

>Payment of debts owed to judgment debtor. Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment; or it may direct that a judgment be entered against such person in favor of the judgment creditor.

### B. Petitioner Stands In The Shoes of The Judgment Debtor, Opsys Limited.

Through these creditor remedies "a party seeking to enforce a judgment 'stand[s] in the shoes of the judgment debtor in relation to any debt owed him or a property interest he may own.'" *Karaha Bodas v. Perusahaan*, 313 F.3d 70, 83 (2d Cir 2002), quoting *Bass v. Bass*, 140 A.D.2d 251, 253, 528 N.Y.S.2d 558, 561 (1st Dep't 1988).

The Court of Appeals has specifically determined that this provision permits an action to recover the sums from a third party[2] that holds property in which the judgment debtor has an interest. The Court held:

>CPLR § 5225(b) permits a judgment creditor to seek satisfaction of the debtor's obligation by commencing a special proceeding against a third person in possession of money or personalty in which the judgment debtor has an interest. Rival claimants to the assets or funds may be joined in that proceeding so that the court may prioritize the competing interests (CPLR §§ 5227, 5239; see also Siegel, Practice Commentaries, McKinney's Cons Laws of NY, CPLR § 5239, at 443-444).

---

[2] Where the assets are held by a fiduciary, the turnover action lies against the fiduciary. CPLR § 5201(c)(2).

8

*In The Matter Of National Union Fire Insurance Co. v. Eland Motor Car Co.*, 85 N.Y.2d 725, 651 N.E.2d 1257, 628 N.Y.S.2d 238 (1995).

This ability of a judgment creditor to pursue the judgment debtor's interest in a contractual right[3] has been affirmed, repeatedly, by the Court of Appeals. *Port Chester Electrical Construction Corp. v. Atlas*, 40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d 983 (1976) (creditor can enforce debtor's contractual claims to reimbursement which are due); *ABKCO Industries, Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 385 N.Y.S.2d 511 (1976)(same).

In conclusion, a contractual right to have liabilities paid out of the escrowed funds is a right that should be turned over to Petitioner under CPLR §§ 5225 and 5227. As stated by Professor Siegal in his comments on the turnover practice, "[i]f from the judgment creditor's point of view the asset is worth pursuing as a matter of economics, *ABKCO* authorizes the pursuit notwithstanding the contingent nature of the asset, and even though nothing may come of the chase." Siegel, Practice Commentaries, supra, § 5201:5.

### C.   The Judgment Debtor Has An Interest In The Escrowed Property.

There is no issue concerning Opsys Limited's right to the escrowed funds, as the other potentially interested parties have conceded to the United States District Court for the District of California that the escrow funds were held for the benefit of the Judgment Debtor's creditors, as described below.

---

[3] Pursuant to CPLR § 5201(b), a money judgment can be enforced against any property "which could be assigned or transferred." *ABKCO*, 39 N.Y.2d at 674, 385 N.Y.S.2d at 513 ("We conclude that [the debtor's rights under the contract] constituted property . . . . That property was attachable because concededly it was assignable by [the debtor]." (emphasis added)).

9

1.  **The Escrow Account Was Created For The Benefit Of Opsys Limited And Its Creditors**

The Escrow Agreement was created as part of the December 2004 Transaction Agreement between Opsys Limited, CDT and OML, among other parties, to provide a means by which Opsys Limited could satisfy its liabilities. This statement about the escrow account's purpose confirms the recital to the Escrow Agreement, which states:

> Pursuant to the Transaction Agreement, <u>Opsys has exercised the Opsys Option, which requires that</u> the Reddy Escrow Shares and <u>the General Escrow Shares</u> issuable upon exercise of the Opsys Option registered in the name of the Escrow Agent (the "Escrow Consideration") <u>be placed in escrow hereunder and held as security for certain contingent liabilities of Opsys.</u>

Recital B2, Escrow Agreement (Heisenberg Aff. Ex. D)(emphasis added).

By the Transaction Agreement, the Judgment Debtor Opsys Limited required OML to enter into the escrow agreement. Transaction Agreement 9.15(B) (Heisenberg Aff. Ex. C). Indeed, the Escrow Agreement was an exhibit to Transaction Agreement, and entering the escrow agreement was a condition precedent to Opsys Limited's and CDT's consummation of the transaction. In the words of CDT's draftsman, Mr. Black, "most of the consideration paid to Opsys and its shareholders **would be escrowed or placed in trust for the protection of Opsys' creditors**, rather than transferred outright to Opsys' shareholders." (Heisenberg Aff. Ex. H). Or, as stated in CDT's memorandum: "the proceeds of the transactions were held in escrow and trust for the benefit of creditors, known and unknown." CDT Inc.'s Opposition To Pl.'s Motion To Add CDT Inc. As A Party, filed May 7, 2007 at 2 (Heisenberg Aff. Ex. G).

As these recitals show, although not a party to the Escrow Agreement, Opsys Limited is a clear intended beneficiary. Indeed, the Transaction Agreement expressly

10

specified that the escrow agreement could be enforced by third party beneficiaries. Transaction Agreement ¶35.1 (Heisenberg Aff. Ex. B.)("Any person (other than the parties to this agreement) who is given rights or benefits under clause 9 (Opsys Limited Option) of this agreement . . . shall be entitled to enforce those rights or benefits against the parties in accordance with the Contracts (Rights of Third Parties) Act 1999."). The escrow agreement was created by Clause 9.5, and the payment of contingent claims arises from Clause 9.15(B).

### 2. The Judgment Debtor and Its Parent Are Judicially Estopped From Denying Sunnyside's Rights To The Escrowed Funds

As detailed above, to establish that Opsys Limited – rather than its shareholders – had received equivalent value in the 2004 transactions, both Opsys Limited (controlled by CDT), and CDT made lengthy submissions to the California Court explaining that the escrow account was a benefit to <u>Opsys Limited</u>, and it held direct rights in the escrowed funds. Those representations by Opsys Limited and CDT, Inc. in the California action are binding upon them in this proceeding. It cannot now maintain that Opsys Limited has no rights to the escrow.

The doctrine of judicial estoppel serves to preclude a party which assumed a certain position in a prior legal proceeding and secured a judgment thereon, from assuming a contrary position in another action simply because his or her legal interests have changed. *Leonia Bank v. Kouri*, 3 A.D.3d 213, 219, 772 N.Y.S.2d 251 (1st Dept. 2004) ("The doctrine 'rests upon the principle that a litigant should not be permitted . . . to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise'"); *Gen. Elec. Co. v. Inter-Am. Mktg. Sys.*, 220 A.D.2d 307, 307, 87 N.Y.2d 968 (1st Dep't 1995) (dismissing defendant's counterclaims

11

on grounds of judicial estoppel since defendant successfully advanced the opposite position at the trial of plaintiff's claims).

The Appellate Division has applied the rule in these circumstances, in which a party claimed in a prior litigation to have one type of interest in property, and then later attempts to argue a different interest in the property. *Perkins v. Perkins*, 226 A.D.2d 610, 641 N.Y.S.2d 396, 397 (2nd Dept. 1996)(judicial estoppel barred a husband from contending in a divorce action that he had any interest in a farm titled in the wife's name, where he had testified to the contrary in an earlier action brought by a third-party creditor against him. In the earlier action, the husband repeatedly stated that the former wife purchased the property with her own assets and that he had not contributed to the purchase or upkeep of the property). Accord *Anonymous v. Anonymous*, 137 A.D.2d 739, 524 N.Y.S.2d 823 (1988) (precluding the husband from asserting ownership in action where he previously had disavowed an ownership interest). Like the parties in those cases, this Court should not allow Judgment Debtor Opsys Limited or its parent CDT to disavow these plain and clear statements to the California Court, simply because their interest in this courtroom are now different.

Thus, there can be no legitimate dispute but that Opsys Limited, the Judgment Debtor, has an interest in the escrow, based upon the California District Court's finding, which itself was based upon (1) an acknowledgement by the Judgment Debtor, and (2) the agreement by the only other potential claimant, the Judgment Debtor's parent, CDT.

**D.   Petitioner's Rights To The Property Are Superior To Respondent's Rights, Which Are Not Ripe**

It is anticipated that CDT will assert that it, too, has a claim to the escrowed funds. However, even if one accepts CDT's claim, Petitioner's rights as a Judgment

12

Creditor are superior to CDT's rights. Petitioner's claim is ripe, and due immediately. In contrast, CDT's claim is not even ripe or eligible to be paid. Accordingly, even if one assumes an interest by CDT, it is not a present creditor eligible to be paid, so its rights are not superior to Petitioner's rights.

Here, Petitioner's interest arose on February 2, 2005, when CDT sent a Disbursement Notice to the escrow agent, requesting distribution of the escrow to pay the claim in *Sunnyside v. Opsys Limited*. In response, OML issued a Contest Notice dated February 10, 2005, stating that "OML hereby files a Contest Notice and requests that no disbursement be made in respect of the Disbursement Notice until such time as the true cost of the claim can be established." This sequence makes petitioner's interest "first in time." Thus, the debt matured at least on May 29, 2007, when the cost of the claim became established, and Opsys Limited became entitled to payment by the provisions of the escrow agreement.

In contrast, even if one assumes that CDT, Inc. has a valid claim (it has supplied no information about the nature of its "claim" to be a creditor of Opsys Limited), that claim is not presently due. At the earliest, the claim is due on October 18, 2007 – twenty business days after the claim was submitted.)

CDT's repeated refusal to authorize the Bank of New York to pay the Judgment Creditor's Judgment constitutes a violation of the escrow agreement. (Copies of Petitioner's demands for payment out of escrow are attached as Heisenberg Aff. Ex. I, and CDT's refusal to honor those requests are attached as Heisenberg Aff. Ex. J).

Moreover, as discussed above, CDT is estopped from claiming an interest in the escrow funds, based upon its representations to the California Court that those funds were

escrowed for the benefit of the Judgment Debtor's creditors. As Sunnyside's claim on escrow is now mature, it should be satisfied out of escrow forthwith.

## CONCLUSION

For the reasons set forth herein, Petitioner respectfully requests that the Court direct Bank of New York to turn over to Sunnyside all of the monies held by it in the escrow account established by the December 29, 2004 escrow agreement.

Dated: New York, New York
October 4, 2007

TRAIGER & HINCKLEY LLP

By *[signature]*
Christoph C. Heisenberg
George R. Hinckley Jr.

880 Third Avenue
New York, New York 10022-4730
Tel. (212) 759-4933
Attorneys for Plaintiff

14