**EXHIBIT D TO THE AFFIRMATION**

EXHIBIT A TO THE AFFIRMATION.doc

**Exhibit C**

## ESCROW AGREEMENT

Escrow Agreement, dated as of December __, 2004 (the "Escrow Agreement"), among Cambridge Display Technology, Inc., a Delaware corporation (the "Buyer"), Opsys Management Limited, a company incorporated under the laws of England and Wales, with registered number 05307954 ("NewCo"), and The Bank of New York ("Escrow Agent").

### RECITALS

A. Buyer, NewCo, Opsys Limited ("Opsys") and certain shareholders of Opsys are party to a Transaction Agreement, dated October 23, 2002, as amended by an Amended and Restated Settlement and Amendment Agreement, dated as of December 14, 2004 (the "Settlement and Amendment Agreement" and as such agreement may be further amended, the Transaction Agreement"), pursuant to which Buyer subscribed for and purchased the Opsys UK Subscription Shares (as such term and other capitalized terms used herein without separate definition are defined in the Transaction Agreement) and Opsys and CDT granted the Opsys UK Options and CDT granted the Opsys Shareholders the Opsys Option;

B. Pursuant to the Transaction Agreement, Opsys has exercised the Opsys Option, which requires that the Reddy Escrow Shares and the General Escrow Shares issuable upon exercise of the Opsys Option registered in the name of the Escrow Agent (the "Escrow Consideration") be placed in escrow hereunder and held as security for certain contingent liabilities of Opsys;

C. NewCo has entered into a Deferred Consideration Agreement, dated as of December __, 2004, with the shareholders of Opsys, pursuant to which it will hold the CDT Shares to be issued by CDT for the benefit of the Opsys Shareholders (other than the Escrow Consideration) at the Opsys Share Completion Date and any portion of the Escrow Consideration released to NewCo from escrow in accordance with the terms hereof;

WHEREAS, the Buyer and NewCo desire the Escrow Agent to hold and dispose of the Escrow Consideration and the Escrow Agent is willing to do so on the terms and conditions hereinafter set forth;

Settlement and Amendment Agremment

NOW, THEREFORE, in consideration of the transactions contemplated by the Transaction Agreement and the Settlement and Amendment Agreement, and of the premises and the mutual agreements hereinafter set forth, the parties hereto do hereby agree as follows:

1. Appointment of the Escrow Agent. The Buyer and NewCo hereby appoint the Escrow Agent to serve as, and the Escrow Agent hereby agrees to act as, escrow agent upon the terms and conditions of this Escrow Agreement.

2. Deposit of the Escrow Consideration. The Buyer hereby deposits the Escrow Consideration with the Escrow Agent to be held and disposed of as provided in this Escrow Agreement. The funds and property held by the Escrow Agent hereunder, including without limitation any dividends or distributions thereon and any other earnings in respect thereof, are hereinafter called the "Escrow Fund." The Escrow Fund shall be held in trust and shall not be subject to lien or attachment of any creditor of any party hereto and shall be used solely for the purposes and subject to the conditions set forth herein. The Escrow Agent shall hold the Escrow Fund in an escrow account (the "Escrow Account") comprised of two subaccounts. The Escrow Agent shall hold in one subaccount the Reddy Escrow Shares and any dividends or distributions thereon (the "Reddy Sub-account") and shall hold in a separate sub-account the General Escrow Shares and any dividends or distribution thereon (the "General Sub-account").

3. Sale of Escrow Shares. At any time after the expiration of the 270 day or longer period after the Qualifying IPO during which NewCo is restricted from selling shares of common stock of Buyer pursuant to the lock-up agreement entered into by NewCo pursuant to the Transaction Agreement (such period, the "Lock-up Period"), NewCo may instruct the Escrow Agent to sell all or any portion of the Escrow Consideration consisting of CDT Shares for net proceeds in cash of not less than the IPO Price, subject to compliance with the applicable provisions of Rule 144 under the U.S. Securities Act of 1933 as amended (the "Act"), another applicable exemption from registration or pursuant to an effective registration statement covering such shares, provided that such net proceeds are immediately deposited by the Escrow Agent to the appropriate sub-account of the Escrow Account from which the portion of the Escrow Consideration to be sold was withdrawn. NewCo shall be responsible for paying all the expenses of the Escrow Agent and providing such indemnification as the Escrow Agent may reasonably require in connection with any such sale.

4. Distributions from the Escrow Accounts.

(a) Upon the receipt of a final award in or settlement of the *Damoder Reddy v. Opsys Ltd.* arbitration, ICDR No. 3OT-160-00473-03 (the "Reddy Arbitration"), Buyer shall give NewCo and the Escrow Agent notice of such award or settlement, together with payment instructions to the Escrow Agent, attaching a copy of such award or settlement, which notice shall specify the amount of such award or settlement and contain an estimate of any attorney's fees and expenses incurred or to be incurred by Opsys in defending or otherwise resolving such arbitration (the amount of such award or settlement, together with the amount of such fees and expenses, the "Payment Amount") and which payment instructions shall specify the number of CDT Shares to be transferred to Buyer, which shall be equal to that number of CDT Shares (or any successor security

2

thereto) held in the Reddy Sub-account that when multiplied by the IPO Price (with appropriate adjustments for any stock split or reverse stock split or other similar recapitalization of the outstanding shares of Class A Common Stock, par value $.01 per share of CDT, occurring after the closing of the Qualified IPO (any such stock split or recapitalization, a "Recapitalization")) shall most nearly equal the Arbitration Payment Amount, *provided that*, if cash or other Qualified Investments are then held in such sub-account, such Arbitration Payment Amount shall be satisfied from cash (including cash obtained from liquidation of such Qualified Investments), on the one hand, and CDT Shares, on the other hand, pro rata based on the relative portions of the Reddy Sub-account then comprised by each (with the CDT Shares being valued at the IPO Price (as adjusted for any Recapitalization) for such purpose) and the payment instructions to be provided to the Escrow Agent shall provide accordingly. Unless otherwise instructed in writing jointly by NewCo and Buyer, the Escrow Agent shall liquidate any Qualified Investments as provided in the payment instructions and shall transfer the cash or CDT Shares having a value equal to the Arbitration Payment Amount to Buyer as provided in the payment instructions.

(b) Upon the receipt of a final and unappealable judgment in or settlement of the cross-complaint filed by Damoder Reddy against Opsys (the "Reddy Cross-Complaint") in that certain action titled *Macau Commercial Pentalpha Offshore Limited v. Damoder Reddy*, U.S. District Court Case No. C-03-05914 MMC – ARB (the "Pentalpha Litigation"), Buyer shall give NewCo and the Escrow Agent notice of such judgment or settlement, together with payment instructions to the Escrow Agent, attaching a copy of such judgment or settlement, which notice shall specify the amount of such judgment or settlement and contain an estimate of any attorney's fees and expenses incurred or to be incurred by Opsys in defending or otherwise resolving such cross-complaint (the amount of such award or settlement, together with the amount of such fees and expenses, the "Cross-Claim Payment Amount") and which payment instructions shall specify the number of CDT Shares to be transferred to Buyer, which shall be equal to that number of CDT Shares (or any successor security thereto) held in the Reddy Sub-account that when multiplied by the IPO Price (with appropriate adjustments for any Recapitalization) shall most nearly equal the Cross-Claim Payment Amount, *provided that*, if cash or other Qualified Investments are then held in such sub-account, such Cross-Claim Payment Amount shall be satisfied from cash (including cash obtained from liquidation of such Qualified Investments), on the one hand, and CDT Shares, on the other hand, pro rata based on the relative portions of the Reddy Sub-account then comprised by each (with the CDT Shares being valued at the IPO Price (as adjusted for any Recapitalization) for such purpose) and the payment instructions to be provided to the Escrow Agent shall provide accordingly. Unless otherwise instructed in writing jointly by NewCo and Buyer, the Escrow Agent shall liquidate any Qualified Investments as provided in the payment instructions and shall transfer the cash or CDT Shares having a value equal to the Cross-Claim Payment Amount to Buyer as provided in the payment instructions.

3

(c) In the event that prior to the final termination of the separate Reddy Sub-account pursuant to Section 4(d) hereof, Damoder Reddy shall bring any other action, suit or proceeding against Opsys before any court or arbitration panel (an "Other Reddy Proceeding"), then upon the receipt of a final and unappealable judgment or arbitral award in or settlement of such Other Reddy Proceeding, Buyer shall give NewCo and the Escrow Agent notice of such judgment, award or settlement, together with payment instructions to the Escrow Agent, attaching a copy of such judgment, award or settlement, which notice shall specify the amount of such judgment, award or settlement and contain an estimate of any attorney's fees and expenses incurred or to be incurred by Opsys in defending or otherwise resolving such proceeding (the amount of such award or settlement, together with the amount of such fees and expenses, (the "Other Payment Amount") and which payment instructions shall specify the number of CDT Shares to be transferred to Buyer, which shall be equal to that number of CDT Shares (or any successor security thereto) held in the Reddy Sub-account that when multiplied by the IPO Price (with appropriate adjustments for any Recapitalization) shall most nearly equal the Other Payment Amount, *provided that*, if cash or other Qualified Investments are then held in such sub-account, such Other Payment Amount shall be satisfied from cash (including cash obtained from liquidation of such Qualified Investments), on the one hand, and CDT Shares, on the other hand, pro rata based on the relative portions of the Reddy Sub-account then comprised by each (with the CDT Shares being valued at the IPO Price (as adjusted for any Recapitalization) for such purpose) and the payment instructions to be provided to the Escrow Agent shall provide accordingly. Unless otherwise instructed in writing jointly by NewCo and Buyer, the Escrow Agent shall liquidate any Qualified Investments as provided in the payment instructions and shall transfer the cash or CDT Shares having a value equal to the Other Payment Amount to Buyer as provided in the payment instructions.

(d) Upon the earlier to occur of (i) the delivery of a release by Damoder Reddy of any and all claims against Opsys in form reasonably satisfactory to CDT, together with a dismissal of all proceedings by Reddy against Opsys, including without limitation, the Reddy Arbitration and the Reddy Cross-Complaint and any payment to CDT of any judgment, award or settlement in connection therewith, whether or not pursuant to the provisions of Sections 4(a)-(c) hereof, and (ii) the issuance of a final award in the Reddy Arbitration or the settlement thereof, the issuance of a final and unappealable judgment in the Reddy Cross-Complaint or the settlement thereof, the issuance of a final and unappealable judgment or award in any Other Reddy Proceeding that may have been commenced at any time prior thereto and the issuance of a final and non-appealable judgment in the Pentalpha Litigation or the settlement thereof, and , if such judgment or settlement in the Pentalpha Litigation shall provide for any payment by Damoder Reddy to Pentalpha, the expiration of a period of 12 years from the issuance of such award or settlement without the institution of any Other Reddy Proceeding, and the payment of all amounts to CDT in respect of any notice for withdrawal pursuant to Sections 4(a), 4(b) and 4(c) hereof, CDT and NewCo shall provide joint written

4

instructions to the Escrow Agent to transfer the remaining balance in the Reddy Sub-account to NewCo.

(e) In the event Buyer determines that any liability, contingent liability, claim, obligation or damage (collectively, "Claim") exists or has been asserted against Opsys (other than the Identified Liabilities up to the dollar amount withheld from the Option Exercise Price pursuant to Section 9.12 of the Transaction Agreement in respect of such Identified Liabilities) prior to the final termination of the Escrow Account hereunder, Buyer shall have the right (but not the obligation) to deliver to the Escrow Agent, with a copy to NewCo, a written notice (a "Disbursement Notice"). A Disbursement Notice shall set forth (i) the amount of such Claim or a good faith estimate of the amount thereof together with an estimate of any costs and expenses to be incurred in resolving such Claim (including, without limitation, reasonable attorneys' fees and expenses) (the "Claimed Amount"), (ii) a brief description of the facts giving rise to such Damages to the extent then known to the Buyer and (iii) payment instructions specifying the number of CDT Shares to be transferred to Buyer in respect thereof, which shall be equal to that number of CDT Shares (or any successor security thereto) held in the General Sub-account that when multiplied by the IPO Price (with appropriate adjustments for any Recapitalization) shall most nearly equal the amount of the Claimed Amount, *provided that*, if cash or other Qualified Investments are then held in such sub-account, such Claimed Amount shall be satisfied from cash (including cash obtained from liquidation of such Qualified Investments), on the one hand, and CDT Shares, on the other hand, pro rata based on the relative portions of the General Sub-account then comprised by each (with the CDT Shares being valued at the IPO Price (as adjusted for any Recapitalization) for such purpose) and the payment instructions to be provided to the Escrow Agent shall provide accordingly. On the twentieth Business Day following the date of receipt of such Disbursement Notice by the Escrow Agent, the Escrow Agent shall liquidate any such Qualified Investments and transfer to the Buyer cash and/or CDT Shares as specified in such payment instructions, *provided, however,* that if the Escrow Agent receives a Contest Notice (as defined in Section 4(f) hereof) from NewCo to such Disbursement Notice prior to the 15th Business Day following the date it receives such Disbursement Notice, the Escrow Agent shall disburse all or a portion of the amounts sought under such Disbursement Notice, but only in accordance with (x) joint written instructions executed by the Buyer and NewCo authorizing such disbursement or (y) a letter of instruction from the Buyer specifying the portion of the Claimed Amount to which it is entitled to receive payment and attaching a certified copy of a judgment of a court of competent jurisdiction or final award of an arbitration panel or settlement establishing Opsys' obligation in respect of such Claim together with an estimate of any costs and expenses incurred or to be incurred in connection with the resolution of the Claim relating to such Disbursement Notice together with payment instructions as provided above. It is expressly agreed that the failure by the Seller to deliver a Contest Notice within the time period specified above shall be deemed an irrevocable acceptance

5

Settlement and Amendment Agremment

by NewCo of its liability for the Claimed Amount as set forth in such Disbursement Notice or for such portion of the Claimed Amount as to which NewCo did not object.

(f) If NewCo disagrees with any item or amount shown on any Disbursement Notice, NewCo may, prior to the 15th Business Day following the date of receipt by the Escrow Agent of the Disbursement Notice, deliver a notice to the Buyer (with a copy to the Escrow Agent) setting forth, in reasonable detail, each disputed item or amount and the basis of NewCo's disagreement (the "Contest Notice").

(g) Notwithstanding the foregoing provisions of Sections 4(a), 4(b), 4(c), 4(d), 4(e) or 4(f), NewCo shall have the right to pay the Buyer cash directly to satisfy all or a portion of any settlement or award in the Reddy Arbitration, the Reddy Cross-Complaint, any Other Reddy Proceeding or any such Claim, and if NewCo shall do so prior to such time as the Escrow Agent shall have transferred such amounts of cash or Escrow Consideration to Buyer, NewCo and Buyer shall provide written confirmation to the Escrow Agent that such amount has been paid directly and revised payment instructions as to the amount of such award or settlement or such Claim to be satisfied by the transfer of CDT Shares or cash from the relevant Sub-account of the Escrow Fund.

5. Disbursements to NewCo from the General Sub-Account; Termination.

(a) On the first business day on or after each of the following dates (each an "Escrow Reduction Date"), but subject to the limitation below in this Section 5(a), the amount of the escrow to be held in the General Sub-account shall be reduced by the following percentages of the Escrow Consideration then held in the General Sub-account:

(i) 270 days following the Opsys Shares Completion Date, 50%;

(ii) one year and 270 days following the Opsys Share Completion Date: 25%;

(iii) two years and 270 days following the Opsys Share Completion Date: 40.8%; and

(iv) three years and 270 days following the Opsys Share Completion Date: 100%.

The Escrow Agent shall transfer to NewCo, in accordance with joint written instructions provided by Buyer and NewCo, that portion of the Escrow Consideration no longer required to be held in the General Sub-account as at such Escrow Reduction Date; *provided* that notwithstanding the foregoing provisions of this Section 5(a), the Escrow Consideration then eligible for release from the General Sub-account and transfer to

6

NewCo shall be reduced by (x) the number of CDT Shares (valued at the IPO Price (appropriately adjusted for any Recapitalization)) or cash theretofore transferred to the Buyer upon resolution of the Claims relating to any Disbursement Notice and (y) that number of CDT Shares (or any successor security thereto) that when multiplied by the IPO Price (with appropriate adjustments for any Recapitalization) or cash shall most nearly equal the sum of the aggregate Claimed Amounts set forth in any outstanding Disbursement Notice as of such date (the aggregate amount sought under any and all such Disbursement Notices are hereinafter referred to as "Reserved Amounts"), *further provided*, that if the General Sub-Account then contains both CDT Shares and cash or Qualified Investments, then the Escrow Consideration to be so released shall be comprised of CDT Shares, on the one hand, and cash (including cash to be realized upon liquidation of Qualified Investments), on the other hand, pro rata based on the relative portions of the General Sub-account comprised by each (with the CDT Shares being valued at the IPO Price (as adjusted for any Recapitalization) for such purpose) and the joint written instructions to be provided to the Escrow Agent shall provide accordingly. Buyer and NewCo shall consult in advance of each Escrow Reduction Date and provide the Escrow Agent joint written instructions as to the CDT Shares or if cash or Qualified Investments are held in such Sub-account, the cash (including cash to be obtained upon liquidation of such Qualified Investments) and/or CDT Shares to be transferred to NewCo at such Escrow Reduction Date, determined as provided above.

(b) In the event that at the final Escrow Reduction Date any payment made to NewCo under clause (iv) of the first sentence of Section 5(a) is reduced by a Reserved Amount, then promptly following the final resolution of all Claims relating to the Disbursement Notice corresponding to such Reserved Amount and disbursement of any CDT Shares (or successor securities or cash) to Buyer in respect of the resolution of such Claim in accordance with Section 4(e), the Escrow Agent shall pay to NewCo the amount, if any, by which the amount then held in the General Sub-account (valuing any CDT Shares as provided in Section 5(a)) exceeds the aggregate remaining Reserved Amounts in respect of all outstanding Disbursement Notices.

(c) This Escrow Agreement shall terminate on the latter of (i) the date of the last payment made by the Escrow Agent pursuant to this Section 5 and (ii) the date on which the remaining balance of the Escrow Fund shall have been paid to the party entitled hereto pursuant to Section 4.

6. Administration of Claims. In the case of any Claim asserted by a third party against Opsys with respect to which a Disbursement Notice has been lodged under this Agreement, Buyer shall permit NewCo (at the expense of NewCo) to assume the defense of any such Claim or any litigation relating thereto or resulting therefrom, provided, that (i) counsel for NewCo who shall conduct the defense of such Claim or litigation shall be reasonably satisfactory to the Buyer, and the Buyer may participate in such defense at its expense. Except with the prior written consent of the Buyer, NewCo

7

shall not, in the defense of any such Claim or litigation, consent to entry of any judgment or enter into any settlement that provides for injunctive or other non-monetary relief affecting the Buyer or Opsys or that involves monetary relief in excess of the Reserved Amount relating to such Claim or that involves the imposition of liability with respect to or admission to a crime or that does not include as an unconditional term thereof the giving by each claimant or plaintiff to Opsys of a release from all liability with respect to such Claim or litigation. In the event that the Buyer shall in good faith determine that the conduct of the defense of any Claim hereunder or any proposed settlement of any such claim by NewCo may be expected to affect adversely Buyer's or Opsys' liability for taxes or the ability of Buyer or any of its subsidiaries or affiliates to conduct its business, or involve a settlement in excess of the Reserved Amount, the Buyer shall have the right at all times to take over and assume control over the defense, settlement, negotiations or litigation relating to any such Claim. In the event that NewCo does not assume the defense of any such Claim as above provided, the Buyer shall have the full right to defend against any such Claim, and shall be entitled to settle or agree to pay in full such Claim. In any event, NewCo and the Buyer shall cooperate in the defense of any Claim subject to this Section 6 and the records of each shall be made available by each to the other with respect to such defense.

7. <u>Qualified Investments; Voting, etc.</u> (a) At the written direction of NewCo, delivered to the Escrow Agent, all or any part of the Escrow Fund that does not consist of CDT Shares (or any successor security) shall be invested by the Escrow Agent for the account and risk of the Opsys Shareholder Trust in any one or more Qualified Investments. As used herein, "<u>Qualified Investment</u>" shall mean (i) cash, (ii) obligations of, or obligations fully guaranteed as to timely payment of principal and interest by, the United States of America with a maturity date of one year or less from the date of investment, (iii) shares in investment companies registered as such under the Investment Company Act of 1940, as amended, which value their assets in accordance with Rule 2a-7 (or any successor rule) under such Act, (iv) certificates of deposit with an investment term of one year or less from the date of investment with any bank or trust company organized under the laws of the United States of America or the laws of any state thereof which has a long term debt rating from Moody's Investor's Service, Inc. ("<u>Moody's</u>") of at least Aaa or from Standard & Poor's Corporation ("<u>S&P</u>") of at least AAA or as suggested by NewCo and as to which the Buyer shall have given its prior consent, (v) municipal or corporate bonds with a maturity date of one year or less from the date of investment and rated at least Aaa by Moody's or AAA by S&P or suggested by NewCo and as to which the Buyer shall have given its prior consent, (vi) commercial paper with a maturity of not more than thirty days and rated at least P-1 by Moody's or A-1 by S&P or as suggested by NewCo and as to which the Buyer shall have given its prior consent and (vii) money market funds subject to the requirements of the Investment Company Act of 1940, as amended, invested in any one or more of the aforementioned types of investments.

8

Settlement and Amendment Agremment

(b) The Escrow Agent shall be, and hereby is, fully empowered to sell any Qualified Investment purchased by it pursuant to this paragraph in order to provide cash to make any payment required or permitted to be made hereunder by the Escrow Agent. The Escrow Agent shall not be liable for any Damages due to fluctuations in market rates resulting from a sale of Qualified Investments in accordance with the previous sentence or penalties incurred because of early redemption. The Escrow Agent will hold any Qualified Investments purchased by it hereunder without any responsibility other than for the safe keeping thereof.

(c) The Escrow Agent shall vote any CDT Shares (or successor security) in accordance with instructions received from NewCo.

(d) NewCo may, at any time following the expiration of the Lock-Up Period withdraw CDT Shares from the Escrow Fund by depositing with the Escrow Agent cash in US$ in immediately available funds equal to the IPO Price (appropriately adjusted for any Recapitalization) for each CDT Share to be withdrawn.

8. Taxes. The Seller shall provide the Escrow Agent with properly completed and executed IRS Form W-8 for NewCo. All interest or other income earned under the Escrow Agreement shall be treated for all tax purposes as earned by NewCo and shall be reported as such by NewCo. NewCo shall hold the Buyer harmless from any and all tax liability arising in the event that the Buyer is treated as the tax owner of all or any portion of earnings on the Escrow Fund.

9. Concerning the Escrow Agent.

(a) Subject to Section 3 and Section 9(b), the Buyer agrees to pay the Escrow Agent upon execution of this Agreement a fee of $6,000 for the services to be rendered hereunder and to pay or reimburse the Escrow Agent upon request for all expenses, disbursements and advances incurred or made by it in connection with carrying out its duties hereunder, including, without limitation, reasonable attorney's fees; *provided*, that NewCo shall be responsible for and shall pay 100% of any investment, trade or activity fees charged by the Escrow Agent to execute investment directions given by NewCo and any expenses incurred by the Escrow Agent pursuant to Section 3 hereof.

(b) Except as otherwise provided in Section 3 hereof, NewCo and the Buyer agree jointly and severally to indemnify the Escrow Agent for, and to hold it harmless against, any Damages, liability or expense incurred without gross negligence or bad faith on the part of the Escrow Agent or breach by the Escrow Agent of the terms of this Escrow Agreement, arising out of or in connection with its entering into this Escrow Agreement and carrying out its duties hereunder, including the costs and expenses of defending itself against any claim of liability. Notwithstanding the foregoing, as between NewCo and the Buyer, any indemnity to be paid to the Escrow Agent pursuant to the preceding sentence shall be borne 50% by the Buyer and 50% by NewCo. The indemnity

9

Settlement and Amendment Agremment

provided by this Section 9(b) shall survive the termination of this Escrow Agreement or the resignation or removal of the Escrow Agreement pursuant to Section 10 hereof.

(c) The Escrow Agent shall prepare and deliver to the Buyer and NewCo within ten Business Days after the end of each calendar month prior to termination of this Escrow Agreement a written account describing all transactions with respect to the Escrow Fund during such calendar month.

(d) The duties and responsibilities of the Escrow Agent hereunder shall be determined solely by the express provisions of this Escrow Agreement, and no other or further duties or responsibilities shall be implied.

(e) The Escrow Agent may act upon any writing provided by a duly authorized officer of any of the parties hereto believed by it in good faith to be genuine, and to be signed or presented by the proper person, and shall not be liable in connection with the performance by it of its duties pursuant to the provisions of this Escrow Agreement, except for its own willful misconduct, gross negligence or breach by it of the express terms of this Escrow Agreement.

(f) In the event of any ambiguity or uncertainty hereunder or in any notice, instruction or other communication received by Escrow Agent hereunder, Escrow Agent may, in its sole discretion, refrain from taking any action other than retaining possession of the Escrow Fund, unless, Escrow Agent receives written instructions, signed by NewCo and the Buyer, or a certified copy of a judgment of a court of competent jurisdiction, which eliminates such ambiguity or uncertainty.

(g) Escrow Agent shall not incur any liability for not performing any act or fulfilling any duty, obligation or responsibility hereunder by reason of any occurrence beyond the control of Escrow Agent (including but not limited to any act or provision of any present or future law or regulation or governmental authority, any act of God or war, or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility).

10. <u>Resignation of Escrow Agent; Appointment of Successor</u>. The Escrow Agent may at any time resign by giving ninety days' prior written notice of resignation to the Buyer and NewCo. The Buyer and NewCo may at any time jointly remove the Escrow Agent by giving ninety days' prior written notice signed by the Buyer and NewCo to the Escrow Agent. If the Escrow Agent shall resign or be removed, a successor escrow agent, which shall be a bank or trust company having offices in New York, New York and assets in excess of $2 billion, shall be appointed jointly by the Buyer and NewCo and notified to the Escrow Agent by written instrument executed by the Buyer and NewCo and delivered to the Escrow Agent and to such successor escrow agent and, thereupon, the resignation or removal of the predecessor Escrow Agent shall become effective and such successor escrow agent, without any further act, deed or

10

conveyance, shall become vested with all right, title and interest to all cash and property held hereunder of such predecessor Escrow Agent, and such predecessor Escrow Agent shall, on the written request of the Buyer and NewCo, on the one hand, or the successor escrow agent, on the other hand, execute and deliver to such successor escrow agent all the right, title and interest hereunder in and to the Escrow Fund of such predecessor Escrow Agent and all other rights hereunder of such predecessor Escrow Agent. If no successor escrow agent shall have been appointed within ninety days of a notice of resignation by the Escrow Agent, the Escrow Agent's sole responsibility shall thereafter be to hold the Escrow Fund until the earlier of its receipt of designation of a successor escrow agent, a joint written instruction by the Buyer and NewCo and the termination of this Escrow Agreement in accordance with its terms.

11. <u>Assignment</u>. Neither the Buyer nor NewCo shall sell, assign, transfer, or encumber, or in any other manner anticipate or dispose of any portion of the Escrow Fund on deposit with the Escrow Agent until the same shall be actually paid over to and received by the Buyer or NewCo, as the case may be, pursuant to the terms hereof.

12. <u>Notices</u>. Any and all notices or other instruments or papers to be sent to any party hereto by any other party hereto pursuant to this Escrow Agreement shall be (<u>a</u>) mailed by first-class, registered or certified mail, return receipt requested, postage prepaid, (<u>b</u>) transmitted by hand delivery, (<u>c</u>) sent charges prepaid by next-day or overnight mail or delivery or (<u>d</u>) sent by telecopy or telegram, addressed as follows:

    (i)    if to the Buyer, to

Cambridge Display Technology, Inc.
Building 2020
Cambourne Business Park
Cambridge CB3 6DW, United Kingdom
Telecopy: (0) 1954 713620
Telephone: (0) 1954 713633
Attention: Vice President,
    Legal & Intellectual Property

and

Debevoise & Plimpton
919 Third Avenue
New York, New York 10022
Telecopy: (212) 909-6836
Telephone: (212) 909-6000
Attention: Steven Ostner, Esq.

11

Settlement and Amendment Agremment

---

      (ii)    if to the Escrow Agent, to

The Bank of New York
Corporate Trust Division
101 Barclay Street, 8th Floor West
New York, NY 10286
Telecopy: (212) 815-5877
Telephone: (212) 815-3224
Attention: Odell Romeo Assistant Treasurer

      (iii)    if to NewCo, to

NewCo Ltd
c/o Andrew Holmes
Quester Capital Management Ltd
29 Queen Anne's Gate
London SW1H 9BU

with copies to:

Michael Holmes
3 Capel Close
Oxford OX2 7LA,

    and

Alexis Zervoglos
15 Ranelagh Grove
London SW3 4TB

and electronic copies (provided that any failure in transmission or receipt of such electronic copies shall not affect the validity of notice otherwise properly given) to:

Michael Holmes,
E-mail address: Michael.holmes@opsysdisplays.com

    And

Alexis Zervoglos,
E-mail address: alexis.zervoglos@opsysdisplays.com

or, in each case, to such other address as may be specified in writing to the other parties hereto.

12

13. <u>Binding Effect</u>. This Escrow Agreement shall be binding upon and inure to the benefit of the respective successors, assigns and legal representatives of the Buyer, NewCo and the Escrow Agent.

14. <u>Governing Law, etc</u>. This Escrow Agreement shall be subject to and governed in all respects, including, without limitation, as to validity, interpretation and effect, by the laws of the State of New York, without regard to the conflicts of laws principles thereof to the extent such principles would permit or require the application of the law of another jurisdiction to the extent that the same are not mandatorily applicable and would permit or require the application of the law of another jurisdiction. Each of the parties hereby waives the right to trial by jury in any such proceedings. Each of the parties hereto irrevocably (a) submits to the nonexclusive jurisdiction of the United States District Court for the Southern District of New York and of any New York State court sitting in New York City, in each case with all applicable courts of appeal therefrom, for the purposes of all legal proceedings arising out of or relating to this Escrow Agreement, (b) irrevocably consents to the service of any and all process in any such legal proceedings by the mailing of copies of such process, by certified or registered mail, return receipt requested, to the address set forth in Section 12 of this Agreement, and (c) waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum. Each of the parties agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. To the extent that any party has or hereafter may acquire any immunity from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to it or its property, such party hereby irrevocably waives such immunity in respect of such party's obligations under this Escrow Agreement. This Section 14 does not affect the right of any party to serve process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against any other party in any jurisdiction.

15. <u>Headings, Counterparts</u>. The headings of the several sections contained herein are for convenience only and do not define, limit or construe the contents of such sections. This Escrow Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

16. <u>Amendment; Waivers, etc.</u> No amendment, modification or discharge of this Escrow Agreement, and no waiver hereunder, shall be valid or binding unless set forth in writing and duly executed by the party against whom enforcement of the amendment, modification, discharge or waiver is sought and by the Escrow Agent. Any such waiver shall constitute a waiver only with respect to the specific matter described in

13

Settlement and Amendment Agremment

such writing and shall in no way impair the rights of the party granting such waiver in any other respect or at any other time. Neither the waiver by any of the parties hereto of a breach of or a default under any of the provisions of this Escrow Agreement, nor the failure by any of the parties, on one or more occasions, to enforce any of the provisions of this Escrow Agreement or to exercise any right or privilege hereunder, shall be construed as a waiver of any other breach or default of a similar nature, or as a waiver of any of such provisions, rights or privileges hereunder. The rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies that any party may otherwise have at law or in equity.

17. Severability. If any provision of this Escrow Agreement, including any phrase, sentence, clause, Section or subsection is inoperative or unenforceable for any reason, such circumstances shall not have the effect of rendering the provision in question inoperative or unenforceable in any other case or circumstance, or of rendering any other provision or provisions herein contained invalid, inoperative, or unenforceable to any extent whatsoever.

14

Settlement and Amendment Agremment

---

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be signed as of the day and year first above written.

THE BANK OF NEW YORK

By: _____
    Name:
    Title:

CAMBRIDGE DISPLAY TECHNOLOGY, INC.

By: _____
    Name:
    Title:

OPSYS MANAGEMENT LIMITED

By: _____
    Name:
    Title: