# EXHIBIT H TO THE AFFIRMATION

Case 1:07-cv-08825-LLS   Document 1-13   Filed 10/12/2007   Page 1 of 11

```
 1  PILLSBURY WINTHROP SHAW PITTMAN LLP
    BRUCE A. ERICSON #76342
 2  SHARON L. O'GRADY #102356
    ALICE KWONG MA HAYASHI #178522
 3  50 Fremont Street
    Post Office Box 7880
 4  San Francisco, CA 94120-7880
    Telephone: (415) 983-1000
 5  Facsimile: (415) 983-1200
    bruce.ericson@pillsburylaw.com
 6  sharon.ogrady@pillsburylaw.com
    alice.hayashi@pillsburylaw.com
 7
    Attorneys for Non-Party/Respondent
 8  CAMBRIDGE DISPLAY TECHNOLOGY, INC.
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SUNNYSIDE DEVELOPMENT COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>OPSYS LIMITED, a United Kingdom Company,<br><br>Defendant. | No. C-05-00553 MHP<br><br>**DECLARATION OF MICHAEL BLACK IN OPPOSITION TO PLAINTIFF'S MOTION TO ADD CAMBRIDGE DISPLAY TECHNOLOGY, INC. AS A PARTY TO ACTION AND JUDGMENT**<br><br>Date: May 16, 2007<br>Time: 1:00 p.m.<br>Courtroom: 15, 18th Floor<br>Judge: Hon. Marilyn Hall Patel |

1.   I, **MICHAEL BLACK**, declare as follows:

2.   I am the Chief Financial Officer for Cambridge Display Technology, Inc. ("CDT Inc."). I have held this position since March 2007. From September 2004 to March 2007, I was the Vice President, Finance, for CDT Inc. I have also been Assistant Company Secretary for CDT Inc. since March 2004. I have been Principal Financial Officer and Principal Accounting Officer for CDT Inc. from July 2004 to September 2005 and from July 2006 to the present. I have never been a director of CDT Inc.

3.   From June 2002 to September 2004, I was the Financial Planning and Analysis Manager for Cambridge Display Technology Limited ("CDT Ltd."). I also have held other positions with CDT Ltd. and have served as a director of CDT Ltd.

4.   I am a member of the Board of Directors of Opsys Limited ("Opsys"). I have been a director of Opsys since December 2004. I have not held any other positions with Opsys. I did not hold any position with Opsys at the time of the "2002 Transaction" discussed below.

5.   I have personal knowledge of the matters stated in this declaration and, if called as a witness, could testify competently thereto.

6.   I received a BA (Hons) in Management Studies from Selwyn College, University of Cambridge. I am trained in accounting and am an associate of the Chartered Institute of Management Accountants (1991 – present). As such, I have a broad knowledge of tax law in the United Kingdom.

**The 2002 Transaction**

7.   I am familiar with the structure of the "2002 Transaction" whereby CDT Ltd. acquired control of the assets of Opsys UK Limited ("Opsys UK"). I also am familiar with certain significant potential UK liabilities which were avoided by the structure of the 2002 Transaction.

8.   CDT Inc. deemed tax considerations to be of importance in determining the structure of the 2002 Transaction. For example, tax considerations were a major reason that the 2002 Transaction was not structured as a sale of Opsys' UK assets for CDT Inc. stock.

1  If CDT Inc. had acquired all of Opsys' UK assets for CDT Inc. stock in 2002, then Opsys
2  would have been taxed on the value of such stock less the value of any tangible assets sold.
3  The patents developed by Opsys' UK operations had a very low "basis" for UK tax
4  purposes, even though very significant sums had been spent developing the underlying
5  technology and prosecuting the patents. If CDT Inc. had acquired these patents, therefore,
6  Opsys would have been taxed on substantially the entire value of the stock received from
7  CDT Inc. Because Opsys did not have cash on hand or other means to pay such tax, and
8  because CDT Inc.'s stock was then illiquid, such a tax would have been a significant barrier
9  to completing the transaction. It is my understanding, as CDT Inc.'s Chief Financial
10 Officer, that the transaction whereby CDT Ltd. acquired control of Opsys' UK assets was
11 structured to avoid such a result.
12        9.    For the reasons described in the David Fyfe's declaration, CDT Inc. had no
13 interest in acquiring Opsys' US assets or liabilities. To the best of my knowledge and
14 belief, Opsys did not transfer any assets or liabilities of Opsys US Corporation ("Opsys
15 US") to Opsys UK. Specifically, Opsys did not transfer any intellectual property of Opsys
16 US to Opsys UK. This is entirely consistent with what CDT Inc. said in its final prospectus
17 of December 15, 2004 at page F-15, where it stated: "The terms of the Transaction
18 Agreement [meaning the 2002 Transaction] were entered into by the Company [meaning
19 CDT Inc. and its subsidiaries] so that it could gain control of and economic interest in the
20 UK assets and operations of Opsys (which had been transferred to Opsys UK immediately
21 prior to the transaction) in such a manner to avoid acquiring any interest in any other assets
22 or liabilities of Opsys." Bunzel Decl. (Dkt. 182) Ex. C at 119.
23        10.   Mr. Ainslie, in his declaration dated March 30, 2007 and filed April 2, 2007
24 (Dkt. 180) ("Ainslie Decl."), suggests that the language quoted immediately above was
25 "unusual," and he speculates that "the purpose of the transaction may be inconsistent with
26 the interests of creditors of Opsys Limited." Ainslie Decl. ¶ 8. His speculation is entirely
27 wrong and reflects a fundamental misunderstanding of the situation. As explained above,
28 the structure of the 2002 Transaction reflected two principal purposes: a proper business

700685555v2                              - 2 -                BLACK DECLARATION IN OPPOSITION TO
                                                              PLAINTIFF'S MOTION TO ADD CDT INC.
                                                              Case No. C 05-00553 MHP

1  purpose of obtaining certain assets (Opsys' UK assets) but not other assets (Opsys' US
2  assets); and sound tax planning. There was no purpose to place Opsys' creditors at any
3  disadvantage. To the contrary, and as further explained in paragraphs 26 through 29 below,
4  steps were taken so that most of the consideration paid to Opsys and its shareholders would
5  be escrowed or placed in trust for the protection of Opsys' creditors, rather than simply be
6  transferred outright to Opsys' shareholders.

7     11.   Sunnyside Development Company, LLC ("Plaintiff"), in its motion (Dkt.
8  179, at 11:17-12:9), and to a lesser extent Mr. Ainslie in his declaration (Dkt. 180, ¶ 7),
9  insinuate either (a) that CDT Inc. underpaid Opsys for its UK assets or (b) that CDT Inc.
10 moved the UK assets out of Opsys for the purpose of hindering Opsys' creditors. Neither
11 suggestion is correct.

12     (a)   The insinuation that CDT Inc. underpaid Opsys for its UK assets is not only
13        wrong, it is circular. The value assigned to the transaction is the then (pre-IPO)
14        value ascribed to the consideration given by CDT Inc. in the transaction (mainly
15        stock but also $5 million in cash). Mr. Ainslie concedes as much by noting that the
16        value was adjusted downward at December 2004 "due to changes in the value of
17        Cambridge [CDT Inc.] stock going to the Opsys Limited shareholders." Ainslie
18        Decl. ¶ 7. Besides, as reflected in CDT's Final Prospectus (Bunzel Decl. (Dkt. 182),
19        Ex. C, at 143), the price paid was not only **not** too low, it was vastly in excess of the
20        book value of the assets at the date of the transaction: the book value of the assets
21        was then $602,000; the value of research and development then in process was
22        $12,200,000; and fully $14,092,000 of the price was deemed "goodwill," meaning
23        that the price paid was more than double the book value of that which was acquired.
24     (b)   The insinuation that CDT Inc. moved assets out of Opsys for the purpose of
25        hindering Opsys' creditors is equally wrong, for the reasons stated in paragraph 10
26        above and for the reasons stated in Mr. Fyfe's declaration.

27     12.   Attached hereto as **Exhibit A** is a true and correct copy of Opsys' Disclosure
28  Letter, dated October 23, 2002, and addressed to CDT Acquisition Corp. (the name, at that

1  time, of CDT Inc.). (From this document we have redacted part 2, section 25; part 3,
2  section 18; and item 29 of the Disclosure Bundle (because they contain trade secrets and
3  other commercially sensitive information) and part 2, section 30 (because they contain
4  individuals' salaries).) Opsys provided this Disclosure Letter to CDT Inc. pursuant to the
5  Transaction Agreement executed October 23, 2002, by CDT Inc., CDT Ltd., Opsys, Opsys
6  UK, Opsys US, Opsys 2 Corporation and the directors of Opsys (Alexis Zervoglos and
7  Michael Holmes) ("Transaction Agreement"), a true and correct copy of which is attached
8  as Exhibit A to the Bunzel Decl. filed April 2, 2007 (Dkt. 182).
9    13.   In addition to the $5 million cash that Opsys received under the Transaction
10  Agreement in 2002, CDT Inc. effectively forgave a $900,000 loan that CDT Inc. had made
11  to Opsys earlier that year.

12  **Opsys UK (Later Renamed CDT Oxford) and Opsys Remain Separate Entities**

13    14.   Opsys UK was renamed CDT Oxford Limited ("CDT Oxford") late in 2002.
14  Henceforth in this declaration I shall refer to this entity as CDT Oxford.
15    15.   At all times after CDT Ltd. acquired control of CDT Oxford's operations,
16  CDT Oxford maintained employees, books of accounts, and bank accounts separate from
17  those of CDT Inc. and CDT Ltd. CDT Ltd., Opsys and CDT Oxford all have their own
18  audited accounts, as required by UK law. Each maintains its own share register. Each has
19  its own General Ledger. Each has its own board of directors.
20    16.   Through December 2004, Opsys' Chief Executive Officer and Chief
21  Financial Officer were Michael Holmes and Alexis Zervoglos. Damoder Reddy was
22  employed as Chief Operating Officer by either Opsys or Opsys US. Which of these two
23  companies employed Mr. Reddy was the subject of a legal action that settled out of court.
24  None of these individuals has ever been an employee of CDT Inc. or CDT Ltd. None of
25  them has ever been a member of CDT Inc.'s Board of Directors.
26    17.   None of the members of CDT Inc.'s Board of Directors has ever been a
27  member of the Board of Directors of Opsys, Opsys UK, or CDT Oxford.
28

1   18.   Beginning in October 2002, CDT Inc. reported 100% of the net profit or loss
2   of CDT Oxford in accounts using a method similar to the equity method. This means that
3   CDT Oxford's net profit or loss was reported as an item of other income or expense.
4   Effective January 1, 2004, CDT Inc. was required as a matter of accounting to fully
5   consolidate CDT Oxford's results as part of CDT Inc.'s consolidated financial statements.
6   This was described in the Final Prospectus of CDT Inc. at F-33 and F-34 (Bunzel Decl.
7   (Dkt. 182) Ex. C at 142-43). Nevertheless, CDT Oxford continued to be a company that is
8   separate and distinct from both CDT Inc. and CDT Ltd. As noted above, CDT Oxford
9   observes the normal corporate formalities.

10   **The 2004 Transactions and the IPO of CDT Inc.**

11   19.   After the 2002 Transaction, a dispute arose between Opsys and CDT Inc.
12   over whether the anti-dilution provisions of the Transaction Agreement had been triggered
13   by a financing entered into by CDT Inc. that resulted in the issuance of additional preferred
14   stock. Were the anti-dilution provisions of the Transaction Agreement triggered by this
15   financing, Opsys' shareholders would be entitled to more shares of CDT Inc.'s common
16   stock if certain put or call options provided for in the Transaction Agreement were
17   exercised. As stated in the Transaction Agreement, a number of events could cause such an
18   options exercise. Among the listed events that could lead to an options exercise was an
19   initial public offering ("IPO") by CDT Inc.

20   20.   CDT Inc. did hope to go public. On July 30, 2004 CDT Inc. filed a
21   registration statement with the Securities and Exchange Commission.

22   21.   To settle this anti-dilution dispute, and in anticipation of CDT Inc.'s IPO, the
23   parties to the Transaction Agreement entered into a Settlement and Amendment Agreement
24   on August 3, 2004, which amended the Transaction Agreement.

25   22.   On December 14, 2004, the same parties, as well as a newly created party,
26   Opsys Management Limited ("Opsys Management"), entered into an Amended and
27   Restated Settlement and Amendment Agreement (the "Amended Settlement Agreement"), a
28   true and correct copy of which is attached as Exhibit D to the Bunzel Decl. filed April 2,

1  2007 (Dkt. 182). I was involved in the negotiations leading to the execution of these two
2  settlement agreements.

3  23.  CDT Inc. priced its IPO December 15, 2004. Market trading on Nasdaq
4  commenced on December 16, 2004. The IPO formally closed on December 21, 2004. The
5  IPO price of CDT Inc.'s common stock was $12 per share.

6  24.  On December 29, 2004, and pursuant to the Transaction Agreement and the
7  Amended Settlement Agreement, Opsys' shareholders exercised their option requiring CDT
8  Inc. to acquire all the stock of Opsys in exchange for 931,633 shares of CDT Inc.'s
9  common stock (the "Opsys Limited Option").

10  25.  The exercise of the Opsys Limited Option rather than either one of the other
11  two options provided for in the Transaction Agreement resulted in tax benefits for Opsys.
12  Had Opsys exercised its put option requiring CDT Inc. to acquire the remaining 84%
13  interest in CDT Oxford, Opsys would have become liable for a tax charge of approximately
14  30% of the consideration received from CDT Inc. Exercise of the call option permitting
15  CDT Inc. to acquire the remaining 84% interest in CDT Oxford also would have resulted in
16  a taxable gain by Opsys.

17  26.  The 2004 transactions as structured protected Opsys' creditors in at least
18  three ways, as described in paragraphs 27, 28 and 29 below.

19  27.  First, shares of CDT Inc. stock were held back to cover known and identified
20  liabilities. As required under the Amended Settlement Agreement, CDT Inc. withheld from
21  the option exercise price 133,938 shares of CDT Inc. stock to ensure satisfaction of Opsys'
22  identified liabilities, as set forth in Schedule A to the Amended Settlement Agreement.

23  28.  Second, 422,610 shares of CDT Inc. stock went into an escrow to cover the
24  Reddy claim referred to in paragraph 16 above and unidentified liabilities, including
25  unidentified contingent liabilities.

26  29.  Third, the remaining CDT Inc. shares paid for Opsys were issued to Opsys
27  Management pursuant to a "Deferred Consideration Agreement" entered into to protect
28  Kodak and certain other known creditors. Attached hereto as **Exhibit B** is a true and

1  correct copy of the Deferred Consideration Agreement, dated December 29, 2004, between
2  Opsys Management and Opsys' shareholders at the time. (From this document we have
3  redacted, on privacy grounds, the addresses but not the names of the shareholders.) The
4  Amended Settlement Agreement (clause 5.1) required the delivery of a complete and
5  correct copy of the Deferred Consideration Agreement to CDT Inc. None of the CDT Inc.
6  shares held by Opsys Management has been paid out to the former shareholders. The
7  shares are to be paid first to a former trade creditor of Opsys (Kodak), then to former debt
8  holders that had provided venture capital to Opsys, and only then to the former
9  shareholders.

10    30.    As of December 29, 2004, when CDT Inc. acquired all of Opsys' stock, I
11  had no idea that Plaintiff was suing Opsys and CDT Ltd.

12    31.    Neither I, nor, to my knowledge, anyone at CDT Inc. or CDT Ltd., knew at
13  the time of CDT Inc.'s IPO that Plaintiff was planning legal action against CDT Inc. or
14  against CDT Ltd.

15    32.    Had CDT Inc. known at the time of its IPO that Plaintiff was planning legal
16  action against it or against CDT Ltd., or would claim that CDT Inc. or CDT Ltd. might
17  have some liability on Plaintiff's lease of real property to Opsys, CDT Inc. would not have
18  permitted the exercise of the option whereby it acquired Opsys' stock.

19                           **The 2005 Transaction**

20    33.    In May 2005, to simplify its corporate structure pursuant to a plan developed
21  in November 2004 that could not be implemented until after the completion of CDT Inc.'s
22  acquisition of Opsys, CDT Inc. transferred both its 16% interest in CDT Oxford and its
23  100% interest in Opsys to CDT Ltd. In addition, Opsys transferred its 84% interest in CDT
24  Oxford to CDT Ltd.

25    34.    As a result, both CDT Oxford and Opsys are now direct, wholly owned
26  subsidiaries of CDT Ltd. and indirect subsidiaries of CDT Inc. CDT Ltd. is a second-tier
27  subsidiary of CDT Inc., so CDT Oxford and Opsys are third-tier subsidiaries. Mr. Ainslie's
28  statements to the contrary in his declaration (Ainslie Decl. (Dkt. 180) ¶¶ 9-10) are wrong.

1    35.    Opsys has not liquidated.

2    36.    The transfer in the ownership of Opsys made no difference to the creditors
3  of Opsys. The transfer of 84% of the shares in CDT Oxford from Opsys to CDT Ltd. also
4  made no practical difference, because CDT Ltd. had, since October 2002, the right to 98%
5  of the profits of CDT Oxford (in exchange for managing and funding CDT Oxford),
6  rendering negligible the value of a shareholding in CDT Oxford (equivalent to 2% of future
7  profits).

8    37.    As of May 2005, at the time of this transfer, Plaintiff's complaint in this
9  action named as a defendant CDT Ltd. but not CDT Inc. Thus, the 2005 transaction
10 transferred equity to—not away from—an entity that Plaintiff was then suing.

11   38.    Attached hereto as **Exhibits C, D** and **E** are true and correct copies of the
12 cover page and Exhibit 21.1 (Exhibit 21.1 entitled "List of Subsidiaries of the Registrant")
13 to each of the last three annual reports on Form 10-K filed by CDT Inc. Exhibit C is from
14 2004; Exhibit D is from 2005; and Exhibit E is from 2006. As they clearly show, Opsys
15 was a subsidiary of CDT Inc., and CDT Oxford was a subsidiary of Opsys (hence a second-
16 tier subsidiary of CDT Inc.), as of December 31, 2004, but both became subsidiaries of
17 CDT Ltd. in 2005 and have remained so ever since.

18                    **Control of the Litigation**

19   39.    Plaintiff's suggestion that CDT Inc. controlled Opsys' defense of this action
20 is contrary to the facts.

21   40.    In 2006, Opsys had three directors: Stephen Chandler; Dr. Jeremy
22 Burroughes; and me.

23   41.    Stephen Chandler, in his capacity as a director of Opsys, supervised this
24 litigation for Opsys until December 2006, when he ceased his full-time employment with
25 CDT Ltd. He resigned as a director of Opsys in April 2007. I have supervised the litigation
26 for Opsys, in my capacity as a director of Opsys, since January 2007.

27 //
28 //

1  42.  As a director of Opsys, Mr. Chandler participated in a mediation in this
2  action on behalf of Opsys.
3  43.  As a director of Opsys, I participated in a settlement meeting with Plaintiff's
4  property manager, Frank Chiu, on February 17, 2007. David Fyfe, Chairman and Chief
5  Executive Officer of CDT Inc., was also present during this settlement meeting to represent
6  the interests of CDT Inc. (See Mr. Fyfe's declaration for his statement as to why he
7  attended this meeting.)
8  44.  I participated in another settlement meeting on February 26, 2007. Andrew
9  Fields, in-house counsel for CDT Inc., attended this meeting to represent CDT Inc.
10  45.  CDT Inc. took an interest in this litigation principally because Plaintiff had
11  named CDT Ltd. as a defendant in its original complaint and its first amended complaint,
12  and because Plaintiff had moved to add CDT Inc. as a defendant in November 2005.
13  46.  Because of Plaintiff's attempts to sue CDT Inc. and CDT Ltd., Mr. Fields
14  attended the trial of Plaintiff's complaint.
15  47.  I was excluded from the first six days of trial and could not attend on Opsys'
16  behalf because I was a potential witness.
17  48.  Although Mr. Chandler remained a director of Opsys at that time and a part-
18  time employee of CDT Ltd., he was not obliged to travel outside the UK under the terms of
19  his contractual arrangements. He therefore could not be required to attend the trial.
20  49.  The only other director of Opsys at the time, Dr. Jeremy Burroughes, did not
21  attend the trial because he is a scientist by training and would not have been able to
22  represent Opsys' interests effectively.
23  I declare under penalty of perjury under the laws of the United States of America
24  that the foregoing is true and correct.
25  Executed this 8th day of May, 2007 at Royston, England, UK.

Michael Black