**EXHIBIT J TO THE AFFIRMATION**

Case 1:07-cv-08825-LLS   Document 1-15   Filed 10/12/2007   Page 1 of 6

# CDT

Cambridge Display Technology, Inc.
c/o Cambridge Display Technology Limited
Building 2020, Cambourne Business Park, Cambridgeshire, CB23 6DW   UK
Tel: +44 (0) 1954 713600    Fax: +44 (0) 1954 713620    www.cdtltd.co.uk

4th September 2017

Sunnyside Development Company Limited
c/o Mr Richard Eng
47375 Fremont Boulevard
Fremont
CA 94539
California
U.S.A.

Dear Mr Eng,

We have received through the lawyers a letter which makes a claim on behalf of Sunnyside against the Opsys escrow account. I thought it might be useful if I explained to you directly the situation with regard to the shares of CDT Inc. held by Opsys Management Limited (OML), including those held in escrow.

When we purchased Opsys Limited in December 2004, the agreed consideration was 797,69 shares of CDT Inc. stock to OML. At the time arrangements were made to settle all known liabilities of Opsys Limited as follows:

- certain Opsys Limited creditors agreed to become beneficial owners of a portion of the shares being issued to OML;

- other, smaller creditors, were paid in cash, with CDT Inc. providing funding to Opsys Limited to settle these;

- an escrow was set up to cover any liability from Damoder Reddy's employment claims against Opsys Limited and any unknown liabilities which might become known or arise during the life of the escrow account;

Since Sunnyside had not made its claim against Opsys Limited known to either Opsys Limited or CDT Inc., no special provision was made for any liability in relation to rent of the Fremont facility.

The current status of the 797,695 shares of CDT Inc. stock is that 569,209 are currently held by OML, approximately 6,920 were sold by OML into the market to cover its expenses, some 95,484 or so have been cancelled and 126,082 remain in escrow. Shares have been cancelled because CDT has made claims against the escrow account in relation to the settlement of the

Damoder Reddy employment claims and also in relation to legal costs incurred in connection with the current litigation. Additional legal costs have been incurred since the last claim was made against the escrow in November 2006 which, if claimed, would result in the cancellation of approximately 100,000 more shares from the escrow. The escrow is thus close to exhaustion.

The purpose of the escrow was to compensate CDT Inc. in case additional creditors or claims later surfaced that caused the value of Opsys Limited to be lower than CDT Inc. had reasonably expected it to be in December 2004. The owner of the shares held in escrow is OML. Opsys Limited has no interest in the escrow and no claim against it.

Therefore, we do not understand the basis of your claim against the escrow shares. The escrow itself is not an entity against which a claim can be made, but rather is an asset controlled jointly by OML and CDT Inc and held as security in favour of CDT Inc. The other party to the escrow is OML. If Sunnyside believes it has a claim against OML, we do not understand why it is making a claim solely against the shares held in escrow, especially since the escrow account is nearly exhausted.

Following the special stockholders meeting of CDT Inc. on September 19, 2007, we expect that Sumitomo Chemical will promptly cash out all outstanding shares of CDT Inc. OML would receive a cash payment of approximately $6.9 million at that time. It would not be at all surprising if OML were to distribute that cash to the beneficial owners, including certain former creditors of Opsys Limited, very shortly thereafter. After the cash has been distributed, OML would no longer have any assets with which to settle any claim against it.

It appears from the letter from your lawyer that Sunnyside believes that it has a claim against the shares of CDT Inc. owned by OML. If this is the case and Sunnyside fails to make any claim against these shares and they are cashed out and the funds distributed, CDT Inc. can only view that failure as evidence that Sunnyside has not taken all reasonable steps to mitigate its losses.

Yours Sincerely,

Michael Black

Chief Financial Officer

c.c.   Mr Richard Eng



**Pillsbury
Winthrop
Shaw
Pittman** LLP

1540 Broadway
New York, NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

September 25, 2007

Maria T. Galeno
Partner
Phone: 212.858.1833
maria.galeno@pillsburylaw.com

VIA EMAIL

Christopher Heisenberg, Esq.
Traiger & Hinckley LLP
880 Third Avenue
9th Floor
New York, New York 10022-4730

Re: *Sunnyside Development Company, LLC, v. Opsys Management Limited, et al.*, Sup. Ct. County of New York - No. 112617/07

Dear Mr. Heisenberg:

I write to respond to the questions that you raised in our telephone conversations last week concerning the above-referenced matter.

You asked several questions about the Escrow Agreement dated December 29, 2004 between Cambridge Display Technology, Inc. ("CDT"), Opsys Management Limited ("OML") and The Bank of New York. Before turning to those questions, I would note that this Escrow Agreement was filed as an exhibit to CDT's Form 10-K for 2004 (see http://www.sec.gov/Archives/edgar/data/1297968/000119312504213208/dex1045.htm) and thus has been public since March 2005. The Escrow Agreement also was the subject of proceedings in the California litigation between your client Sunnyside Development Company, LLC ("Sunnyside") and Opsys Limited ("Opsys"), *Sunnyside Development Company, LLC, v. Opsys Limited, a United Kingdom Company, and CDT Limited, a UK Company*, No. C-05-0553-MHP (N.D. Cal.) (the "California Litigation"). It was, for example, part of Exhibit D to the declaration of Sunnyside's California counsel, Robert H. Bunzel, filed April 2, 2007 ("Bunzel Decl."). *See* Bunzel Decl. ¶ 6 (the declaration is docket entry no. 182-1; Exhibit D is part of docket entry no. 183). Mr. Bunzel submitted his declaration as part of Sunnyside's unsuccessful motion to add my client CDT as a party to the action and judgment in the California Litigation.

500174084v1

Christopher Heisenberg, Esq.
September 25, 2007
Page 2

The responses to your questions are as follows:

*Timing of further disbursements from the escrow:* No assets (be they CDT shares or funds derived from such shares) held in the escrow account maintained by The Bank of New York may be disbursed until the twentieth "Business Day" following the date of receipt by the Escrow Agent of a notice of claim against the account ("Disbursement Notice") served on the Escrow Agent by CDT. *See* Escrow Agreement § 4(e). The only Disbursement Notices currently outstanding are two Disbursement Notices, both dated and served on September 19, 2007. Accordingly, the earliest date by which any distributions may be made would be 20 "Business Days" after September 19, 2007.

*Entitlement to draw on the Escrow Account:* The Escrow Agreement was, as it states, designed to deal with, and create security for, certain contingent liabilities of Opsys (called "Claims") and costs and expenses related to such Claims. While the Escrow Agreement has various provisions, for present purposes I would note that, among other things, it gives CDT the right to serve Disbursement Notices of the type described above. I understand that a purpose of this provision was to adjust the price that CDT paid for the equity of Opsys if "Claims" caused the value of Opsys to be lower than that for which CDT bargained in December 2004.

Pursuant to this provision, CDT has previously served Disbursement Notices seeking to indemnify CDT for fees and expenses incurred in connection with defending the California Litigation. *See* Letter of Michael Black to Sunnyside's principal Richard Eng dated September 4, 2007. For a like purpose, CDT recently served the two Disbursement Notices dated September 19, 2007. The two Disbursement Notices will leave the escrow close to exhaustion, a point noted in Mr. Black's letter. Thus, the question of whether the Escrow Account or the provisions of the Escrow Agreement might have been used to resolve your client's claim is now, for all practical purposes, moot.

*CDT shares held by OML not in escrow:* As noted in Mr. Black's letter, of the 797,695 shares of CDT stock paid for the equity in Opsys, most—namely, 569,209 shares—went to OML and are not held in escrow. Disbursement of these shares (or of funds derived from such shares) is governed by the Deferred Consideration Agreement dated December 29, 2004 between OML and the "Shareholders" of OML (as defined by that Agreement), a copy of which was filed in the California Litigation as Exhibit B to the declaration of Michael Black (docket entry no. 204). CDT is not a party to the Deferred Consideration Agreement.

Christopher Heisenberg, Esq.
September 25, 2007
Page 3

CDT's obligation to make payment for OML's shares of CDT stock is created by the Agreement and Plan of Merger, dated as of July 31, 2007, by and among Sumitomo Chemical Co., Ltd., Rosy Future, Inc. and Cambridge Display Technology, Inc. ("Merger Agreement"), which was filed with the SEC as part of CDT's definitive proxy statement. *See* http://www.sec.gov/Archives/edgar/data/1297968/000119312507185537/ddefm14a.htm. The Merger Agreement, which was approved by CDT's shareholders on September 19, 2007, entitles each shareholder of CDT to receive $12 per share upon surrender of the certificates representing the shareholder's CDT common stock. *See* Article II of the Merger Agreement. I understand that my partner Bruce Ericson has discussed the timing of this payout process with Sunnyside's California lawyer, Robert Bunzel and that, as they have discussed, the payout process will commence this week.

I trust that I have responded to all of your questions.

Very truly yours,

Maria T. Galeno

cc:   Robert H. Bunzel, Esq.
      Bruce A. Ericson, Esq.