# EXHIBIT K TO THE AFFIRMATION

1                                    PAGES 1 - 73

2                  UNITED STATES DISTRICT COURT

3               NORTHERN DISTRICT OF CALIFORNIA

4     BEFORE THE HONORABLE MARILYN HALL PATEL, JUDGE

5     SUNNYSIDE DEVELOPMENT        )
      COMPANY,                     )
6                                  )
                   PLAINTIFF,      )
7                                  )
       VS.                         )        NO. C 05-553 MHP
8                                  )
      OPSYS, LTD.                  )
9                                  )
                   DEFENDANT.      )
10    _____  )

11                              SAN FRANCISCO, CALIFORNIA
                                WEDNESDAY, MAY 16, 2007
12
                          **TRANSCRIPT OF PROCEEDINGS**
13
      **APPEARANCES:**
14
      FOR PLAINTIFF:           BARTKO ZANKEL TARRANT & MILLER
15                             900 FRONT STREET
                               SUITE 300
16                             SAN FRANCISCO, CA  94111
                          BY:  **ROBERT H. BUNZEL**
17                             **ALYSON L. HUBER**
                               **BRIAN VILLAREAL**
18                             ATTORNEYS AT LAW

19
      FOR DEFENDANT:           ORRICK HERRINGTON & SUTCLIFFE
20                             THE ORRICK BUILDING
                               405 HOWARD STREET
21                             SAN FRANCISCO, CA  94105
                          BY:  **JAMES E. BURNS, JR.**
22                             **JUSTIN MYER LICHTERMAN**
                               ATTORNEYS AT LAW
23                   **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

24    REPORTED BY:             JAMES YEOMANS, CSR #4039, RPR
                               OFFICIAL REPORTER
25                   COMPUTERIZED TRANSCRIPTION BY ECLIPSE

1    --

2         **THE COURT:**  DON'T MENTION THAT.

3         **MR. BUNZEL:**  AS MUCH AS I HATE TO SAY IT.

4         **THE COURT:**  WE JUST WENT THROUGH THAT.

5         **MR. BUNZEL:**  WE HAVE TO HAVE FURTHER PROCEEDINGS,

6    THEY'RE ALL EQUITABLE THEY DON'T REQUIRE A JURY, BUT THEY WILL

7    REQUIRE SOME EXPLANATION.

8         **THE COURT:**  THAT'S EVEN WORSE.

9         **MR. ERICSON:**  I'D LIKE TO RESPOND BRIEFLY TO A COUPLE

10   OF POINTS, I THINK, ARE MISAPPREHENSIONS REALLY.

11        FIRST OF ALL, TWO CHARACTERIZATION OF THE MAY 2005

12   TRANSACTIONS, THERE WAS, AT LEAST, AN INSINUATION AND MAYBE

13   MORE THIS WAS NEFARIOUS, IF NOT FRAUDULENT.

14        **MR. BUNZEL:**  NOT WHAT I INTENDED.

15        **MR. ERICSON:**  WELL, TALK ABOUT FRAUDULENT CONVEYANCE,

16   I HEARD THE WORD FRAUDULENT, BUT SOME INSINUATION THERE WAS

17   SOMETHING IMPROPER ABOUT THIS.

18        BUT LOOK AT WHAT HAPPENED.  WE HAVE STOCK MOVING FROM

19   A NON-DEFENDANT TO A DEFENDANT, IS THAT THE WAY SOMEBODY MAKES

20   FRAUDULENT CONVEYANCE BY CONVEYING STOCK FROM A NON-PARTY TO A

21   DEFENDANT?

22        NO, OF COURSE NOT.  IF SOMEBODY WISHES TO PUT

23   SOMETHING OUT OF CREDITORS' REACH THEY DON'T CONVEY IT TO

24   SOMEONE WHO'S A DEFENDANT IN THE CASE.  THEY DO EXACTLY THE

25   OPPOSITE, THEY CONVEY IT TO SOMEBODY IN THE SUNNY PLACE FOR

1   SHADY PEOPLE OR SOMETHING LIKE THAT, BUT THEY DON'T CONVEY

2   THINGS TO A DEFENDANT, YET THAT'S WHAT HAPPENED HERE.

3          AS I EXPLAINED EARLIER, THE EQUITY IN AN OPSYS LIMITED

4   WENT TO CDT LIMITED, AT THE TIME IT WAS A DEFENDANT IN THIS

5   CASE.  SO I MEAN, THE NOTION THAT THIS WAS SOMEHOW CREDITOR

6   AVOIDANCE OR DESIGNED TO PREJUDICE SUNNYSIDE OR ANY OTHER

7   CREDITOR JUST FLOUNDERS ON THE FACTS, THE CONVEYANCES EITHER

8   BETWEEN PARTIES IN THIS CASE OR FROM NON-PARTIES TO PARTIES IN

9   THIS CASE AND THERE JUST NO WAY THAT CAN BE TO THE PREJUDICE OF

10  ANY CREDITOR.

11         SECOND POINT I WANT TO MAKE, WITH RESPECT TO THE

12  NOTION, THE ANALOGY THREE-CARD MONTE WAS USED.  THREE-CARD

13  MONTE IS, AS I UNDERSTAND IT, SOME SORT OF GAME, THINGS GET

14  HIDDEN AND SO ON, THERE'S NOTHING HIDDEN HERE.

15         THE MONEY THAT WAS USED OR THE CONSIDERATION FOR THE

16  TRANSACTIONS IN 2004, THE CDT, INC. STOCK THAT WAS GIVEN FOR

17  THE 2004 TRANSACTION, SOMETHING ON THE ORDER OF 800, 900 SHARES

18  OF CDT, INC. STOCK, WHICH IS WORTH OF A LOT OF MONEY THEN AND

19  UNFORTUNATELY QUITE A BIT LESS MONEY TODAY, MOST OF THAT IS

20  STILL IN THE ESCROW OR IN WHAT'S CALLED OPSYS MANAGEMENT, IS

21  SORT OF ESCROW.

22         IT'S NOT GONE TO THE FORMER SHAREHOLDERS OF OPSYS

23  LIMITED EXCEPT IN VERY SMALL AMOUNTS AND IN SATISFACTION OF

24  INDIVIDUAL CLAIMS THEY HAD.  MOST OF IT IS STILL SITTING THERE

25  IN EITHER IN A FORMAL ESCROW OR IN SOMETHING THAT IS THE

1    EQUIVALENT OF AN ESCROW, THAT IS OPSYS MANAGEMENT STRUCTURE AND

2    IS AVAILABLE.

3         **THE COURT:**  THAT CAN BE USED TO SATISFY ANY JUDGMENT

4    IN THIS CASE?

5         **MR. ERICSON:**  I'M RELUCTANT TO SPEAK FOR ENTITIES I

6    DON'T REPRESENT THAT ARE, OBVIOUSLY, OF INTEREST SOMEWHAT

7    DIFFERENT THAN MY CLIENTS OWN INTEREST, SO I REALLY CANNOT

8    SPEAK DEFINITIVELY TO THAT.

9         BUT THE MONEY IS THERE, IT'S BASICALLY THERE FOR THE

10   SAKE OF CREDITORS.  AND WHILE I CAN'T SAY WHETHER IT'S EASY OR

11   HARD OR SOMETHING, I DON'T KNOW THAT THERE'S ANYTHING THAT

12   PREVENTS MR. BUNZEL AND HIS CLIENT FROM LOOKING THROUGH OPSYS

13   MANAGEMENT.

14        AND THERE'S STILL SOMETHING ON THE ORDER OF, BETWEEN

15   THE ESCROW AND THE OPSYS MANAGEMENT, SOMETHING IN THE ORDER OF

16   700,000 SHARES OF CDT, INC. STOCK.  UNFORTUNATELY NOT WORTH

17   WHAT IT ONCE WAS.

18        IT'S SITTING IN SORT OF ESCROW, SORT OF QUASI ESCROWS,

19   BASICALLY SITTING THERE BECAUSE OF CREDITOR CLAIMS AND THE

20   LIKE, NOT BEEN DISTRIBUTED TO THE FORMER SHAREHOLDERS OF OPSYS

21   LIMITED.  I THINK, THAT'S REALLY WHERE THE PLAINTIFF OUGHT TO

22   BE LOOKING AND THAT WHAT THEY'RE ATTEMPTING TO DO HERE.

23        WHAT PLAINTIFF IS ATTEMPTING TO DO HERE IS SOMETHING

24   THAT JUST CANNOT BE FIT WITHIN ANY OF THESE DOCTRINES THEY

25   MENTIONED.

1        **MR. ERICSON:** VERY QUICKLY ON THAT. I DON'T THINK

2   THERE'S ANY THEORY THAT CDT UNDERPAID. IT PAID AN AMOUNT, THAT

3   BOOK SHOW TO BE VASTLY IN EXCESS OF BOOK VALUE OF THAT WHICH IT

4   GOT WAS TREMENDOUS AMOUNT OF GOOD WILL THAT WAS PUT ON THE

5   BOOKS BECAUSE THE PRICE PAID FOR THESE ENTITIES WAS AT LEAST

6   DOUBLE THEIR BOOK VALUE.

7        AND THE RULE HE SUGGESTING IS, I THINK, FOR THE

8   REASONS YOUR HONOR MENTIONED, JUST COMPLETELY WRONG. THE IDEA

9   THAT YOU CAN'T BUY SOMETHING FROM, YOU CAN'T BUY A CORPORATION

10  OR YOU CAN'T BUY SOMETHING FROM A CORPORATION UNLESS YOU PAY AN

11  AMOUNT SUFFICIENT TO COVER ALL THEIR LIABILITIES, THERE'S NO

12  BASIS IN LAW FOR THAT SORT OF ARGUMENT.

13       YOU CAN'T UNDERPAY FOR THE ASSETS, THERE'S NO RULE OF

14  LAW YOU HAVE TO BE DADDY WARBUCKS AND PAYOFF ALL THEIR OTHER

15  CREDITORS TO APPLY SOMETHING FROM LIMITED.

16       YOUR HONOR PUT YOUR FINGER ON IT, THE ONLY REAL ISSUE

17  YOU MAKE YOUR CREDITORS WORSE OFF. THERE'S NO WAY CDT MADE

18  OPSYS CREDITORS WORSE OFF BY PUTTING MONEY INTO OPSYS, BY

19  PUTTING A LOT OF CDT STOCK WHICH IS VALUE IN THERE. AND AS I

20  SAID, ALMOST ALL THE CDT STOCK IS STILL SITTING THERE IN ESCROW

21  OR IN OPSYS MANAGEMENT, IT'S NOT GONE WITH THE WIND OR

22  DISAPPEARED OR ANYTHING.

23       **THE COURT:** IS THERE ENOUGH TO COVER THE JUDGMENT IN

24  THE CASE?

25       **MR. ERICSON:** IF THE CURRENT STOCK PRICE, I DON'T

1    THINK THERE IS.  I THINK, REASON SIGNIFICANT PART OF IT, I

2    THINK THE CURRENT PRICE OF CDT STOCK, I DON'T THINK SO.  I

3    THINK WHAT I SAID EARLIER ON THE ORDER OF 700,000 SHARES, I

4    HAVEN'T CHECKED THE STOCK PRICE IN THE LAST FEW DAYS, BUT I

5    THINK IT WAS FIVE OR SOMETHING LIKE THAT LAST TIME I LOOKED.

6    SO THAT WOULD BE 3 1/2 NOT 4.8, BUT THERE ARE OBVIOUSLY OTHER

7    CLAIMANTS INCLUDING EASTMAN KODAK AS IDENTIFIED IN OUR PAPERS.

8         THE POINT THIS IS NOT SOME SORT OF STRUCTURE WHERE

9    SOME PEOPLE STUCK THE MONEY IN THEIR POCKET AND SNUCK OFF IN

10   THE DARK OF NIGHT, IT'S A CONSIDERATION PAID IN FOR THESE

11   ENTITIES IS STILL SITTING THERE IN THESE ESCROWS.

12        BUT, AGAIN, I JUST THINK THERE IS NO CREDIBLE THEORY

13   ADVANCED THAT CONSIDERATION OF WHAT WERE VERY MUCH ARMS-LENGTH

14   TRANSACTIONS, HEAVILY DOCUMENTED, HEAVILY NEGOTIATED, GOOD LAW

15   FIRMS ON BOTH SIDES AND SO ON, ON ALL RESPECTS ARMS-LENGTH, NO

16   CREDIBLE THEORY OR CREDIBLE EVIDENCE THE CONSIDERATION PAID FOR

17   ANYTHING WAS INADEQUATE BY ANY TEST.

18        **THE COURT:**  NOW, WERE IT NOT FOR THE EARLIER DISMISSAL

19   WITH RESPECT TO CDT LIMITED, WOULD THERE BE BASIS FOR PURSUING

20   CDT LIMITED?

21        **MR. BUNZEL:**  YOUR HONOR, MY READING OF DISMISSAL WITH

22   PREJUDICE.

23        **THE COURT:**  WERE IT NOT FOR THAT.  IS THERE SOME

24   THEORY?

25        **MR. BUNZEL:**  I THINK, GIVEN THE PRESENTATION, AS I