PILLSBURY WINTHROP SHAW PITTMAN LLP
Maria T. Galeno, Esq. (MG-6189)
John E. Davis, Esq. (JD-1445)
1540 Broadway
New York, New York  10036
Telephone: (212) 858-1000
Telefax: (212) 858-1500

*Attorneys for Respondent Cambridge Display Technology, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SUNNYSIDE DEVELOPMENT COMPANY, LLC,

                               Petitioner,

          -against-

BANK OF NEW YORK (as escrow agent),
CAMBRIDGE DISPLAY TECHNOLOGY, INC., and
OPSYS MANAGEMENT LIMITED,

                           Respondents.

Case No. 07 CV 8825(LLS)

---

## REPLY MEMORANDUM OF LAW OF
## RESPONDENT CAMBRIDGE DISPLAY TECHNOLOGY, INC.
## IN SUPPORT OF MOTION TO DISMISS THE TURNOVER PETITION

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................ 4

I.   SUNNYSIDE DOES NOT CONTEST THAT OPSYS HAS NO CONTRACTUAL
     INTEREST IN THE ESCROW ASSETS................................................................. 4

     A.   Opsys Is Not an Intended Beneficiary of the Escrow Agreement ........................... 4

     B.   Opsys Has No Right to Possess the Escrow Assets................................................. 5

     C.   Any Rights of Opsys to the Escrow Assets Are Inferior to CDT Inc.'s Rights...... 6

II.  SUNNYSIDE IS ESTOPPED FROM RELITIGATING THE CALIFORNIA
     PROCEEDINGS ............................................................................................... 6

III. SUNNYSIDE'S JUDICIAL ESTOPPEL ARGUMENTS HAVE NO MERIT ................. 8

     A.   Judicial Estoppel Cannot Create Property Rights Cognizable Under C.P.L.R.
          Art. 52 .............................................................................................................. 8

     B.   Sunnyside Has Not Satisfied Any Element of Judicial Estoppel............................ 9

IV.  SUNNYSIDE CANNOT ASSERT A CLAIM OF FRAUDULENT
     CONVEYANCE .............................................................................................. 13

CONCLUSION................................................................................................... 15

500184145v1

# TABLE OF AUTHORITIES

**Page**

### Cases

*Adler v. Pataki,*
185 F.3d 35 (2d Cir. 1999).................................................................................... 13

*Bass v. Bass,*
528 N.Y.S.2d 558, 140 A.D.2d 251 (1st Dep't 1988) .......................................... 13

*Bates v. Long Island R.R. Co.,*
997 F.2d 1028 (2d Cir. 1993)............................................................................... 13

*Benjamin v. Coughlin,*
643 F. Supp. 351 (S.D.N.Y. 1986),
*aff'd,* 905 F.2d 571 (2d Cir. 1990) ........................................................................ 8

*Bridgeway Corp. v. Citibank,*
201 F.3d 134 (2d Cir. 2000)................................................................................. 12

*Cleveland v. Policy Mgmt. Sys. Corp.,*
526 U.S. 795 (1999).............................................................................................. 13

*DiSorbo v. Hoy,*
343 F.3d 172 (2d Cir. 2003).................................................................................. 8

*Edwards v. Aetna Life Ins. Co.,*
690 F.2d 595 (6th Cir. 1982) ............................................................................... 13

*Evans v. Ottimo,*
469 F.3d 278 (2d Cir. 2006)................................................................................... 7

*Flickinger v. Harold C. Brown & Co.,*
947 F.2d 595 (2d Cir. 1991)................................................................................... 4

*Gindi v. Silvershein,*
No. 93 CIV 8679 (LLS), 1995 WL 347397 (S.D.N.Y. June 8, 1995)................. 14

*Hill v. New York City Transit Auth.,*
635 N.Y.S.2d 540 (2d Dep't 1995)....................................................................... 13

*In re Gulf Oil/Cities Serv. Tender Offer Litig.,*
725 F. Supp. 712 (S.D.N.Y. 1989) ........................................................................ 5

*In re Holocaust Victim Assets Litig.,*
No. 06 CIV 0983(FB)(JO), 2007 WL 805768 (E.D.N.Y. Mar. 15, 2007) .......... 12

*Iselin v. Boardwalk Regency Corp.,*
    703 F. Supp. 1084 (S.D.N.Y. 1989)............................................................... 14

*Levin v. Tiber Holding Corp.,*
    277 F.3d 243 (2d Cir. 2002)........................................................................ 4

*Levinson v. United States,*
    969 F.2d 260 (7th Cir. 1992) ...................................................................... 13

*Locurto v. Giuliani,*
    269 F. Supp. 2d 368 (S.D.N.Y. 2003),
    *rev'd on other grounds,* 447 F.3d 159 (2d Cir. 2006)............................................. 8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis,*
    903 F.2d 109 (2d Cir. 1990)....................................................................... 13

*Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38,*
    288 F.3d 491 (2d Cir. 2002)....................................................................... 13

*Ray v. Alad Corp.,*
    19 Cal.3d 22 (1977) ................................................................................ 7

*Runaway Dev. Group v. Pentagen Technologies Int'l Ltd.,*
    396 F. Supp. 2d 471 (S.D.N.Y. 2005).............................................................. 14

*U.S. v. U.S. Currency in Amount of $119,984,*
    304 F. 3d 165 (2d Cir. 2002)....................................................................... 8

*United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.,*
    988 F. Supp. 367 (S.D.N.Y. 1997) ................................................................. 5

*United States v. Am. Vault Co.,*
    No. 77 CIV 260(CPS), 1980 WL 1566 (E.D.N.Y. May 5, 1980)........................................ 6

*Wight v. Bankamerica Corp.,*
    219 F.3d 79 (2d Cir. 2000)................................................................... 9, 10, 13

## Statutes and Codes

New York Civil Practice and Law Rules

    Section 5225(b) ............................................................................ 1, 4, 8, 14

    Section 5227.................................................................................. 1, 4, 8

New York Debtor and Creditor Law

    Section 273-a ................................................................................... 14

500184145v1

United States Code

Title 28, Section 1404 ................................................................................ 3, 15

**Rules and Regulations**

Federal Rules of Civil Procedure

Rule 12(b)(1) ................................................................................ 1, 15

Rule 12(b)(6) ................................................................................ 1, 15

Rule 69 ................................................................................ 8, 14

500184145v1

Respondent Cambridge Display Technology, Inc. ("CDT Inc."), by its attorneys Pillsbury Winthrop Shaw Pittman LLP, respectfully submits this reply memorandum of law in support of CDT Inc.'s motion to dismiss the Turnover Petition under Rules 12(b)(1) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

Sunnyside's argument boils down to this: the parties to the Escrow Agreement must have intended to give Opsys' creditors a direct right of action against the Escrow, because the California Court ruled that Sunnyside could not enforce its Judgment against CDT Inc. and Sunnyside has found no other asset upon which to execute. Sunnyside's arguments do not follow, and its "facts" are contradicted by the record. The Turnover Petition is without merit and must be dismissed.

Sunnyside ignores CDT Inc.'s dispositive contractual arguments that Opsys has no "enforceable rights in the escrow account." *See* Pet. Reply Mem. at 15. Nor does Sunnyside contest that OML has disclaimed any interest in the Escrow Assets (Davis Decl. Ex. 7), meaning that CDT Inc. has the sole contractual right to receive distribution of the Escrow Assets. CDT Inc. Mem. at 19. Accordingly, Sunnyside cannot satisfy even the threshold requirement of a turnover proceeding under CPLR 5225(b) and 5227, *i.e.*, demonstrating that Opsys has "an interest in" the Escrow Assets. Nor can it show – also as required – that it is "entitled to possession of the property" or that it has "rights" that are superior to those of CDT Inc. *See* Section I, *infra*.

Sunnyside instead devotes most of its 28-page memorandum to judicial estoppel. Lacking evidence in the record to support its position, Sunnyside attempts to relitigate the California proceeding, incorrectly stating that, to avoid successor liability, CDT Inc. was required to show that in 2004 it paid sufficient amounts to Opsys to satisfy all of Opsys' unsecured creditors; that to

---

[1] Unless otherwise noted, all capitalized terms and styles are as defined in CDT Inc.'s Memorandum in Opposition to the Turnover Petition and In Support of its Motion to Dismiss dated Oct. 25, 2007 ("CDT Inc. Mem."). The Reply Declaration of John E. Davis in Support of the Motion to Dismiss dated November 13, 2007 is referred to as "Davis Reply Decl." Sunnyside's Reply Memorandum in Further Support of the Turnover Petition and in Opposition to CDT Inc.'s Motion to Dismiss filed November 1, 2007 is referred to as "Pet. Reply Mem."

do so CDT Inc. represented that such creditors had a direct claim against the Escrow; and that the California Court adopted such arguments. *E.g.,* Pet. Reply Mem. at 2, 23. No part of this is true. In fact, the California Court first found that there could be no successor liability on a different basis*, i.e.,* because this was a stock-for-stock transaction, and not an asset purchase. Cal. Mem. & Order at 10. Accordingly, none of the allegedly inconsistent statements could have been relied upon by the Court. In the alternative, the Court expressly rejected Sunnyside's argument that CDT Inc. paid insufficient consideration for Opsys, finding:

> *no* authority for the proposition that in order for consideration to be sufficient the purchaser must pay off the seller's debts, rather than simply compensate the seller for its assets. Because CDT, Inc. paid consideration which was adequate in light of the assets it received, plaintiff has failed to demonstrate inadequate consideration.

*Id.* at 14-15. Sunnyside misstates the record in other ways: it confuses the Escrow Assets held at BNY with the OML shares, which are held in trust for creditors by OML; falsely characterizes Michael Black, the Chief Financial Officer at CDT Inc., as the "draftsman" of the Escrow Agreement; and – in claiming that "Sunnyside has no conceivable right" to the OML shares – repudiates its own pleadings in the Summons with Notice Proceeding, where it seeks to collect the Judgment from the OML shares.

As the record shows, CDT Inc. did not argue that all unsecured creditors would be paid as a result of the 2004 Transaction, much less that unsecured creditors had a direct claim against the Escrow. The ellipsized and fragmented statements that Sunnyside recites do not support Sunnyside's mischaracterizations. Nor could any statements form the basis of estoppel, as the California Court did not hold that Opsys or its creditors could proceed directly against the Escrow. To the contrary, it said that the Escrow existed to *"indemnify CDT, Inc.* for undisclosed or contingent liabilities" of Opsys, and that when CDT Inc. was reimbursed for advancing legal fees and expenses relating to Sunnyside's claim against Opsys instead of paying Sunnyside's claim,

2

"*the escrow shares were being used to cover a contingency as originally envisioned.*" *See* Cal. Mem. & Order at 6, 10-11.

Sunnyside is collaterally estopped from relitigating the California Court's rulings. It has not met its burden of showing that it was denied a "full and fair opportunity" to litigate in California. During two years of litigation in California, Sunnyside obtained substantial discovery about CDT Inc. and the 2002 and 2004 Transactions. With that discovery in hand, Sunnyside elected not to seek further discovery, instead requesting that the Court rule on the motion papers. The California Court did so, finding that, "In light of the weakness of plaintiff's arguments, however, and the undisputed facts in the record, the court holds as a matter of law that CDT, Inc. is not a proper defendant in this action." *Id.* at 17. No discovery would have changed the outcome.

Finally, Sunnyside's belated "fraudulent conveyance" claim must be rejected. Sunnyside did not assert the claim in its Petition, cannot raise it for the first time in its opposition memorandum and has not met Rule 9(b)'s heightened requirements for pleading fraud. Further, any claim is barred. The California Court held that CDT Inc. gave sufficient consideration for Opsys and that there was no fraudulent conveyance. Cal. Mem. & Order at 15-17. Sunnyside is not among those Opsys creditors who benefited from that consideration only because it laid in the weeds for two years before filing its claim during CDT Inc.'s IPO. Sunnyside cannot now make up for its laches by seeking to attach the Escrow Assets set up to protect CDT Inc.

This Court can and should deny Sunnyside's Petition outright. But if the Court believes there is a triable issue of fact as to Sunnyside's judicial estoppel and fraudulent conveyance arguments, the Court should transfer this proceeding to the California Court under 28 U.S.C. § 1404. The California Court is best situated to decide factual disputes as to whether it was misled, and it already has considered – and rejected – Sunnyside's fraudulent conveyance claims.

3

## ARGUMENT

**I.    SUNNYSIDE DOES NOT CONTEST THAT OPSYS HAS NO CONTRACTUAL INTEREST IN THE ESCROW ASSETS**

Sunnyside ignores CDT Inc.'s contract-based arguments that non-party Opsys lacks

"enforceable rights in the escrow account." *See* Pet. Reply Mem. at 15. These unrebutted

arguments are dispositive. *See* CDT Inc. Mem. Section I. Sunnyside admits that to prevail on its

claims under CPLR 5225(b) and 5227 it must demonstrate that Opsys "has an interest in the

[Escrow Assets] .... If that showing is made, then [Sunnyside] must show that either [Opsys] is

entitled to possession of the [Escrow Assets] or that its own rights in the property are superior" to

other claimants. *Id.*, quoting *Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838, 839 (2d Cir. 1991).

Sunnyside cannot satisfy any part of this test, and has abandoned any attempt to do so. Instead, it

seeks to create property rights Opsys never had via judicial estoppel. *See* Section III, *infra*.

### A.    Opsys Is Not an Intended Beneficiary of the Escrow Agreement

Sunnyside's own authority demonstrates that neither Opsys nor Sunnyside is an intended

beneficiary of the Escrow Agreement. According to Sunnyside, a third party is an intended

beneficiary only where the terms of the agreement "*necessarily* require the promisor to confer a

benefit upon a third person" and that performance is "rendered *directly* to a third party." Pet. Reply

Mem. at 19, quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 252 (2d Cir. 2002) and

*Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 600 (2d Cir. 1991). Sunnyside can point to

no provision in the Escrow Agreement or any other agreement whereby CDT Inc. must

"necessarily" use the Escrow Assets for Opsys' unidentified or contingent potential creditors, and

it admits that "technically" any payment must under any circumstances be made to CDT Inc. and

thus not directly to a third party. Pet. Reply Mem. at 9. At best, Opsys or its creditors could only

*indirectly* benefit from the Escrow; as a matter of law, such an indirect benefit "is insufficient to

4

establish third-party beneficiary status in the [judgment debtor]." *United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 988 F. Supp. 367, 372 (S.D.N.Y. 1997).[2]

Sunnyside incorrectly argues that Section 6 of the Escrow Agreement shows the parties' intent to confer enforceable rights on Opsys by purportedly obligating CDT Inc. to act as "the claims administrator (CDT) on behalf of Opsys" in "resolving the claims against Opsys." Pet. Reply Mem. at 8-9, 24. To the contrary, Section 6 provides that if OML does not assume the defense of a qualifying Claim against Opsys, CDT Inc. "shall have the full *right* to defend against any such Claim, and shall be *entitled* to settle or agree to pay in full such Claim." Escrow Agreement § 6. There is no basis to convert this right into an "obligation to resolve the claim on behalf of Opsys Limited." Pet. Reply Mem. at 9. Opsys controlled its litigation with Sunnyside and had its own counsel, separate from counsel for CDT Inc.

### B.    Opsys Has No Right to Possess the Escrow Assets

The Escrow Agreement on its face precludes Opsys or Sunnyside from having any "entitle[ment] to possession" of the Escrow Assets. Section 2 provides that the Escrow "shall be held in trust and shall not be subject to lien or attachment of any creditor of any party hereto and shall be used solely for the purposes and subject to the conditions set forth herein." Sections 4 and 5 provide only for disbursements to CDT Inc. and OML. Section 11 prohibits any disposition of the Escrow Assets other than directly to CDT Inc. or OML pursuant to Sections 4 and 5. And Section 13 restricts those intended to benefit from the Escrow Agreement to successors and assigns of CDT Inc. and OML. Sunnyside does not contest the settled law of this Court that provisions

---

[2] Sunnyside ineffectively attempts to distinguish *United Int'l*, where this Court rejected a turnover petition after reviewing the written agreements and finding "no indication that the benefit was intended for the [judgment debtor]." *Id.* (cited in Pet. Reply Mem. at 19). Sunnyside's assertion that there is other evidence of intent to directly benefit Opsys' unknown creditors is unsupported and cannot overcome its absence from "the face of the agreement." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 733 (S.D.N.Y. 1989). The *United Int'l* court also found that no "benefits flowed *directly* to the [judgment debtor] from performance of the contract" because it provided for payment not to the judgment creditor but to a separate entity. *United Int'l*, 988 F. Supp. at 372. That is exactly the situation here: payment goes not to creditors, but to CDT Inc. or OML.

such as Section 13 preclude any finding of third party rights. *See* CDT Inc. Mem. at 16 (citing

cases). Nor does Sunnyside attempt to distinguish the rule set out in *United States v. Am. Vault

Co.*, No. 77 CIV 260(CPS), 1980 WL 1566, *2-4 (E.D.N.Y. May 5, 1980), that where a purchaser

of a company with potential liabilities sets aside funds to protect against having to assume such

liabilities, creditors of the acquired company have no rights to the funds.

### C.    Any Rights of Opsys to the Escrow Assets Are Inferior to CDT Inc.'s Rights

Because Opsys has no right to the Escrow Assets, it does not have a right to the Escrow

Assets that is "superior" to the right of CDT Inc., particularly where the only other entity that has

contractual rights to receive distribution of the Escrow Assets, OML, has renounced any claim.

Davis Decl. Ex. 7. Nor does Sunnyside's status as a "judgment creditor" of Opsys create a lien on

the Escrow Assets or otherwise improve Sunnyside's claim. *See* CDT Inc. Mem. at 20-21.

## II.    SUNNYSIDE IS ESTOPPED FROM RELITIGATING THE CALIFORNIA PROCEEDINGS

Based on the record developed by Sunnyside, CDT Inc. and Opsys, the California Court

concluded that: (i) CDT Inc. paid "adequate consideration" for Opsys and had no obligation to pay

its creditors, in particular Sunnyside; (ii) the Escrow existed to "indemnify CDT, Inc. for

undisclosed or contingent liabilities" of Opsys;[3] and (iii) when CDT Inc. sought reimbursement

from the Escrow Assets for legal fees and expenses relating to Sunnyside's claim against Opsys,

instead of paying Sunnyside's claim, "the escrow shares were being used to cover a contingency as

originally envisioned." *See* Cal. Mem. & Order at 6, 10-11, 14-15.[4] Sunnyside's repeated

---

[3]    While Sunnyside calls this a "passing notation" of the California Court, it is precisely the characterization of the account that Sunnyside argued to the California Court. *See* Davis Reply Decl. Ex. 1, Sunnyside Cal. Mem. at 10 ("Cambridge [i.e., CDT Inc.] and the shareholders of Opsys Limited agreed to a settlement and escrow mechanism whereby some of the Cambridge stock, but not all of it, that Opsys Limited's shareholders were to receive from exchanging their Opsys Limited stock, would *indemnify Cambridge for undisclosed or contingent liabilities*."), citing Bunzel Decl. ¶ 6 and Escrow Agreement § 4(e).

[4]    In particular, the Court found "no authority" for Sunnyside's argument that, for "adequate consideration" to exist for purposes of a successor liability claim, "the purchaser must pay off the seller's debts, rather than simply

assertions that the parties intended to give Opsys and its creditors direct enforceable rights under the Escrow (*e.g.*, Pet. Reply Mem. at 17-18, 19-20) cannot be reconciled with these contrary rulings of the California Court.

Sunnyside's attempts to minimize the impact of the Memorandum & Order come up short. The California Court did not hold that CDT Inc. could only "indemnify" itself for expenditures made "to pay Opsys's liabilities" (Pet. Reply Mem. at 24), or that "the escrow as [sic] established 'in order to satisfy' Opsys's liability." *Id.* at 19. Instead, the California Court was clear that the reimbursement of CDT Inc. for *its* legal fees and expenses incurred "as a result of the claim" of Sunnyside is a "contingency" intended to be satisfied through the Escrow, and for which "CDT Inc. withheld consideration owed to Opsys Limited ...." *See* CDT Inc. Mem. at 20-21, quoting Cal. Mem. & Order at 10-11.

Under New York law, "the party attempting to defeat [the] application of [collateral estoppel] has the burden of establishing the absence of a full and fair opportunity to litigate the issue." *Evans v. Ottimo*, 469 F.3d 278, 281-82 (2d Cir. 2006) (internal citation omitted). Sunnyside makes no showing in support of its conclusory assertion that the Memorandum & Order does not bind Sunnyside because it did not take discovery of CDT Inc. Pet. Reply Mem. at 25 & n.7. During two years of litigation, Sunnyside obtained substantial discovery about CDT Inc. and the 2002 and 2004 Transactions. Sunnyside then elected not to seek further discovery, instead *requesting* the Court to decide the motion on the existing record, seeking discovery only if the

---

compensate the seller for its assets." Cal. Mem & Order at 13-14. Sunnyside mischaracterizes the successor liability test applied by the California Court as requiring "that consideration was '*made available for meeting the claims* of [judgment debtor's] unsecured creditors." (Pet. Reply Mem. at 2), citing *Ray v. Alad Corp.*, 19 Cal. 3d 22, 29 (1977). In fact, that element of successor liability requires that "*no adequate consideration was given for the predecessor corporation's assets* and made available for meeting the claims of its unsecured creditors." Cal. Mem. & Order at 13, citing *Ray*, 19 Cal. 3d at 29.

7

Court found that an evidentiary hearing was required.[5]  The California Court made clear that no

discovery could have changed its determination, holding, "In light of the weakness of plaintiff's

arguments, however, and the undisputed facts in the record, the court holds as a matter of law that

CDT, Inc. is not a proper defendant in this action." Cal. Mem & Order at 17; *see Benjamin v.*

*Coughlin*, 643 F. Supp. 351, 356 (S.D.N.Y. 1986) (Stanton, J.) (applying doctrine of collateral

estoppel despite lack of discovery in prior proceeding; "Defendants' decision to move for

summary judgment and forego discovery was made at their own peril."), *aff'd*, 905 F.2d 571 (2d

Cir. 1990).[6]

Sunnyside has appealed the Memorandum & Order.  If the California Court erred,

Sunnyside may obtain relief from the Ninth Circuit.  But it shall not go shopping for a new trial

court forum in which to relitigate these issues, which resulted in the California trial court awarding

judgment to CDT Inc. as a matter of law.  *See DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003)

(collateral estoppel attaches to rulings on appeal).

## III.     SUNNYSIDE'S JUDICIAL ESTOPPEL ARGUMENTS HAVE NO MERIT

### A.      Judicial Estoppel Cannot Create Property Rights Cognizable Under C.P.L.R. Art. 52

Sunnyside is left with a "judicial estoppel" argument based on mischaracterizations of what

was said and what was decided in California.  But judicial estoppel cannot be used to give Opsys a

property interest under CPLR 5225(b) and 5227, and so give Sunnyside standing to bring its claim.

---

[5]  *See* Davis Reply Decl. Ex. 1, Sunnyside Cal. Mem. at 22-23 ("Sunnyside believes that the public record facts and Cambridge's participation to date mandate that Cambridge should be added to the judgment.... If an evidentiary hearing is required, plaintiff seeks leave under Rule 69(a) to conduct discovery related to the transfer of Opsys Limited assets to Cambridge and CDT Oxford Limited.").

[6]  The authorities cited by Sunnyside on this point are not supportive. Pet. Reply Mem. at 25 n.7, citing *Locurto v. Giuliani*, 269 F. Supp. 2d 368, 382 (S.D.N.Y. 2003), *rev'd on other grounds*, 447 F.3d 159, 171 (2d Cir. 2006) and *U.S. v. U.S. Currency in Amount of $119,984*, 304 F.3d 165, 176 (2d Cir. 2002). They do not deal with decisions (like the Memorandum & Order) rendered as a matter of law, and do not hold that discovery is always necessary for collateral estoppel. Indeed, these cases involved unique circumstances not present here, where (i) discovery was necessary, requested and denied (*Locurto*, *supra*), or (ii) necessary discovery was unavailable in the prior criminal proceeding (*U.S. Currency in Amount of $119,984*, *supra*).

8

*Cf. Wight v. Bankamerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000) (judicial estoppel cannot be used to defeat or establish Article III standing). We have found no case where a court equitably created property rights or priority interest to a judgment debtor under C.P.L.R. article 52 based on judicial estoppel.

### B.    Sunnyside Has Not Satisfied Any Element of Judicial Estoppel

Sunnyside concedes that, to establish judicial estoppel, it must show first, that CDT Inc. advanced an inconsistent factual position in California and second, that the California Court adopted that position. Pet. Reply Mem. at 16. Sunnyside has established neither.

Sunnyside states that, (i) to avoid successor liability in California, the law required CDT Inc. to show that it paid Opsys enough to satisfy all of Opsys' unsecured creditors; (ii) to satisfy this requirement, CDT Inc. represented that creditors or Opsys had a direct claim on the Escrow Assets; and (iii) the California court adopted such arguments. *E.g.,* Pet. Reply Mem. at 2, 23. Each of these three contentions is wrong, but even if Sunnyside's contentions (i) and (ii) were true, it is clear that the California Court did not adopt, or rest its holding, on any such contentions.

*First,* the California Court held that the doctrine of successor liability had no application at all because the 2004 Transaction was a stock transaction, and not an asset purchase. Cal. Mem. & Order at 10. Under California law, successor liability applies only to asset purchases. *Id.* The California Court accordingly did not adopt contentions (i) or (ii).

Putting aside the stock-transaction hurdle, the California Court also considered each of the four exceptions to the general rule against successor liability,[7] and one by one held that each did not apply. Cal. Mem. & Order at 10-17. None of these holdings rests on either contention (i) or

---

[7]  Generally, a corporation that purchases the assets of another corporation does not assume the debts of the selling corporation unless one of four exceptions applies: "(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Ray,* 19 Cal. 3d at 28, quoted in CDT Cal. Mem. (Heisenberg Ex. G) at 11.

9

contention (ii). Sunnyside's arguments to the contrary are based on a misstatement of California

law and a misrepresentation as to what CDT Inc. argued.

Sunnyside argues that CDT Inc. was required to show that it had paid Opsys enough to

satisfy all of Opsys' unsecured creditors (*e.g.*, Pet. Reply Mem. at 22), but the California Court

rejected this argument, finding:

> *no* authority for the proposition that in order for consideration to be sufficient the
> purchaser must pay off the seller's debts, rather than simply compensate the seller
> for its assets. Because CDT, Inc. paid consideration which was adequate in light
> of the assets it received, plaintiff has failed to demonstrate inadequate
> consideration."

Cal. Mem. & Order at 14-15. To support its findings, the California Court relied upon *Ray v. Alad*

*Corp.*, which Sunnyside miscites.[8] Thus, there can be no estoppel because the California Court did

not adopt the claimed inconsistent statements and did not need to do so to rule in CDT Inc.'s favor.

*E.g., Wight*, 219 F.3d at 89-91 (cited in Pet. Reply Mem. at 15).

CDT Inc. did argue that it had not agreed to assume Opsys' debts (exception 1) and that the

transactions with Opsys were not for the fraudulent purpose of escaping liability for the seller's

debts (exception 4). CDT Cal. Mem. at 12-13, 18-19. CDT Inc. pointed out that it had agreed to a

structure whereby the consideration paid for the equity in Opsys would not go directly to Opsys'

shareholders, but would instead be set aside to deal with creditors' claims as follows: (i) direct

payment of certain known claims (the "Schedule A Claims," CDT Cal. Mem. at 6), (ii) the OML

shares (which would be held back for other specific known creditors and debt-holders, and only if

their claims were satisfied, then Opsys' shareholders, *id.* at 7), and (iii) the Escrow, from which

CDT Inc. had the *right* but not the *obligation* to deal with the claims of Damoder Reddy as well as

those of other contingent or unknown creditors, and the right to obtain reimbursement for CDT

---

[8]   Sunnyside misconstrues both the holding of *Ray v. Alad Corp.* and what CDT Inc. said about the case, focusing
    instead on dicta upon which neither CDT Inc. nor the California court relied. *Compare* Pet. Reply Mem. at 2, 9, 23
    *with* CDT. Cal. Mem. at 13-15 and Cal. Mem. & Order at 11-13.

Inc.'s expenses incurred in litigating or resolving such claims (*id.* at 6-7). Thus, even unknown and contingent creditors could benefit from the structure (CDT Cal. Mem. at 2, 6-7) – albeit *indirectly* – if CDT Inc. chose to resolve such claims using Escrow Assets. But what CDT Inc. did *not* say in California and does *not* say here is that this structure (1) gave creditors a direct claim against the Escrow, or (2) gave Opsys a right to the consideration placed in the Escrow.

Unable to show that CDT Inc. ever said that creditors or Opsys had a direct claim against the Escrow, Sunnyside makes the tortured argument that unless creditors or Opsys had direct claims against the Escrow, Opsys would have received no consideration for its "put" right. Pet. Reply Mem. at 22, 26. The California Court, however, found that CDT Inc. had paid "adequate consideration" for Opsys, identifying far more than the Escrow as consideration, including: (i) $5 million in cash provided by CDT Inc. in the 2002 Transaction; and (ii) $9.8 million[9] worth of CDT Inc. stock transferred by CDT Inc. after Opsys' shareholders exercised their "put" right in 2004, in the form of (a) the Schedule A shares withheld to cover known liabilities, (b) the OML shares and (c) the Escrow Assets. Cal. Mem. & Order at 5-6 (citing Black Decl. ¶¶ 28-29), 13-15. The record including the California Court's finding of "adequate consideration" also disposes of Sunnyside's assertions that Opsys was "equity rich" and that it received no consideration for transferring its shares (Pet. Reply Mem. at 6, 7-8).[10]

---

[9]  Sunnyside's claim that the shares were valued at $15 million (Pet. Reply Mem. at 7-8) neglects to take into consideration the reverse stock split described in CDT Inc.'s 2004 Form 10-K at 25 ("We have given retroactive effect to a 0.5851807-for-one reverse stock split which took place immediately prior to our initial public offering in December 2004.").

[10]  Standing alone, Opsys was not worth much. Opsys had assets of only £1.8 million ($2.9 million) and a negative net worth of £15.5 million ($24.1 million) having lost £19.7 million ($30.8 million) for the year ending September 30, 2002. CDT Cal. Mem. at 17. Sunnyside notes that Opsys owned 84% of Opsys UK, but Sunnyside neglects to mention that the 2002 transactions had given CDT Ltd. management control of Opsys UK plus a right to 98% of Opsys UK's profits, leaving Opsys with no control plus a right to only 2% of Opsys UK's profits. *Id.* at 4. CDT Inc. paid for Opsys' equity not because it had any real value standing alone – it did not – but because this part of the consideration for the 2002 transaction had been deferred until CDT Inc.'s IPO; the deal structure was explained in Michael Black's declaration (Heisenberg Ex. H ¶¶ 6-13, 25).

By deleting and elipsizing key language, Sunnyside conflates the statements of CDT Inc.'s

counsel about the Escrow Assets held by BNY with those concerning the ***OML shares*** held in trust

by OML pursuant to the Deferred Consideration Agreement pending satisfaction of certain

creditors' and debt-holders' claims.  At oral argument, CDT Inc.'s California counsel referenced

the OML shares as "sitting there in either in a formal escrow or in something that is the equivalent

of an escrow, **that is Opsys Management structure, and is available.**"  Tr. at 56-57 (Heisenberg

Aff. Ex. K).  Sunnyside quotes the first part of this language (Pet. Reply Mem. at 1) but omits the

part in bold without signaling the deletion, in an attempt to make it look as though counsel was

referring to the Escrow rather than OML.  In fact, when the California Court asked whether "[t]hat

can be used to satisfy any judgment in this case?", CDT Inc.'s California counsel responded:

> I'm reluctant to speak for entities that I don't represent that are, obviously, of
> interest somewhat different than my client's own interest, so I really cannot speak
> definitively to that.  But the money is there, it's basically there for the sake of
> creditors.  ***And while I can't say whether it's easy or hard or something, I don't
> know that there's anything that prevents Mr. Bunzel and his client from looking
> through Opsys Management.***

*Id.* at 57.[11]  Counsel was directing the Court's attention to OML (Opsys Management); he was not

representing that Sunnyside had a direct claim on the Escrow.[12]

Sunnyside argues that the statement of Michael Black, the CFO of CDT Inc., that stock

went into the Escrow "to cover … unidentified contingent liabilities [among other claims]" (Black

Decl. ¶ 28) means that Opsys has a direct claim on Escrow Assets.  That is a *non sequitur*.  The

---

[11]  Sunnyside's contention that CDT Inc. could not have been referring to the OML shares because "Sunnyside has no conceivable right" to those shares demonstrates Sunnyside's willingness to say anything when expedient. Pet. Reply Mem. at 22.  While CDT Inc. has not taken a position on this, Sunnyside in the Summons with Notice Proceeding pending before this Court has noticed a claim against OML for in excess of $6,000,000 asserting Sunnyside's right to satisfy the judgment from the OML Shares, among other sources.  Davis Reply Decl. Ex. 2 ¶ 2.

[12]  In any event, CDT Inc. cannot be estopped by such statements of counsel because they are patently argument, not statements of "fact", and do not present a "clear inconsistency between [CDT Inc.'s] present and former positions." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 141 (2d Cir. 2000) (internal citation omitted); *see In re Holocaust Victim Assets Litig.*, No. 06 CIV 0983(FB)(JO), 2007 WL 805768, *21 (E.D.N.Y. Mar. 15, 2007) (declining to find an estoppel because the claimed inconsistent statements "can be read to favor [judicial estoppel] *only* by divorcing [them] from the context of the many other statements.") (emphasis in original).

Escrow gives CDT Inc. the **right** to use Escrow Assets to resolve creditors' claims if it sees fit; it does not give CDT Inc. any **obligation** to do so, or Opsys any right to the Escrow Assets. Equally off the mark is Sunnyside's repeated mischaracterization of Mr. Black as the "draftsman" of the Escrow Agreement. *Id.* at 6, 17, 19. Sunnyside offers no record support for this untruth.

Sunnyside has no argument for an estoppel,[13] but even if it did, imposing an estoppel would be inequitable here, given Sunnyside's laches. Had Sunnyside revealed itself as an alleged creditor of Opsys before the 2004 Transaction, either CDT Inc. would not have completed the deal or Sunnyside, like another contingent creditor, Damoder Reddy, and indeed all of Opsys' other major creditors, would have been expressly provided for in the transaction. Instead, Sunnyside emerged only at the time of CDT Inc.'s IPO. CDT Inc. has done nothing since except assert its right not to have to assume unbargained-for liabilities.

## IV.    SUNNYSIDE CANNOT ASSERT A CLAIM OF FRAUDULENT CONVEYANCE

Sunnyside did not assert a fraudulent conveyance claim in its Petition and cannot do so in its opposition memorandum. *Hill v. New York City Transit Auth.*, 635 N.Y.S.2d 540, 222 A.D.2d 506 (2d Dep't 1995). Nor does Sunnyside attempt to satisfy the heightened pleading requirements of Federal Rules of Civil Procedure 9(b) applicable to fraudulent conveyance claims. *Gindi v.*

---

[13] Sunnyside's cited authorities do not aid its cause. In *Bass v. Bass*, 528 N.Y.S.2d 558, 561, 140 A.D.2d 251, 253 (1st Dep't 1988), the court vacated a restraining notice because a petitioner cannot "reach assets in which the judgment debtor has no interest" and did not rule on judicial estoppel. *See also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807 (1999) (prior claim for SSDI payments does not automatically preclude claim of ADA disability); *Adler v. Pataki*, 185 F.3d 35, 41 n.3 (2d Cir. 1999) (party cannot be judicially estopped by statements made in the same proceeding). Sunnyside's other cases are equally unhelpful. *See Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037-38 (2d Cir. 1993) (finding no ground for estoppel where the first case settled and so the court did not adopt party's prior inconsistent statement); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir. 1990) (finding no judicial estoppel because party was dismissed from prior litigation by stipulation); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982) (finding no judicial estoppel where result in prior administrative hearing was due to settlement and it was not necessary for appellate court in affirming to adopt prior inconsistent statements); *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 288 F.3d 491, 504 (2d Cir. 2002) (union's vacillations about whether an agreement was terminated were neither inconsistent factual positions nor adopted by the first court); *Wight*, 219 F.3d at 90-91 (questioning whether statement in prior legal memoranda showed a "true inconsistency" that could not be reconciled with the party's present position, and rejecting estoppel claim because the first court did not directly address the issue upon which estoppel was urged); *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992) (emphasizing that prior statement must be "clearly inconsistent" with the present position and finding no basis for estoppel).

13

*Silvershein*, No. 93 CIV 8679(LLS), 1995 WL 347397, *5-6 (S.D.N.Y. June 8, 1995); *accord Iselin v. Boardwalk Regency Corp.*, 703 F. Supp. 1084, 1088 (S.D.N.Y. 1989).

In the California case, Sunnyside unsuccessfully litigated not only the same operative facts, but also the same claim against CDT Inc. *See* Cal. Mem & Order at 15-17 (finding that Sunnyside had not satisfied California's Uniform Fraudulent Transfer Act because, *inter alia,* Sunnyside could not show "inadequate consideration"); *compare* N.Y. Debt. & Cred. Law § 273-a (requiring that conveyance was "made without fair consideration"). The California Court explicitly rejected Sunnyside's claim that Opsys' transfer of its 84% interest in Opsys UK (CDT Oxford Ltd.) to CDT Ltd. in 2005 was fraudulent. *Compare* Cal. Mem. & Order 16 *with* Pet. Reply Mem. at 8 n.3. Sunnyside does not get a second bite at this apple. Thus, in *Runaway Dev. Group v. Pentagen Technologies Int'l Ltd.,* 396 F. Supp. 2d 471, 475 (S.D.N.Y. 2005), the Court applied claim preclusion and issue preclusion to deny a turnover petition brought under Rule 69 and CPLR 5225(b). This Court can and should do likewise here.

14

## CONCLUSION

For the foregoing reasons, Respondent CDT Inc. respectfully requests that this Court enter an order pursuant to Rule 12(b)(1) and 12(b)(6) denying the Turnover Petition, dismissing this proceeding and vacating the Restraining Notice.

If, however, the Court believes that there is a triable issue of fact as to Sunnyside's judicial estoppel and fraudulent conveyance arguments, the Court should transfer this proceeding to the California Court under 28 U.S.C. § 1404. The California Court has already considered Sunnyside's fraudulent conveyance claims and is best situated to determine any fact dispute as to whether the Court was misled or relied on any allegedly inconsistent statements.

Dated:  New York, New York
           November 13, 2007

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

By
Maria T. Galeno, Esq.
John E. Davis, Esq.
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500

*Attorneys for Respondent*
*Cambridge Display Technology, Inc.*

15

OF COUNSEL:

Bruce A. Ericson, Esq.
Alice K. M. Hayashi, Esq.
Pillsbury Winthrop Shaw Pittman LLP
50 Fremont Street
San Francisco, CA 94105-2228
Telephone: (415) 983-1000
Facsimile: (415) 983-1200