PILLSBURY WINTHROP SHAW PITTMAN LLP
Maria T. Galeno, Esq. (MG-6189)
John E. Davis, Esq. (JD-1445)
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Telefax: (212) 858-1500

*Attorneys for Respondent Cambridge Display Technology, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUNNYSIDE DEVELOPMENT COMPANY, LLC

                                            Petitioner,

            -against-

BANK OF NEW YORK (as escrow agent),
CAMBRIDGE DISPLAY TECHNOLOGY, INC., and
OPSYS MANAGEMENT LIMITED,

                                            Respondents.

Case No. 07-CV-8825 (LLS)

**REPLY DECLARATION OF
JOHN E. DAVIS IN FURTHER
SUPPORT OF CDT INC.'S MOTION
TO DISMISS THE TURNOVER
PETITION**

I, JOHN E. DAVIS, pursuant to 28 U.S.C. § 1746, declare that:

1.        I am a member in good standing of the Bar of the State of New York, admitted to practice before this Court. I am an associate at the law firm of Pillsbury Winthrop Shaw Pittman LLP, with its office located at 1540 Broadway, New York, NY 10036, attorneys for Respondent Cambridge Display Technology, Inc. ("CDT, Inc."). I am fully familiar with the subject matter of this action and submit this Reply Declaration in support of the above-captioned Motion.

2. A fair and accurate copy of each document listed below is attached hereto as Exhibit:

1. Plaintiff's Notice of Motion and Motion for Attorney's Fees Pursuant to the Parties' Contracts and Motion to Add Cambridge Display Technology, Inc. as a Party to Action and Judgment, dated April 2, 2007, submitted by Sunnyside Development Co., LLC in the proceeding entitled *Sunnyside v. Opsys Ltd.*, No. C-05-00553 (N.D. Cal.) (MHP).

2. Summons with Notice, dated September 18, 2007, filed in the Supreme Court of the State of New York, County of New York, in the proceeding entitled *Sunnyside Development Company, LLC v. Opsys Management Limited, et al.*, No. 112617-07.

I, John E. Davis, declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
November 13, 2007

JOHN E. DAVIS

# EXHIBIT 1

Robert H. Bunzel, State Bar No. 99395
Alyson L. Huber, State Bar No. 202713
BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation
900 Front Street, Suite 300
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152
rbunzel@bztm.com
ahuber@bztm.com

Attorneys for Plaintiff
SUNNYSIDE DEVELOPMENT CO., LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUNNYSIDE DEVELOPMENT COMPANY, LLC,

Plaintiff,

v.

OPSYS LIMITED, a United Kingdom Company,

Defendants.

No. C 05-00553 MHP

**PLAINTIFF'S NOTICE OF MOTION, AND MOTION FOR ATTORNEY'S FEES PURSUANT TO THE PARTIES CONTRACTS AND MOTION TO ADD CAMBRIDGE DISPLAY TECHNOLOGY, INC. AS A PARTY TO ACTION AND JUDGMENT**

Hearing Date: May 16, 2007
Time: 1:00 p.m.
Dept: 15
Judge: Hon. Marilyn H. Patel

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKOZANKEL
Bartko-Zankel-Tarrant-Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... iii

NOTICE OF MOTIONS AND MOTIONS .......... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......... 2

I. INTRODUCTION .......... 2

II. PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS .......... 2

- A. Relevant History For the Award of Attorney's Fees .......... 2
- B. Sunnyside is Entitled to Its Full Attorney's Fees, Costs and Expenses Reasonably Incurred Under the Lease and the Assignment .......... 3
  - 1. State Law Governing The Parties Contracts Controls And Supports An Award To Sunnyside Of Fees, Costs And Expenses .......... 3
  - 2. Sunnyside Is the Prevailing Party And Should Be Awarded Its Reasonable Attorney's Fees .......... 5
  - 3. Sunnyside's Attorney's Fees Were Reasonably Incurred .......... 5
  - 4. Plaintiff's Fees Should Not Be Reduced .......... 7
    - a. No Apportioning for Defendant's Alleged Success on Mitigation .......... 7
    - b. No Apportioning of Attorney's Fees for Attempts to Add Cambridge as a Party or for ¶ 12.1 of the Lease .......... 8

III. PLAINTIFF'S MOTION TO ADD CAMBRIDGE AS A PARTY TO ACTION AND JUDGMENT .......... 9

- A. Factual Background .......... 9
- B. Cambridge Should Be Added As A Defendant And Judgment Debtor .......... 12
  - 1. Cambridge Controlled the Litigation .......... 12
  - 2. Application of Rules 25(c) and 69(a) .......... 13
  - 3. State Law Procedures and Standards for Successor Liability .......... 16
  - 4. Successor Liability Should Be Imposed on Cambridge .......... 17

a. Assumption of Liabilities. ..... 17

b. The Cambridge Transaction With Opsys Limited is a *De Facto* Consolidation or Merger. ..... 18

c. Cambridge Continued Opsys Limited's R&D Business, Providing Only Inadequate Consideration. ..... 19

d. The Transfer of Opsys Limited's Assets to Cambridge Was for the Purpose of Avoiding Opsys Limited's Debts Including to Sunnyside. ..... 21

5. Alternatively, An Evidentiary Hearing After Discovery May Be Appropriate, As Well As Claims Against Cambridge Or CDT Oxford Limited For Fraudulent Conveyance. ..... 22

IV. CONCLUSION ..... 23

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## TABLE OF AUTHORITIES

### CASES

*5th and 46th Co. v. Dusenberry, Ruriani & Kornhauser*
394 N.Y.S.2d 684 (1977) .......... 17

*Alyeska Pipeline Service Co. v. Wilderness Society*
421 U.S. 240 (1975) .......... 4

*Arntz Contracting Co. v. St. Paul Fire & Marine Inc. Co.*
47 Cal.App.4th 464 (1996) .......... 5

*Beatrice Co. v. State Board of Equalization*
6 Cal.4th 767 (1993) .......... 17

*Benaroya Capital Company, LLC v. EMF Partners, LLC*
2005 WL 1580041 *5 (Wash.App.Div. 2005) .......... 17

*Beneficial Standard Properties, Inc. v. Scharps*
67 Cal.App.3d 227 (1977) .......... 5

*Berg Chilling Systems, Inc. v Hull Corporation*
435 F.3d 455 (3rd Cir. 2006) .......... 15

*Bruckman v. Parliament Escrow Corp.*
190 Cal.App.3d 1051 .......... 8

*Butler v. Adoption Media LLC*
2005 WL2107784*3 (ND Cal. 2005) .......... 14

*Central States Southeast and Southwest Areas Pension Fund v. Express Freight Lines, Inc.*
971 F.2d 5 (7th Cir. 1992) .......... 13

*Christianson v. Mechanical Contractors Bid Depository*
404 F.2d 324 (10th Cir. 1968) .......... 14

*Duris v. Erato Shipping, Inc.*
684 F.2d, 352, 356 (6th Cir. 1982)
*aff'd sub nom Pallas Shipping Agency, Ltd. v Duris*
461 U.S. 529 (1983) .......... 14

*Expert Elec., Inc. v. Levine*
554 F.2d 1227 (2nd Cir. 1977) *cert. denied* 434 U.S. 903 .......... 12

*Explosives Corp. of Am. v. Garlam Enters. Corp.*
817 F.2d 894 (1st Cir. 1987) .......... 12, 13

Federal Rules of Civil Procedure
Rule 69(a) .......... 1, 2, 13, 23

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

*Fed-Mart Corp. v. Pell Enterprises, Inc.*
111 Cal.App.3d 215 (4th Dist. 1980) ........ 6

*Fisher v. Allis Chalmers Corp. Product Liability Trust*
95 Cal. App. 4th 1182 (2002) ........ 22

*Franklin v. USC Corp.*
87 Cal.App.4th 615 (2001) ........ 18, 20

*Hall, Goodhue, Haisley & Barker, Inc. v. Marconi Conference Ctr. Bd.*
41 Cal.App.4th 1551 (1996) ........ 16

*Henkel Corporation v. Hartford Accident & Indemnity Co.*
29 Cal.4th 934 (2003) ........ 17

*Hensley v. Eckerheart*
461 U.S. 424 (1983) ........ 8

*Herrera v. Sing*
118 F.Supp.2d 1120 (E.D. Wash. 2000) ........ 13

*Hsu v. Abbara*
9 Cal.4th 863 (1995) ........ 4

*Hurtado v. Superior Court*
11 Cal.3d 574 (1974) ........ 15

*Issa v. Alzammar*
38 Cal.App.4th Supp. 1 (1995) ........ 16

*Kasel v Remmington Arms Co.*
24 Cal.App.3d 711 (1972) ........ 15

*Katzier's Floor and Home Design, Inc. v. M-MLS.com*
394 F.3d 1143 (9th Cir. 2004) ........ 20

*Klaxon Co. v Stentor Elec. Mfg. Co.*
313 US 487 (1941) ........ 15

*Koehler v. The Bank of Bermuda Ltd.*
2002 WL 1766444 (S.D.N.Y. 2002) ........ 12

*Korech v. Hornwood*
58 Cal.App.4th 1412 (2nd Dist. 1997) ........ 7

*Libutti v. United States*
178 F.3d 114 (2nd Cir. 1999) ........ 12, 14

*Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*
13 F.3d 69 (3rd Cir. 1993) ........ 12, 14, 22

*Marks v. Minnesota Mining and Manufacturing Co.*
187 Cal.App.3d 1429 (1987) ........ 18

BARTKOZANKEL
Barko-Zankel-Tarrant-Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

*McClellan v. Northridge Park Townhome Owners*
89 Cal.App.4th 746 (2001) .......... 16

*Monarch Bay II v. Prof'l Serv. Indus., Inc.*
75 Cal.App.4th 1213 (1999) .......... 20

*Morrow v. Hood Communications, Inc.*
59 Cal.App.4th 924 (1997) .......... 17

*Motores De Mexicali v. Superior Court*
51 Cal.2d 172 (1958) .......... 13

*NEC Electronics, Inc. v. Hurt*
208 Cal.App.3d 772 (1989) .......... 16

*Oyakawa v. Gillett*
8 Cal.App.4th 628 (1992) .......... 13

*Panther Pumps & Equipment Co. v. Hydrocraft, Inc.*
566 F.2d 8 (7th Cir. 1977) .......... 23

*Peacock v. Thomas*
516 U.S. 349 (1996) .......... 14

*Ray v. Alad Corp.*
19 Cal.3d. 22 (1977) .......... 13, 17, 20

*Reynolds Metals Co. v. Alperson*
25 Cal.3d 124 (1979) .......... 4, 7

*Schwartz v Pillsbury, Inc.*
969 F.2d 840 (9th Cir. 1992) .......... 14

*Select Creations, Inc. v Paliafito America, Inc.*
852 F.Supp. 740 (ED Wis. 1994) .......... 14

*Shannon v. Samuel Langston Co.*
379 F. Supp. 797 (W.D. Mich. 1974) .......... 18

*Sierra-Bay Fed. Land Bank Assn. v Superior Court*
227 Cal.App.3d 318 (1991) .......... 15

*Steinbach v. Hubbard*
51 F.3d 843 (9th Cir. 1995) .......... 13

*Texas Commerce Bank v. Garamendi*
28 Cal.App.4th 1234 (1994) .......... 5

*Thomas, Head & Greisen Employees Trust v. Buster*
95 F.3d 1449 (9th Cir. 1996) .......... 14

*Triplett v. Farmers Ins. Exchange*
24 Cal.App.4th 1415 (1994) .......... 16

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

*Troy Company v. Products Research Company*
339 F.2d 364 (9th Cir. 1964) ..... 13

*TRW, Inc. v. Ellipse Corp.*
495 F.2d 314 (7th Cir. 1974) ..... 13

*USI Properties v. M.D. Construction Co.*
186 F.R.D. 255 (D. Puerto Rico 1999) ..... 13

## STATUTES

28 United States Code

section 1920 ..... 3

Federal Rules of Civil Procedure

Local Rule 54-1 ..... 3

Local Rule 54-6 ..... 3

Rule 18(b) ..... 23

Rule 25(c) ..... 1, 2, 13, 22, 23

Rule 43(e) ..... 22

Rule 54(d)(1) ..... 3

Rule 54(d)(2) ..... 3

Rule 56(c) ..... 22

Rule 58 ..... 13

California Civil Code

section 1021 ..... 4

section 1717 ..... 4, 5

sections 3439, *et seq.* (Uniform Fraudulent Transfer Act) ..... 22

California Code of Civil Procedure

section 1032 ..... 5

section 187 ..... 16

section 1033.5 ..... 5

California Corporations Code

section 1107(a) ..... 12

BARTKOZANKEL
Barko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Delaware General Corporation Law
section 259 .......... 12

## OTHER AUTHORITIES

9 Witkin, Summary of Cal. Law, "Corporations" .......... 16
Rest. 2d of Judgments (1982) .......... 13
Wright and Miller, Federal Practice & Procedure (2007) .......... 14

BARTKOZANKEL
Bartko•Zankel•Tarrant•Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-vii-
2103.000/326341.1 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES & TO ADD CAMBRIDGE; Case No. C 05-00553 MHP

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

**NOTICE OF MOTIONS AND MOTIONS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 16, 2007 at 1:00 p.m. or as soon thereafter as the matter may be heard before the Honorable Marilyn Hall Patel, United States District Judge, in Courtroom 15 of the above entitled Court, plaintiff Sunnyside Development Co., LLC ("Sunnyside" or "plaintiff") will and hereby does move for an award of its reasonable attorney's fees, costs and expenses in the amount of $936,534.83 pursuant to the parties' contracts.

Plaintiff will also and hereby does move to add Cambridge Display Technologies, Inc. ("Cambridge") as a party to the action and judgment as Opsys Limited's successor pursuant to general principles of successor liability, and pursuant to Federal Rules of Civil Procedure, Rules 25(c) and 69(a).

Alternatively, Sunnyside seeks leave to add a claim for fraudulent conveyance of the assets of Opsys Limited to Cambridge and to CDT Oxford Limited, pursuant to Rule 18(b).

These motions will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declarations of Alyson L. Huber, Robert H. Bunzel and Paul Ainslie and the complete files and records herein, and on the argument and other evidence to be presented at the hearing of this matter.

DATED: April 2, 2007

BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation

By: [signature]
Robert H. Bunzel
Attorneys for Plaintiff
SUNNYSIDE DEVELOPMENT CO., LLC

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Sunnyside seeks an award of $936,534.83 for its attorney's fees, costs and expenses reasonably incurred in litigating this breach of contract case to judgment. Although plaintiff attempted to keep costs down by limiting depositions and motion practice, the defense mounted an aggressive campaign to challenge every pleading, take the deposition of virtually every person ever associated with the plaintiff and made a Motion for Summary Judgment on virtually every legal and factual issue raised at trial. In this climate, it is not unreasonable for plaintiff to incur fees and costs that equal only 19% of the verdict received in prosecuting its claim and defending against Opsys Limited's affirmative defenses.

Sunnyside also requests that the Court add Cambridge as a party to the action and judgment against Opsys Limited. Alternatively, prompt discovery and an evidentiary hearing pursuant to Rules 69(a) and 25(c) should be ordered with leave to file a fraudulent conveyance claim if needed.

## II. PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

### A. Relevant History For the Award of Attorney's Fees.

On February 15, 2001, Sunnyside and Opsys Limited entered into a Lease that provides for the recovery of attorney's fees. Paragraph 31 of the Lease states:

> If any Party of Broker brings an action or proceeding involving the Premises to enforce the terms hereof or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorney's fees. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term, "**Prevailing Party**" shall include, without limitation, a Party or Broker who **substantially obtains** or defeats **the relief sought**, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorney's fees award shall not be computed in accordance with any court's fee schedule, but shall be such as to fully reimburse all attorney's fees reasonably incurred. In addition, Lessor shall be entitled to attorney's fees, costs and expenses incurred in the preparation and services of notices of Default and consultations in connection therewith, whether or not a legal action is subsequently commenced in connection with such Default or resulting Breach.

BARTKOZANKEL
Bartko•Zankel•Tarrant•Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Declaration of Alyson L. Huber ("Huber Decl."), Exh. 1 (Exhibit 2 at trial) (emphasis in original and supplied). On or about October 2002, Sunnyside and Opsys Limited entered into another contract, the Assignment of Lease and Consent of Lessor ("Assignment"), which also provides for attorney's fees, costs and expenses. Huber Decl. Exh. 2 (Exhibit 31 at trial). Paragraph 8(f) of the Assignment provides:

> In the event an action is initiated to interpret or enforce any of the terms of this Assignment or enforce any judgment, the prevailing party shall be entitled to receive from the other party reasonable attorney's fees, costs, and expenses incurred in the action.

On December 14, 2004, Sunnyside filed this breach of contract case. Sunnyside proceeded to trial on only a single claim for breach of the lease (although plaintiff sought damages for multiple breaches). The primary defense asserted by Opsys Limited was that the Assignment effectively relieved it from any liability under the Lease, arguing that the Lease was transferred to another entity. The instructions read to the jury focused on plaintiff's breach of contract claim and Opsys Limited's attempts to enforce the Assignment, which would have been a written novation. All of the underlying disputed facts for both plaintiff's claims and each of defendant's affirmative defenses were related. Opsys Limited relied on the Assignment and Sunnyside the Lease.

On March 9, 2007, the jury returned a verdict in favor of plaintiff on its breach of contract claim in the amount of $4,853,017. Huber Decl. Exh. 3. The jury found that the Assignment did not effectively transfer the Lease. *Id.*

### B. Sunnyside is Entitled to Its Full Attorney's Fees, Costs and Expenses Reasonably Incurred Under the Lease and the Assignment

#### 1. State Law Governing The Parties Contracts Controls And Supports An Award To Sunnyside Of Fees, Costs And Expenses.

Sunnyside files this motion for an award of attorney's fees pursuant to Federal Rules of Civil Procedure, Rule 54(d)(2) and Local Rule 54-6.[1] Sunnyside is entitled to be fully reimbursed for its attorney's fees, costs and expenses reasonably incurred under two separate

[1] Sunnyside has concurrently filed a separate Bill of Costs pursuant to 28 U.S.C. § 1920, Federal Rules of Civil Procedure, Rule 54(d)(1) and Local Rule 54-1 for the costs taxable by the Clerk. Sunnyside requests that any costs not taxed by the Clerk be added to the award issued under this Motion for Attorney's Fees.

BARTKOZANKEL
Bartko-Zankel-Tarrant-Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

contracts, the Lease and the Assignment. *See* Huber Decl. Exh. 1 at ¶ 31 and Exh. 2 at ¶ 8(f). State law governs the construction of a contract for recovery of attorney's fees and the reasonableness of fees. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 fn.31 (1975). Here, California law provides that the measure and mode of compensation of attorney's fees is left to the express or implied agreement of the parties. Cal. Civ. Code § 1021. When a party is entitled to attorney's fees from an express contractual right, the Court does not apply a lodestar analysis since the award is based on the parties' agreement and not on equitable determinations of the Court. *Hsu v. Abbara*, 9 Cal.4th 863, 876-77 (1995).

Sunnyside is also entitled to its attorney's fees, costs and expenses in litigating against the affirmative defense of the written Assignment. In California, when one party is successful in defeating a contract claim (here the effectiveness of the Assignment) by proving that the contract was not enforceable, that party is entitled to its attorney's fees pursuant to California Civil Code § 1717. Civil Code § 1717 was enacted to make one-sided attorney's fees provisions apply to all parties to the contract and to prevent the oppressive use of one-sided attorney's fees provisions. *Reynolds Metals Co. v. Alperson*, 25 Cal.3d 124, 128 (1979). To achieve this purpose the statute applies in favor of the prevailing party on a contract claim (here, the Assignment), whenever that party would have been liable under the contract for attorney's fees had the other party prevailed. *Hsu, supra*, 9 Cal.4th at 870. Had Opsys Limited successfully enforced the Assignment, Opsys Limited would have claimed that Sunnyside is liable for attorney's fees pursuant to ¶ 8(f) of the Assignment. Since Sunnyside prevailed, Sunnyside is entitled to the benefit of ¶ 8(f), pursuant to § 1717.

The Assignment's fee provisions are as broad or broader than the Lease provision, and extend to "attorney's fees, costs, and expenses" and efforts to "enforce any judgment." Huber Decl. Exh. 2 at ¶ 8(f). Had Opsys Limited prevailed, it would have been entitled to fees to enforce any judgment. Under Civil Code § 1717, and the California Supreme Court's interpretation of its underlying policy, Sunnyside cannot receive less of a benefit than Opsys Limited would have received had it prevailed on the Assignment. *Hsu, supra*, 9 Cal.4th at 870-71. Contracting parties

are free to agree to choose a broader standard authorizing recovery of reasonable litigation costs and expenses, and the court must award these costs and expenses to the prevailing party. *Texas Commerce Bank v. Garamendi*, 28 Cal.App.4th 1234 (1994); *Arntz Contracting Co. v. St. Paul Fire & Marine Inc. Co.*, 47 Cal.App.4th 464, 491 (1996).

2. Sunnyside Is the Prevailing Party And Should Be Awarded Its Reasonable Attorney's Fees.

According to the Lease: "'**Prevailing Party**' shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought."[2] Huber Decl. Exh. 1 at ¶ 31. Plaintiff is easily the prevailing party on the Lease and the Assignment contract. The Defendant asserted an affirmative defense that the Assignment created a novation and released it from liability under the Lease. Plaintiff defeated this claim in its entirety and is entitled to its reasonable attorney's fees, costs and expenses incurred in defeating this and all other affirmative defenses. Huber Decl. Exh. 1 at ¶ 31 and Exh. 2 at ¶ 8(f).

Plaintiff also substantially obtained the damages it sought on its breach of contract claim. Plaintiff requested that the jury award approximately $6.6 million in damages. Defendant argued that it owed zero under the Lease but that even if it were found liable under the Lease reasonable damages, taking into account asserted mitigation, would fall between $1-1.5 million. Huber Decl. ¶ 4. The jury awarded close to $4.9 million in damages to the plaintiff. Huber Decl. Exh. 3. Plaintiff clearly is the prevailing party.

3. Sunnyside's Attorney's Fees Were Reasonably Incurred.

Sunnyside has elected to have its attorney's fees related to this litigation determined by the Court as costs to be taxed to the judgment. *See Beneficial Standard Properties, Inc. v. Scharps*, 67 Cal.App.3d 227, 231-232 (1977); Civ. Code § 1033.5 (a)(10)(A); also discussed at Court Discovery Hearing on October 27, 2006. Sunnyside is not seeking by this post-trial motion any attorney's fees, costs or expenses that were presented to the jury as damages. For example,

[2] Prevailing Party is also defined in Cal. Code of Civ. Proc. § 1032(a)(4) as the party with a net monetary recovery. Civ. Code § 1717(b)(1) states "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." Plaintiff meets both of these definitions as well as the definition in the contract.

BARTKOZANKEL
Bartko-Zankel-Tarrant-Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-5-

2103.000/326341.1 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES & TO ADD CAMBRIDGE; Case No. C 05-00553 MHP

Sunnyside presented evidence at trial that it incurred attorney's fees for services performed by the law firm of Wendel Rosen related to the clean-up of the property and the bankruptcy of Opsys US Corporation. Sunnyside is not seeking those attorney's fees in this motion. Rather, Sunnyside is only requesting an award of attorney's fees for those fees, costs and expenses directly related to the prosecution of this action. Those fees include the services of Stanley Hilton, Esq., the Bartko firm, and all experts and consultants used for this case.

The Lease provides that the award of attorney's fees to the prevailing party shall be such as to "fully reimburse" it for all attorney's fees reasonably incurred. All fees and costs prayed for here were incurred by Sunnyside. Bunzel Decl., ¶ 22. It is within the sound discretion of the Court to determine whether the full fees were reasonably incurred. *Fed-Mart Corp. v. Pell Enterprises, Inc.*, 111 Cal.App.3d 215, 228 (4th Dist. 1980). There are several factors that contributed to the amount of fees incurred in this action. Plaintiff has summarized its time spent on categories and tasks to shed light on why this breach of contract case was so heavily litigated. Huber Decl. ¶¶ 8-9. To assist the Court in determining the reasonableness of the fees and costs, plaintiff presents the following breakdown. *See* Huber Decl. ¶ 8.

| Category | Description | Hours | Fees |
|---|---|---|---|
| 1 | Initial Case Analysis | 264.65 | $71,137.50 |
| 2 | Efforts to Add CDT, Inc. | 55.8 | $20,060.50 |
| 3 | Document management | 106 | $16,527.00 |
| 4 | Fact Discovery | 529.4 | $146,777.50 |
| 5 | Communications w/ client | 19.9 | $8,821.25 |
| 6 | Expert Discovery | 152.15 | $44,925.00 |
| 7 | Defendant's MSJ | 321.2 | $90,966.00 |
| 8 | Sale of Property issues | 2.05 | $1,025.00 |
| 9 | Trial preparation | 766.35 | $214,299.00 |
| 10 | Trial | 465.05 | $136,227.50 |
| 11 | Post-Verdict | 13.85 | $5,205.00 |
| 12 | Fee Application | 35.65 | $8,787.50 |
| 13 | Mediation & Settlement | 46.95 | $18,541.25 |
| | Bartko Fees Total | 2770 | $783,300.00 |
| 14 | Estimate 3/24-5/16 | 100 | $39,000.00 |
| 15 | Stanley Hilton, Esq. Fees | | $6,200.00 |
| 16 | Non-taxable costs | | $108,034.83 |
| | **TOTAL Award Requested** | | **$936,534.83** |

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

4. Plaintiff's Fees Should Not Be Reduced.

Since all of the claims that were taken to trial are claims for which there is a right to attorney's fees (Lease and Assignment), there is no reason to apportion the attorney's fees among claims. *Reynolds*, 25 Cal.3d at 129. Even if the Court concluded that other claims were not technically contract claims, the rule in California is that attorney's fees need not be apportioned when incurred for representation on an issue "common" to both a cause of action in which fees are proper and one in which they are not allowed. *Korech v. Hornwood*, 58 Cal.App.4th 1412, 1416, 1422 (2nd Dist. 1997), *citing Reynolds*, 25 Cal.3d at 129-130. For example, the initial pleading of fraud in the inducement of the Lease arises from the same nucleus of facts and relates to the Lease, and should not be subject to apportionment. Even if the Court thought otherwise, plaintiff's attorney's fees for Stanley Hilton, Esq. for $6,200 would only be slightly reduced. Huber Decl. ¶ 8 (15). Plaintiff's present lawyers never argued a claim that fell outside the breach of contract claim for relief.

a. No Apportioning for Defendant's Alleged Success on Mitigation.

Opsys Limited on March 14, 2007, argued at the post-trial case management conference that it should be deemed the prevailing party on the "issue" of "mitigation," implying that fees should be apportioned accordingly. The Court should reject this argument. First, neither the Lease nor the Assignment provides for this reduction. The term "prevailing party" is expressly defined by contract to mean the party that "substantially obtains" the relief sought. There is no question that Sunnyside substantially obtained a significant breach of contract award.

Second, there is no California authority supporting the proposition that a Court should apportion fees in the context of a contract-based attorney's fees award among sub-claims within a breach of contract claim for relief. To do so would be contrary to the parties' binding agreement.

Third, Opsys Limited's closing argument on mitigation establishes that Opsys Limited was not successful. Huber Decl. ¶ 4. Mr. Burns asked the jury to only award between $1 million–$1.5 million in damages after mitigation. Mr. Burns stated that Sunnyside only had

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

$638,000 in lost rent through June 2004 and should only receive an additional nine months of rent, or $954,000, for a total loss of $1,580,000. Mr. Burns claimed that anything additionally sought by Sunnyside was "over reaching." Sunnyside requested an award of $6.6 million in its closing argument and the jury returned a verdict for plaintiff in the amount of $4,853,017. These facts do not imply that Opsys Limited was more successful than Sunnyside regarding the duty to mitigate, and there were other damage-reducing theories advanced by the defense (such as penalty plus interest being excessive), as well as an overall "reasonableness" instruction.

b. No Apportioning of Attorney's Fees for Attempts to Add Cambridge as a Party or for ¶ 12.1 of the Lease.

Plaintiff has sought to add Cambridge Display Technology, Inc. as a successor party in aid of enforcement of the judgment, a clearly recoverable expense under the Assignment at ¶ 8(f) and Lease at ¶ 31. In addition, plaintiff had earlier asserted breach of ¶ 12.1 of the Lease, which provided additional breach of contract damages (unconsented assignment). Ainslie Decl. ¶ 2. Though plaintiff dropped this claim in order to avoid confusing the jury, it was integrally related to the breach of contract claim. The prevailing party is entitled to be fully reimbursed for its attorney's fees even if one of five asserted breaches on which related fees and cost were spent, was not presented to the jury. As long as plaintiff "substantially obtained" the relief it sought, it is the prevailing party under the contracts and is entitled to its reasonably incurred fees expenses. As the U.S. Supreme Court noted in *Hensley v. Eckerheart*, 461 U.S. 424, 431 (1983), even in the absence of a contractual basis for fee recovery, no reduction is warranted where "plaintiff's counsel expended a certain limited amount of time pursuing certain issues of fact and law that ultimately did not become litigated issues in the case or upon which plaintiffs ultimately did not prevail," where "plaintiffs prevailed on the merits and achieved excellent results."

Finally, the fees incurred on this motion are recoverable. *Bruckman v. Parliament Escrow Corp.*, 190 Cal.App.3d 1051, 1062 [recovery of fees for fee-related activity authorized in contract action].

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKOZANKEL
Barko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## III. PLAINTIFF'S MOTION TO ADD CAMBRIDGE AS A PARTY TO ACTION AND JUDGMENT

### A. Factual Background.

Sunnyside seeks post-verdict relief so that the company that has succeeded to the assets and business of the defendant, and which litigated this case on its behalf, shall pay this Court's judgment.[3] This motion is supported by a large volume of publicly-filed documents and undisputed exhibits, and relates the following basic facts:

- In fall 2002, judgment debtor Opsys Limited had debts in excess of 17 million British pounds, and a potentially large lease liability to plaintiff, which has now been adjudicated against it.[4]
- A deal was made October 23, 2002 to sell Opsys Limited's intellectual property and operations in the UK to CDT Acquisition Corp. which subsequently changed its name to Cambridge Display Technology, Inc. ("Cambridge"), a Delaware company that has now gone public.[5]
- To effect this transaction, Opsys Limited pushed down all of its valuable intellectual property and patents, and its UK operations, into a subsidiary known as Opsys UK.[6]
- Cambridge acquired a 16% interest in Opsys UK for $5 million on October 23, 2002, obtaining a 98% interest in the profits of that company and full control over its technology and operations.[7]
- As part of that transaction, Cambridge purchased options to acquire the rest of Opsys UK, or all of Opsys Limited and its remaining 84% interest in Opsys UK, which held all of the transferred assets.[8]

---

3 At this writing, the form of Judgment presented March 20, 2007 has not been entered, but this motion assumes that a Judgment on the verdict issued March 9, 2007 will be entered at or before the hearing on this motion. Most of the facts supporting this motion are set forth as attachments to the Declarations of Robert H. Bunzel ("Bunzel Decl.") and Paul R. Ainslie ("Ainslie Decl."), referenced in the following footnotes.

4 Bunzel Decl. ¶ 18 and Exh. M, pp. 17-18; Ainslie Decl. ¶ 6.

5 Bunzel Decl.¶¶ 3-4 and Exhs. A-B.

6 Bunzel Decl. ¶ 3 and Exh. A, p. 5 of 16 WHERAS clause (F); Ainslie Decl ¶ 5.

7 Ainslie Decl. ¶ 5; Bunzel Decl. ¶ 3 and Exh. A, pp. 22 of 116, § 7.1; 24 of 116, §§ 8.3, 8.4.

- In 2002, the name of Opsys Limited's subsidiary, Opsys UK, was changed to CDT Oxford Limited.[9]

- After October 2002, the Oxford-based research and development business of Opsys Limited was continued by Cambridge, until July 2003, when the operations of CDT Oxford Limited (formerly Opsys UK) were fully "consolidated" into Cambridge and/or Cambridge's other affiliates "under one roof" in the city of Cambridge.[10]

- In 2004, Cambridge filed its prospectus with the Securities Exchange Commission to issue public shares. In that prospectus and in its annual reports thereafter, Cambridge touted its acquisition of Opsys Limited as a cornerstone of its research and development value in the flat panel display niche, and noted that IPO funds would be used to pay Opsys Limited liabilities.[11]

- Just prior to its initial public offering, Cambridge elected to complete the acquisition of Opsys Limited and CDT Oxford Limited (formerly Opsys UK) by acquiring 100% of the stock of Opsys Limited (which owned 84% of Opsys UK) in exchange for 817,000 shares of Cambridge stock.[12]

- Cambridge for accounting purposes valued the acquisition of CDT Oxford Limited (holding all of the IP UK assets of Opsys Limited) at between $19.7 million and $26.9 million.[13]

- Cambridge and the shareholders of Opsys Limited agreed to a settlement and escrow mechanism whereby some of the Cambridge stock, but not all of it, that Opsys Limited's shareholders were to receive from exchanging their Opsys Limited stock, would indemnify Cambridge for undisclosed or contingent liabilities.[14]

---

8 Ainslie Decl. ¶ 4 and Exh B.

9 Bunzel Decl. Exh. C, p. 68 of 149.

10 Bunzel Decl. ¶ 8 and Exh. F.

11 Bunzel Decl. ¶ 5 and Exh. C at pp. 29 of 149, 40 of 149, 58 of 152, 68 of 149; ¶ 7 and Exh. E at pp. 22 of 99, 25 of 99, 30 of 99, and 36 of 99.

12 Ainslie Decl. Exh B, p. F-16.

13 Ainslie Decl. ¶ 7 and Exh. B.

14 Bunzel Decl. ¶ 6 and Exh. D, Escrow Agreement § 4(e) at p. 43 of 58.

BARTKOZANKEL
Bartko•Zankel•Tarrant•Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

- In the same month of the Cambridge public offering and the purchase of Opsys Limited shares by Cambridge, plaintiff filed this action against Opsys Limited.[15]
- Opsys Limited and CDT Oxford Limited (formerly Opsys UK and once owned by Opsys Limited) have applied for or obtained, in the name of CDT Oxford Limited, substantial patents related to Cambridge's research and development business.[16]
- In 2005, *during the pendency of this case*, CDT Oxford Limited (formerly Opsys UK) was transferred from the direct ownership (84%) of now judgment debtor Opsys Limited to become a direct subsidiary of Cambridge.[17]
- After protracted and expensive litigation, the jury returned a verdict in this action on March 9, 2007 for approximately $4.85 million against Opsys Limited.[18]
- Cambridge then announced in a press release that Opsys Limited does "not have any assets nor does it have any intellectual property rights...."[19]
- Cambridge directed this litigation and advanced the funds to defend it and its representatives presided over the trial.[20]
- The market capitalization value today of Cambridge, which includes the valuable IP and operations from Opsys Limited that supported its public offering, is $121 million (as of March 30, 2007) http://finance.yahoo.com/q?s=oled&x=0&y=0.

Thus, defendant's assets, valued by Cambridge at $19.7 million to $26.9 million, were transferred to Cambridge despite considerable debt and the potential liability to Sunnyside, while Cambridge infused minimum cash into Opsys Limited in fall of 2002, with only Cambridge shares delivered directly to the shareholders of Opsys Limited in 2004 to close the deal. Thereafter, the only remaining asset of Opsys Limited -- its majority shareholding in CDT Oxford Limited (IP and patents) -- was transferred to Cambridge in 2005 *while this action was pending*.

---

15 Docket entry No. 1, Notice of Removal, attaching Complaint filed December 14, 2004.

16 Bunzel Decl. ¶ 20 and Exh. O.

17 Ainslie Decl. ¶¶ 9-10 and Exh. C.

18 Docket entry No. 166, March 9, 2007.

19 Bunzel Decl. ¶ 14 and Exh. J.

20 Bunzel Decl. ¶ 19 and Exh. N; ¶¶ 12-13 and Exhs. H, I.

BARTKOZANKEL
Bartko-Zankel-Tarrant-Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Opsys Limited was thus 'hollowed out,' its assets stripped and transferred to Cambridge in exchange for Cambridge stock to Opsys Limited shareholders, bypassing Opsys Limited and its creditor Sunnyside. The disclosures in the Cambridge 2004 10-K, describing the acquisition of Opsys Limited, contain "unusual" awareness of prejudice to creditors. Ainslie Decl. ¶ 8, Exh. B. Although Cambridge vigorously defended this case, it now seeks to hide behind the stripped shell.

The Federal Rules do not condone such conduct, and equity and due process dictate that Cambridge be added as a party and judgment debtor. The remaining escrow shares, payable to Cambridge following the verdict, should be delivered to plaintiff, along with whatever additional funds from Cambridge are needed to satisfy the judgment, plus attorney's fees and costs.

B. Cambridge Should Be Added As A Defendant And Judgment Debtor

1. Cambridge Controlled the Litigation.

A corporation that merges with another corporation is the latter's successor for purposes of litigation. *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3rd Cir. 1993); Del. Gen. Corp. Law § 259 [merger or consolidation requires surviving corporation to pay "all debts" of any of the "constituent corporations"]; Cal. Corp. Code § 1107(a). Cambridge and Opsys Limited did not consolidate by statutory merger, but rather via an asset and stock purchase:

> On the other hand, a corporation that acquires all of another corporation's assets without undergoing a legal merger ordinarily is not liable for a judgment as a successor [citation] ***unless it controlled the litigation that resulted in the judgment,*** *see Explosives Corp. of Am. v. Garlam Enters. Corp.*, 817 F.2d 894, 904-07 (1st Cir. 1987) or if there is fraud, *see Libutti*, 178 F.3d at 124. (Emphasis supplied.)

*Koehler v. The Bank of Bermuda Ltd.*, 2002 WL 1766444 (S.D.N.Y. 2002).

> Generally speaking, one whose ***interests were adequately represented*** by another vested with the authority of representation ***is bound by the judgment***, although not formally a party to the litigation. (Emphasis supplied.)

*Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1223 (2nd Cir. 1977), *cert. denied* 434 U.S. 903. While Cambridge and Opsys Limited sought to avoid a statutory merger, all the earmarks of successor liability exist. A transferee may be "liable for a judgment" when (1) the transferee is a

BARTKOZANKEL
Bartko•Zankel•Tarrant•Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

bona fide successor, (2) the transferee had notice of the potential liability, and (3) the predecessor is unable to directly provide adequate relief. *Herrera v. Sing*, 118 F.Supp.2d 1120, 1123 (E.D. Wash. 2000), *citing Steinbach v. Hubbard*, 51 F.3d 843, 845-46 (9th Cir. 1995).[21] There are strong equitable reasons for imposing liability against Cambridge, which directed the litigation with full opportunity to defend. Bunzel Decl. ¶ 19, Exh. N.[22]

2. Application of Rules 25(c) and 69(a).

As stated at p. 4 of plaintiff's Post-Trial Summary of the Record filed March 20, 2007, post-verdict proceedings against Cambridge or its affiliates are driven by Fed. R. Civ. P. Rules 25(c) and 69(a).[23] Rule 25(c) applies to transfers occurring at any time "after an action is brought, including after judgment is entered." *Herrera v. Sing, supra*, 118 F.Supp.2d at 1123, *citing USI Properties v. M.D. Construction Co.*, 186 F.R.D. 255, 260 (D. Puerto Rico 1999); *Explosives Corp. of Am. v. Garlam Enters. Corp.*, 817 F.2d 894, 907 (1st Cir. 1987); 6 Moore's Federal Practice (3d Ed.) § 25.35[1] and fn.4. Imposing successor liability involves broad equitable considerations. *Ray v. Alad Corp.*, 19 Cal.3d. 22, 34 (1977).[24]

Rule 69(a) provides:

> The ***procedure on execution***, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution ***shall be in accordance with the practice and procedure of the state***

---

21 The requirement that the party to be added to the judgment had to have controlled the litigation is to protect that party's due process rights. *Motores De Mexicali v. Superior Court*, 51 Cal.2d 172 (1958). See *also* Rest. 2d of Judgments, § 59 (1982).

22 *Oyakawa v. Gillett*, 8 Cal.App.4th 628, 631 (1992) [judgment amended; new defendant represented by original defendant's representation at trial]. Factors important to a finding of control include selection and payment of counsel, payment of litigation expenses, a written indemnification agreement, participation in settlement negotiations, and control over the decision to appeal. *TRW, Inc. v. Ellipse Corp.*, 495 F.2d 314, 318 (7th Cir. 1974); *Troy Company v. Products Research Company*, 339 F.2d 364, 367 (9th Cir. 1964). All are present here.

23 As one court has noted, "the judgment entered pursuant to Fed. R. Civ. P. 58 ends the proceeding to determine liability and relief, but it begins the collection proceeding if the defendant refuses to pay." *Central States Southeast and Southwest Areas Pension Fund v. Express Freight Lines, Inc.*, 971 F.2d 5, 6 (7th Cir. 1992).

24 Plaintiff is not asking the Court to reconsider the prior dismissal with prejudice as to earlier claims made against CDT Limited, a UK company. Rather, this motion concerns Cambridge Display Technology, Inc., a Delaware Company, and potentially CDT Oxford Limited, and does not assert *alter ego* claims for participating directly in the breach of lease or for fraud, which were earlier dismissed.

BARTKOZANKEL
Bartko•Zankel•Tarrant•Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

> ***in which the district court is held***, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. (Emphasis supplied.)

Under Rule 69(a) "the relevant law is that of the state in which the district court is held." Wright and Miller, Federal Practice & Procedure (2007) at § 3012. "[I]n determining the liability of the corporation's successor for the judgment debt of the corporation, Utah [forum] corporate law was controlling when applicable." *Id.* at fn.26, *citing Christianson v. Mechanical Contractors Bid Depository*, 404 F.2d 324, 325 (10th Cir. 1968).

In *Thomas, Head & Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1456-60 (9th Cir. 1996), a judgment creditor used supplementary proceedings against non-parties to recover amounts transferred to them to satisfy his judgment, and the Ninth Circuit approved application of forum state (Alaska) law in enforcing judgment rights against non-parties.[25] Rule 69(a)'s requirement to apply forum state law should resolve the issue of choice of law in determining successor liability here, given the verdict and incipient judgment.

Rule 25(c), itself, "does not ordinarily alter the substantive rights of parties but is merely a procedural device designed to facilitate the conduct of a case." *Luxliner, supra,* 13 F.3d at 71-2. If the Court on this motion concludes additional discovery and a later evidentiary hearing are required before Cambridge is added to the judgment (*see* section II D, *infra*), then adding Cambridge as a party may not require resolution of substantive law at this time. *See Butler v. Adoption Media LLC*, 2005 WL2107784*3 (ND Cal. 2005).[26] Ultimately, successor liability is determined by state substantive law. *Libutti v. United States,* 178 F.3d 114, 124 (2nd Cir. 1999).

The Ninth Circuit in *Schwartz v Pillsbury, Inc.*, 969 F.2d 840, 844-5 (9th Cir. 1992) applied California law to determine successor liability without reference to the parties' contract,

---

[25] *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996) [approving "broad range of supplementary proceedings involving third parties to assist in the protection of federal judgments, including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent transfers."]

[26] Nor is there a jurisdictional issue, since "if a court has personal jurisdiction over the predecessor in interest, once successor liability is established, personal jurisdiction over the successor in interest necessarily exits." *Select Creations, Inc. v Paliafito America, Inc.*, 852 F.Supp. 740, 765 (ED Wis. 1994), *citing Duris v. Erato Shipping, Inc.*, 684 F.2d, 352, 356 (6th Cir. 1982), *aff'd sub nom Pallas Shipping Agency, Ltd. v Duris*, 461 U.S. 529 (1983).

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

where imposition of successor liability "does not involve the interpretation or enforcement" of such agreement. Here, the only liability against Cambridge to be enforced is derivative of Opsys Limited's breach of lease, Exhibit 2 at trial and Exhibit 1 to the accompanying Declaration of Alyson Huber. It provides at § 29 p. 10: "the laws of the State in which the Premises are located [California]" governs. While the Transaction Agreement between Cambridge and Opsys Limited specifies English law at § 36 (Bunzel. Decl. Exh. A), Sunnyside is *not* a party to that agreement.

In a lengthy analysis of choice of law in the successor liability context, the Third Circuit in *Berg Chilling Systems, Inc. v Hull Corporation,* 435 F.3d 455 (3rd Cir. 2006) held the choice of law rules of the forum state are the starting point, "because in an action based on diversity of citizenship jurisdiction we must apply the substantive law of the state in which the district court sat, including its choice of law rules." *Id.* at 462, *citing Klaxon Co. v Stentor Elec. Mfg. Co.*, 313 US 487, 496 (1941).

Judge Alito in *Berg* did *not* apply the contractual choice of law term in the predecessor and successor corporation's asset purchase contract, as those parties had "bargained for New Jersey law to apply to interpretation of the provisions of the contract, not to their real world effect," and because the plaintiff "did not bargain" at all for such law while defendants had acted "to construct the asset purchase agreement specifically to avoid liability to third parties such as Berg." *Id.* at 466 at fn.3. *Berg* ultimately turned on forum state choice of law principles.

Here, California's "governmental interest approach" dictates the result. *Hurtado v. Superior Court*, 11 Cal.3d 574, 579-580 (1974). California law "would be displaced only if there is a compelling reason for doing so," *Kasel v Remmington Arms Co.*, 24 Cal.App.3d 711, 731 (1972), and "only if our state's interest in having its law applied was insignificant or if the other state's law did not conflict with our state's interests." *Sierra-Bay Fed. Land Bank Assn. v Superior Court,* 227 Cal.App.3d 318, 331 (1991).[27] California, in protection of its resident plaintiff

---

[27] Delaware (Cambridge's state of incorporation) also recognizes successor liability of third parties and the doctrine of *de facto* merger. *Fehl v. S.W.C. Corp.*, 433 F.Supp. 939, 945 (D.C. Del. 1977); *Drug, Inc. v. Hunt*, 35 Del. 339, 361 (1933); *Re Xperex v. Viasystems Technologies Corp.*, 2004 WL 3053649 *2 (Del. Ch. 2004). An analysis of successor liability under English law is beyond the scope of this page-limited brief, and should be unnecessary since if the foreign law is

BARTKOZANKEL
Bartko•Zankel•Tarrant•Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Sunnyside and satisfaction of a judgment entered in this state, has a significant interest in applying California law in construing successor liability.[28] It would defeat the interests of justice in this state and this Court should a foreign party cause millions in legal fees and weeks of court time be spent defending its subsidiary on a local dispute, only to seek the shelter of a private contract under foreign law.[29] These compelling interests, coupled with the direct requirements of Rule 69(a), means California post-verdict procedures and California substantive law should apply.

3. <u>State Law Procedures and Standards for Successor Liability.</u>

In *McClellan v. Northridge Park Townhome Owners*, 89 Cal.App.4th 746, 752-3 (2001), the court stated that under Cal. Code Civ. Proc. § 187: "a trial court has jurisdiction to modify a judgment to add additional judgment debtors," citing *NEC Electronics, Inc. v. Hurt*, 208 Cal.App.3d 772, 778 (1989), and that § 187 is applicable to "successor corporation" circumstances, citing 9 Witkin, <u>Summary of Cal. Law</u>, "Corporations" § 19, p. 532; *see also Issa v. Alzammar*, 38 Cal.App.4th Supp. 1, 4 (1995) [under § 187 a court "has the authority to amend a judgment to add additional judgment debtors"]; *Hall, Goodhue, Haisley & Barker, Inc. v. Marconi Conference Ctr. Bd.*, 41 Cal.App.4th 1551, 1554-55 (1996).

To amend a judgment under § 187, two requirements must usually be met: "(1) that the new party be the alter ego of the old party and (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." *Triplett v. Farmers Ins. Exchange*, 24 Cal.App.4th 1415, 1421 (1994). Here, Cambridge

---

contrary to California's, then California choice of law rules should require this state's law be applied under the current circumstances.

[28] "California's general policies of affording relief to its citizens who have suffered a breach of contract or a tort (*see* Civ. Code §§ 3300, 3333) and of punishing and deterring wrongful conduct (*see* Civ. Code § 3294, subd. (a)) give it a strong interest in application of its law." *Wong v. Tenneco, Inc.* 39 Cal.3d 126, 143 (1985), Mosk, J. dissenting.

[29] In this Court's August 8, 2005 Order regarding plaintiff's First Amended Complaint, the Court applied British law in determining that *alter ego* allegations were insufficient to pierce the corporate veil of CDT Limited, a U.K. company. Plaintiff is not alleging here that Cambridge is the *alter ego* of Opsys Limited with respect to entering into or breaching the lease (as was alleged by former counsel), but rather that Cambridge has succeeded to the adjudicated liability of Opsys Limited. We are thus in a substantially different posture than the prior Order.

BARTKOZANKEL
Bartko•Zankel•Tarrant•Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

controlled the Opsys Limited defense, and it is its alter ego for successor liability under state law as to this judgment, as discussed next.

In *Ray*, *supra,* 19 Cal.3d at 28, the California Supreme Court enumerated four long-established "exceptions" to the general rule that a corporation purchasing the assets of another corporation is insulated from the debts and liabilities of its predecessor:

> (1) [t]here is an express or implied agreement of assumptions, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts. [citations][30]

The *Ray* exceptions were stated again in *Beatrice Co. v. State Board of Equalization*, 6 Cal.4th 767 (1993), 778, and *Henkel Corporation v. Hartford Accident & Indemnity Co.*, 29 Cal.4th 934, 941 (2003), and are clearly in the disjunctive, such that any *one* of them may establish successor liability. Here, *all* of the exceptions apply, and read together and given Cambridge's control of the litigation, establish Cambridge's successor liability to plaintiff.[31]

4. Successor Liability Should Be Imposed on Cambridge.

a. Assumption of Liabilities.

The first basis on which successor liability may be imposed is Cambridge's express or implied assumption of Opsys Limited's liabilities. While the Transaction Agreement shows an intent not to assume any of the US obligations (Bunzel Decl. Exh. A, p. 5 of 116), WHEREAS clause(E), the Fremont lease has now been determined by the jury to be *a UK company liability.* Further, Cambridge understood there was risk of undisclosed "contingent liabilities" of Opsys

---

30 The "fifth" exception created in *Ray* was for "product line" cases involving products liability, not applicable here.

31 Courts have employed successor liability in the context of defaulted leases. *Morrow v. Hood Communications, Inc.*, 59 Cal.App.4th 924, 925 (1997) [trial court decision to that effect not reviewed on the merits due to settlement and petition to vacate granted]; *Benaroya Capital Company, LLC v. EMF Partners, LLC*, 2005 WL 1580041 *5 (Wash.App.Div. 2005) [on summary judgment, trial court concluded transaction at issue "was a defacto merger. The effect of this ruling was to make [successor] liable for [lessee's] obligations on the *Benaroya* lease."]; *5th and 46th Co. v. Dusenberry, Ruriani & Kornhauser*, 394 N.Y.S.2d 684 (1977).

Limited (Bunzel Decl. Exh. D, p. 43 of 58, *e.g.*), and Cambridge and its affiliates assumed future liabilities of the Opsys Limited subsidiary they acquired. Bunzel Decl. Exh. A, p. 23 of 116, § 7.5.

Cambridge obtained contingent rights to the shares of its stock left in escrow for the Opsys Limited shareholders (Bunzel Decl. Exh. D, p. 43 of 58; Exh. E, p. 25 of 99), and Cambridge has apparently invaded those assets to finance this litigation. Bunzel Decl. ¶ 11; Exh. G, pp. 17-18 of 59. Since the liability to Sunnyside is now clearly a UK liability, Cambridge has impliedly assumed it, and has rights to remaining stock in the escrow as a consequence.

b. The Cambridge Transaction With Opsys Limited is a *De Facto* Consolidation or Merger.

*Marks v. Minnesota Mining and Manufacturing Co.*, 187 Cal.App.3d 1429, 1435 and fn.13 (1987) held that: "[w]here the consideration consists wholly of shares of the purchaser's stock which are promptly distributed to the seller's shareholders in conjunction with the seller's liquidation," liability for the predecessor's debts generally follows, *quoting Shannon v. Samuel Langston Co.*, 379 F. Supp. 797, 807 (W.D. Mich. 1974). Five relevant factors apply:

> (1) was the consideration paid for the assets solely stock of the purchaser or its parent; (2) did the purchaser continue the same enterprise after the sale; (3) did the shareholders of the seller become the shareholders of the purchaser; (4) did the seller liquidate; and (5) did the buyer assume the liabilities necessary to carry on the business of the seller.

*Marks*, *supra*, at 1436; *Franklin v. USC Corp.*, 87 Cal.App.4th 615, 626 (2001). All apply here.

First, Cambridge acquired Opsys Limited by issuing 797,695 shares of Cambridge stock and an additional 19,736 of Cambridge stock to two former Opsys Limited directors. Ainslie Decl. Exh. B. This stock transfer satisfies the first factor.[32]

The second factor, continuation of the business after sale, is also evident from the SEC filings, showing that Opsys assets have flowed into Cambridge directly to support its core research and development business:

> In 2002, as part of our IP expansion strategy, ***we acquired control of CDT Oxford Limited (formerly known as Opsys UK Limited)***,

[32] The 2002 $5 million cash contribution was for a controlling interest in the affiliate, not directly for acquisition of Opsys Limited, which later in 2004 was a 100% stock deal.

BARTKOZANKEL Bartko-Zankel-Tarrant-Miller 900 Front Street, Suite 300 San Francisco, CA 94111 Phone (415) 956-1900 • Fax (415) 956-1152

> which owns or controls a number of patents protecting the use of dendrimers to make solution processable phosphorescent materials. This ***allows us to develop proprietary materials which we believe have the potential to form the basis of a future generation...*** (Emphasis supplied.)

Bunzel Decl Exh. C, Prospectus at p. 58 of 149. Cambridge has "had full management control over CDT Oxford since October 2002 and have been responsible for funding its operations." *Id.* at p. 40 of 149. All Opsys R&D was absorbed by Cambridge "under one roof" as of July 2003. Bunzel Decl. Exh. F.

The third factor, did the shareholders of the seller become the shareholders of the purchaser, is established by the Settlement Agreement and Amendment which describes how the shares will be distributed to Opsys Limited's shareholders (Bunzel Decl. Exh. D), and the 2004 10-K description of the ultimate acquisition through a 100% stock deal. Ainslie Decl. Exh. B.

The fourth factor, did the seller liquidate, is also established by the public filings and press releases showing that all assets and operations of Opsys Limited have been transferred to Cambridge, and that Opsys Limited has no assets following the transfer of it majority stockholding position in CDT Oxford Limited to Cambridge. Ainslie Decl. ¶ 9, Exh. C; Bunzel Decl. Exhs. F and J.

The fifth and final factor, whether the buyer assumed the liabilities necessary to carry on the business of the seller, is also met here. Cambridge expressly assumed the operational liabilities of Opsys UK (holding the assets of Opsys Limited), which was formed to carry on the judgment debtor's R&D business. Bunzel Decl. Exh. A, p. 23 of 116, § 7.5.

c. Cambridge Continued Opsys Limited's R&D Business, Providing Only Inadequate Consideration.

The public filings of Cambridge are replete with statements that Cambridge has continued the research and development business and operations of Opsys Limited, and that it has succeeded to the assets of Opsys Limited. The 2002 Transaction Agreement permitted Cambridge to "control" the "operations" of the Opsys Limited subsidiary (Opsys UK) created to hold all Opsys UK operations and all of its IP and assets. Bunzel Decl. ¶ 3 and Exh. A pp. 22 of 116, § 7.1;

BARTKOZANKEL
Bartko-Zankel-Tarrant-Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

24 of 116, §§ 8.3, 8.4. Thereafter, those operations and assets were folded into Cambridge, forming a cornerstone for Cambridge's IPO.[33]

The California Supreme Court in *Ray* stated that "a corporation acquiring the assets of another corporation is the latter's mere continuation and therefore liable for its debts" upon "a showing of one or both of the following factual elements":

> (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers or directors or stockholders of both corporations.

*Ray, supra,* 19 Cal.3d at p. 29; *Franklin v. USX Corp., supra*, 87 Cal.App.4th at p. 626. The Ninth Circuit in *Katzier's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1150 (9th Cir. 2004), in applying California law, noted that:

> The requirement of inadequate consideration in a successor liability case is premised on the notion that when a successor corporation acquires the predecessor's assets without paying adequate consideration, the successor deprives the predecessor's creditors of their remedy.[34]

Here, the research and development business activities of Opsys Limited/Opsys UK continued after the Cambridge acquisition, ultimately under "one roof." Bunzel Decl. Exh. F. Nor can there be any legitimate dispute that any cash provided by Cambridge in 2002 was "inadequate" to satisfy Opsys Limited's debts or that this money was "made available" for that purpose to Sunnyside. Ainslie Decl. ¶ 6, Exh. B, p. F-15; Bunzel Decl. Exh. M, pp. 17-18. Just the opposite is true. Further, following the consolidation of Opsys and Cambridge, Opsys Limited's financial controller became a director of the surviving subsidiary Opsys UK, which became CDT Oxford Limited, and Mr. Holmes (who testified at trial) became an observer on the Cambridge board. Bunzel Decl.

---

33 Bunzel Decl. ¶ 5 and Exh. C at pp. 29 of 149, 40 of 149, 58 of 152, 68 of 149; ¶ 7 and Exh. E at pp. 22 of 99, 25 of 99, 30 of 99, and 36 of 99; Exh. F [press release re consolidating operations under one roof]; Exh. M [patents].

34 In *Monarch Bay II v. Prof'l Serv. Indus., Inc.*, 75 Cal.App.4th 1213 (1999), the court indicated there must be a causal relationship between a successor's acquisition of assets and the predecessor's creditors inability to get paid. That causal relationship is clearly established here, since significant Cambridge stock consideration (valued at between $12 million and 19 million in 2002 or 2004) has not been paid to satisfy Opsys Limited's creditors, including Sunnyside.

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Exh. P. There is no question that Opsys Limited shareholders became Cambridge shareholders. Bunzel Decl. Exh. D.

d. The Transfer of Opsys Limited's Assets to Cambridge Was for the Purpose of Avoiding Opsys Limited's Debts Including to Sunnyside.

The fourth exception for imposing successor liability on Cambridge, that the transfer of assets was for the fraudulent purpose of escaping liability for the seller's debts, is equally applicable here. How else can one interpret the following statement in the Cambridge 2004 10-K summarizing the Opsys transaction?

> The terms of the Transaction Agreement were entered into by the Company **so that it could gain control of an economic interest in the UK assets and operations of Opsys** (which had been transferred to Opsys UK immediately prior to the transaction) **in such a manner to avoid acquiring any interest in any other assets or liabilities of Opsys**. (Emphasis supplied.)

Ainslie Decl. ¶ 8 and Exh. B, p. F-15. If that were not brazen enough, in 2005 defendants during the pendency of this action transferred the patent-rich CDT Oxford Limited subsidiary, owned 84% by Opsys Limited when the case began, to Cambridge directly, leaving Opsys Limited, according to Cambridge, with "no assets." Ainslie Decl. ¶¶ 9-10 and Exh. C; Bunzel Decl. ¶ J.

Opsys Limited, directed by Cambridge, argued at trial that in 2002 it was essentially insolvent such that the Cambridge transaction was the only solution. Attached as Exh. L, p. 102, to the Bunzel Decl. is testimony from Opsys Limited's expert Terry Lloyd, summarizing Opsys Limited's September 30, 2002 financial statements to that effect. Plaintiff's consultant, Mr. Ainslie, in his current declaration, concludes that any cash provided by Cambridge in 2002 was inadequate to pay Opsys Limited's then-stated debts in excess of £17 million British pounds (not including the liability now determined by the jury here). Ainslie Decl. ¶ 6; Bunzel Decl. Exh. M, pp. 17-18.

The Cambridge and Opsys Limited consolidation, extracting value for the assets of Opsys Limited by creating subsidiaries and then going 'around' the company and its liabilities such as the Sunnyside lease, were the mechanisms of ambitious young businessmen whom the

BARTKOZANKEL
Bartko•Zankel•Tarrant•Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Court saw at trial. California has adopted the Uniform Fraudulent Transfer Act, Cal.Civ. Code §§ 3439, *et seq*., and §§ 3439.07-08 of that Act provides for voiding such transfers "to the extent necessary to satisfy the creditor's claim."[35] Cambridge is the transferee and a proper defendant.

5. Alternatively, An Evidentiary Hearing After Discovery May Be Appropriate, As Well As Claims Against Cambridge Or CDT Oxford Limited For Fraudulent Conveyance.

In *Luxliner*, *supra*, 13 F.3d at 72, the Third Circuit evaluated due process concerns of third parties under Rule 25(c), concluding: "at a minimum, notice and an opportunity to be heard are required." Here, Cambridge has been on actual and participating notice since at least November 2005 of its potential liability, and it threw the kitchen sink at defense of this case. In determining how to proceed under Rule 25(c), the Third Circuit in *Luxliner* wrote:

> [A]t least in a context such as this in which a decision on a Rule 25(c) motion effectively imposes liability, the court must first determine whether the affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to joinder or substitution as a matter of law." *C.f.* Fed. R. Civ. P. 56(c). If they do, the court should grant the motion; if they do not, however, the court should conduct an evidentiary hearing to decide whether the motion should be granted. *See* Fed. R. Civ. P. 43(e).

In *Luxliner*, because facts were disputed and the credibility of explanations for some of them were at issue, "the district court should have held an evidentiary hearing." *Id.* at pp. 75-6.

While Sunnyside believes the public record facts and Cambridge's participation to date mandate that Cambridge should be added to the judgment, we anticipate Cambridge will respond to this motion with a panoply of corporate details, argument and data not previously seen or discovered by plaintiff. No reply brief is envisioned per this Court's scheduling order following the post-trial CMC. Application of successor liability can be "extremely fact sensitive." *Fisher v. Allis Chalmers Corp. Product Liability Trust*, 95 Cal. App. 4th 1182, 188 (2002). If an evidentiary hearing is required, plaintiff seeks leave under Rule 69(a) to conduct discovery related to the

[35] Plaintiff's motion here is timely, and was initially brought and has been pending in this Court since no later than November 2, 2005. *See* pp. 2-3 of plaintiff's Post-Trial Summary of the Record filed March 20, 2007. Indeed, the final and perhaps most alarming transfer that occurred during the pendency of this case occurred only in 2005. Ainslie Decl. ¶ 10.

BARTKOZANKEL
Barko-Zankel-Tarrant-Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

transfer of Opsys Limited assets to Cambridge and CDT Oxford Limited (formerly Opsys UK and once owned by Opsys Limited).

Plaintiff will be prepared May 16 to identify the discovery required against Cambridge and its affiliates, which would likely involve document requests and several depositions.

Plaintiff may also seek leave to file a supplemental claim for relief for fraudulent conveyance against Cambridge and CDT Oxford Limited, pursuant to Fed.R.Civ.P. Rule 18(b), so as to restore to Opsys Limited for the benefit of Sunnyside all or a part of the IP assets and patents from which the judgment might be satisfied. *See Panther Pumps & Equipment Co. v. Hydrocraft, Inc.* 566 F.2d 8, 25-7 (7th Cir. 1977).

## IV. CONCLUSION

Sunnyside requests that the Court award the attorney's fees, costs and expenses incurred in prosecuting this breach of lease case, defending against the Assignment, and its post-trial and estimated fees and expenses.

Sunnyside asks the Court to apply appropriate state law and hold Cambridge responsible for the judgment. Alternatively, prompt discovery and an evidentiary hearing pursuant to Rules 69(a) and 25(c) should be ordered with leave to file a fraudulent conveyance claim if needed.

DATED: April 2, 2007

BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation

By: [signature]
Robert H. Bunzel
Attorneys for Plaintiff
SUNNYSIDE DEVELOPMENT CO., LLC

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

# EXHIBIT 2

NEW YORK
COUNTY CLERK'S OFFICE

SEP 18 2007

NOT COMPARED
WITH COPY FILE

SUPREME COURT OF NEW YORK
COUNTY OF NEW YORK

SUNNYSIDE DEVELOPMENT COMPANY, LLC,

Plaintiff,

-v-

OPSYS MANAGEMENT LIMITED; OPSYS LIMITED, CDT OXFORD LIMITED; CAMBRIDGE DISPLAY TECHNOLOGY, INC.; CAMBRIDGE DISPLAY TECHNOLOGY LIMITED; BANK OF NEW YORK, (as escrow agent); and SUMITOMO CHEMICAL CO., LTD.,

Defendants.

**SUMMONS WITH NOTICE**

Index No. 112617/07

Date Index No. Purchased: September 18, 2007

To the above named Defendant(s):

Cambridge Display Technology, Inc.; Building 2020, Cambourne Business Park, Cambridgeshire CB3 6DW, United Kingdom

Cambridge Display Technology Limited; 2020 Cambourne Business Park, Cambridgeshire CB3 6DW, United Kingdom

Opsys Limited, Unit 8 Begbroke Business & Science Park, Sandy Lane, Yarton, Kidlington, Oxfordshire, OX5 1PF, England

CDT Oxford Limited, 2 Temple Beck, East Temple Quay, Bristol, BS1 6EG, England

Opsys Management Limited, 25 Queen Anne's Gate, London, England, SW1H 9BU

Bank of New York, 10 Barclay Street, New York, New York 10286

Sumitomo Chemical Co., Ltd., 27-1, Shinkawa 2-chome, Chuo-ku, Tokyo 104-8260, Japan

You are hereby summoned to serve a notice of appearance and demand for complaint, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for $6,000,000.00 plus interest and court costs.

The nature of action and relief sought: (1) claim on escrow assets, (2) breach of contract, and (3) fraudulent conveyances. See Notice of Claim attached hereto.

Sum for Judgment may be taken case of Default: $6,000,000.00

The basis of venue designated is: CPLR sec. 501 (contractual provision fixing venue); CPLR sec. 503(a) (county designated by plaintiff and residence of defendant Bank of New York), and CPLR sec. 508 (recovery of chattel)

Dated: New York, New York
September 18, 2007

TRAIGER & HINCKLEY LLP

By: George Hinckley Jr.
George R. Hinckley Jr.

880 Third Avenue 9th Floor
New York, New York 10022-4730
Tel. (212) 759-4933
Fax (212) 656-1531
Attorneys for Plaintiff

Notice of Claim Pursuant to CPLR 308(b)

1. This is an action to recover from the named defendants assets sufficient to satisfy a judgment plaintiff Sunnyside Development Company LLC ("Sunnyside") holds for more than $4.9 million, entered against Opsys Limited by the United Stated District Court for the Northern District of California on March 29, 2007, in an action entitled *Sunnyside Development Company LLC v. Opsys Limited* (the "Judgment"). Sunnyside also has obtained an order from that same Court awarding it the right to obtain legal costs of approximately $900,000. The action seeks to obtain the assets (shares of CDT stock) that are or were held in New York escrow for the purpose of satisfying claims against Opsys Limited.

2. Plaintiff is the intended beneficiary of the 2004 escrow agreement between CDT, Opsys Limited, and the Opsys shareholders, which contains provisions allowing creditors including Plaintiff to look to the escrowed CDT Shares in order to satisfy claims against Opsys Limited. A portion of those shares remain in escrow by the escrow agent, Bank of New York, and the remaining CDT shares are expected to be tendered by Opsys Limited's shareholders in the event that the CDT shareholders approve to the merger agreement with Sumitomo. Those funds in the possession of Opsys Limited's shareholders are more than sufficient to satisfy the Judgment.

3. In addition, if necessary because of an inadequate amount of the CDT escrow shares, this action asserts fraudulent transfer and fraudulent conveyance claims against the transferees of Opsys Limited assets, tracing the assets transferred by Opsys Limited after it incurred the liability to Sunnyside in 2001. It seeks to unwind a series of transfers made in violation of the applicable fraudulent conveyance laws by Opsys Limited to (a)

its shareholders and (b) CDT, the effect of which hindered delayed plaintiff Sunnyside from obtaining satisfaction of its claim. Through those series of transactions between CDT, Opsys, and Opsys Shareholders, CDT transferred millions to Opsys Limited, which was transferred to Opsys Shareholders. The result is that Opsys Limited now claims to have no assets, even though Opsys Limited possessed, at the time of its liability to plaintiff, valuable assets worth tens of millions, including a large stable of valuable intellectual property, employee relationships and research and developments in company.

4. Finally, to the further extent necessary, Plaintiff seeks the return of more than $15 million in IP assets that were fraudulently transferred from Opsys Limited to CDT, Inc., a portion of which then ultimately was paid to Opsys's shareholders.

**Relief Requested**

WHEREFORE, Plaintiff prays that the Court enter an order awarding Plaintiff the following relief:

1. Declaring Plaintiff's rights to the CDT shares held in escrow, and entering a Judgment requiring the escrow agent to transfer sufficient assets to satisfy Plaintiff's claim;

2. Setting aside the fraudulent conveyances to defendants to the extent necessary to satisfy the Plaintiff's claims;

3. Attaching in a constructive trust all revenues or other consideration received by from the license or commercialization of the Opsys Limited IP, and granting Plaintiff a right to levy against those assets;

4. To the extent assets are not available to set aside, entering a judgment against defendants for the value of the assets transferred;

5. Attorneys fees, costs and expenses as provided by applicable law, including New York Debtor and Creditor Law §276-a;

6. For such and other relief as the Court deems appropriate.

7. Plaintiff demands a jury trial on all issues.