```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    |
SUNNYSIDE DEVELOPMENT COMPANY, LLC, |
                                    |
            Petitioner,             |   07 Civ. 8825 (LLS)
                                    |
     - against -                    |   OPINION AND ORDER
                                    |
BANK OF NEW YORK (as escrow agent), |
CAMBRIDGE DISPLAY TECHNOLOGY, INC.  |
and OPSYS MANAGEMENT LIMITED,       |
                                    |
            Respondents.            |
------------------------------------x
```

Petitioner Sunnyside Development Company, LLC seeks to enforce a $4,853,017 judgment that the U.S. District Court for the Northern District of California awarded in its action against respondent Opsys Limited.[1]  Although Opsys Limited ("Opsys") is now a remote subsidiary (i.e., a great-grand-daughter company) of respondent Cambridge Display Technology, Inc. ("Cambridge"), it was acquired directly in 2004 by Cambridge in a stock-for-stock transaction, as part of which Cambridge deposited $5,071,320 worth of Cambridge stock into an escrow account which was set up to address the possibility of unforeseen claims against Opsys.  Sunnyside claims that Opsys is a beneficiary of the Escrow Agreement, and that as a judgment

---

[1] Sunnyside Development Company, LLC v. Opsys Limited, No. C 05-00553 MHP (N.D.Cal.)(Patel, J.).

creditor of Opsys, Sunnyside is entitled to apply the funds in the escrow account to satisfy its judgment against Opsys (which has no assets).

Cambridge moves to dismiss the turnover petition pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[2]

### Function and Terms of the Escrow Agreement

As described by the Court in the Sunnyside case (see supra note 1), Cambridge paid over $11 million worth of stock when it acquired Opsys (Sunnyside Mem. and Order at 14, Aug. 29, 2007). Of the total amount (931,633 shares at $12 per share, equaling $11,179,596), Cambridge delivered 375,085 shares worth $4,501,020 to Opsys Management Limited ("OML"), an entity created to facilitate the carrying-out of the acquisition transaction, for ultimate distribution to Opsys's management and shareholders. Another 133,938 shares worth $1,607,256 of the purchase price were held back to cover known and identified liabilities of Opsys set forth in a list (which did not include the breached lease on which Sunnyside later recovered its

---

[2] Cambridge also argues that Sunnyside lacks standing because it has no interest in the escrow account. But that depends on the outcome of this proceeding, which Cambridge has standing to bring.

judgment). (Id. at 6.) Finally, the remaining 422,610 shares worth $5,701,020 were placed in the escrow account "as security for contingent and unidentified liabilities" of Opsys, (id. at 6), which "were ultimately the responsibility of Opsys" not of Cambridge, (id. at 11). The "security" ran to Cambridge, protecting it against increases in its cost of acquisition, or receipt of less than full value, by indemnifying Cambridge for any of Opsys's contingent and unidentified liabilities which might later arise. The shares in escrow covered "any loss or other cost" of Cambridge as a result of such claim (id. at 10-11); Cambridge neither expressly nor impliedly assumed such liabilities. (Id. at 11.) Hence, it would be anomalous to view the shares in the escrow as subject to a demand for turnover to Opsys or its creditor.

It is evident from the provisions and structure of the Escrow Agreement that it does not grant an interest in the escrow fund to Opsys or an Opsys creditor. It provides that the Fund "shall be held in trust and shall not be subject to lien or attachment of any creditor of any party hereto" but used solely for the purposes it sets forth. Id. § 2. Opsys is not even a party to the Escrow Agreement; obviously, there was no conception that the Agreement might give Opsys or its creditors any right to subject the funds to a lien or attachment.

Sections 4(e)-(f) of the Agreement provide (in more complex terms) that if any claim not among those previously listed is asserted against Opsys, Cambridge may inform the escrow agent and obtain from the escrow cash or stock sufficient to cover the claim and the estimated expense of resolving it. These provisions show that the escrow's operations lie between Cambridge, OML and the escrow agent only, and that its function is to secure Cambridge against the risk that otherwise the amount of its purchase price might be increased (or the value of Opsys diminished) by assertions of undisclosed claims against Opsys. It is not the function of the escrow to create security for Opsys's creditors. In respect to this escrow, Cambridge owed no solicitude to the creditors of Opsys; indeed, Section 6 of the Agreement provides for either Cambridge or OML to defend Opsys against them.

The Agreement's Section 11, which forbids Cambridge and OML from disposing of any portion of the Fund before its actual payment to them, shows no intent that the Fund was held for the benefit of any others. Its Section 13 lists those to whose benefit the Agreement inures: the successors, assigns and legal representatives of Cambridge, OML and the escrow agent.[3]

---

[3]   See Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157, 164 (S.D.N.Y. 1998)("An inurement clause, when taken together with a prohibition of assignments, on the other hand, does suggest that the parties did not intend that third parties

There is in the Escrow Agreement no evidence of an intention to benefit Opsys, which is thus at most "a mere incidental beneficiary, with no enforceable rights under the contract." Stainless, Inc. v. Employers Fire Ins. Co., 69 A.D.2d 27, 33, 418 N.Y.S.2d 76, 80 (1st Dep't 1979)(citations omitted), aff'd, 49 N.Y.2d 924, 428 N.Y.S.2d 675 (1980):

> [U]nless it is established that there is an intention to benefit the third party, the third party will be held to be a mere incidental beneficiary, with no enforceable rights under the contract. The intention to benefit the third party must appear from the four corners of the instrument. The terms contained in the contract must clearly evince an intention to benefit the third person who seeks the protection of the contractual provisions.

Accord Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc., 66 N.Y.2d 38, 43-46 (1985); Travelers Indemnity Co. of Conn. v. Losco Group, Inc., 150 F. Supp. 2d 556, 561 (S.D.N.Y. 2001)(quoting Stainless).

For all the above reasons it is clear that, as found by the Sunnyside Court, this escrowed portion of the Cambridge stock offered in exchange for the Opsys stock "would indemnify [Cambridge] for undisclosed or contingent liabilities" (id. at 6) and the security it provided was for the benefit of Cambridge, not Opsys's undisclosed and contingent creditors.

---

benefit from the contract. Language specifying that the benefit of a contract is to inure to the contract's signatories arguably is superfluous unless it serves to limit the categories of beneficiaries. This is the wisdom behind the maxim *expressio unus est exlusio alterus."* (italics in original)).

Judicial Estoppel

In post-verdict proceedings in the Sunnyside case, Cambridge made the statement in materials submitted to the Court that "the proceeds of the transactions were held in escrow and trust for the benefit of creditors, known and unkown", and other statements to similar effect. Sunnyside understandably points to those statements as concessions that the escrow fund was held for its benefit.

Such a statement may be a generally fair, even if rough, description of the $1,607,256 worth of shares set aside to cover the list of known and identified Opsys liabilities. That is not a matter before this Court. As regards the escrow account, such a statement is an extravagant mischaracterization, for the reasons explained above, and would normally be given little or no effect in applying such a carefully drafted and detailed instrument as the Escrow Agreement.

But Sunnyside's argument runs further. Those statements were not made in casual conversations: they were submitted to a court, in argument to affect the court's decision, and should not be allowed to be contradicted by their author in a different court to obtain a contrary decision. In legal terms, Sunnyside says Cambridge is "judicially estopped", or prevented, from contradicting its own earlier assertions.

But the legal doctrine of judicial estoppel is applied rather narrowly. It is not applied to every change of position by a party in successive litigations. On the contrary, and to limit the opportunity for abuse of the doctrine in cases of inconsequential shifts of position to meet changing aspects of successive litigations, the doctrine is applied only when the earlier argument was relied upon by the court to render a decision favoring its author. As recently stated by the Second Circuit, "judicial estoppel applies only when a tribunal in a prior separate proceeding has relied on a party's inconsistent factual representations and rendered a favorable decision." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 120 (2d Cir. 2005)(quoting and citing cases).

The Sunnyside Court did not rely on Cambridge's mischaracterizations.[4] They were not germane to the decision Judge Patel reached. Sunnyside was arguing that Cambridge was liable for Opsys's debts as a successor to its business. Judge Patel held that, as a matter of California law, successor liability does not apply to a stock-for-stock acquisition like this, but only to purchases of all the assets of the debtor. (Sunnyside Mem. and Order at 9-10.)

---

[4]  Whether or not the statements applied to this escrow, Judge Patel neither adopted them as a basis for her decision, nor can her description of the escrow (see pp. 2-5 above) be reconciled with them.

Since the court to which the statements were addressed gave them no weight, and did not rely upon them its decision, the doctrine of judicial estoppel does not apply.

* * *

Sunnyside has at various times argued that unless the escrow fund is made available to Opsys's creditors the acquisition is vulnerable as being made for inadequate consideration.[5]  Judge Patel dealt with that notion crisply (id. at 14-15):

> Plaintiff cites no authority for the proposition that in order for consideration to be sufficient the purchaser must pay off the seller's debts, rather than simply compensate the seller for its assets. Because [Cambridge] paid consideration which was adequate in light of the assets it received, plaintiff has failed to demonstrate inadequate consideration.

---

[5] Sunnyside has withdrawn from this application its suggestion that the transaction was a fraudulent conveyance under N.Y. Debtor and Creditor Law § 273-a.

-9-

## CONCLUSION

The motion to dismiss the turnover petition is granted.

The Clerk will enter judgment dismissing this action, with costs and disbursements to respondents according to law.

So ordered.

Dated: New York, NY
      February 15, 2008

*Louis L. Stanton*
Louis L. Stanton
U.S.D.J.